No. 25-2216

═══════════════════════════════════════════

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

─────────────────────────────────

SOUTH CAROLINA STATE CONFERENCE OF THE NAACP;
IBRAM X. KENDI; T.R., a minor by and through their father
and next friend, TODD RUTHERFORD; J.S., a minor by and
through their mother and next friend, AMANDA BRADLEY,

*Plaintiffs-Appellants*,

v.

ELLEN WEAVER, in her official capacity as
South Carolina Superintendent of Education;
LEXINGTON COUNTY SCHOOL DISTRICT THREE,

*Defendants-Appellees.*

─────────────────────────────────

On Appeal from the United States District Court
for the District of South Carolina
Case No. 3:25-cv-00487-SAL

═══════════════════════════════════════════

## DEFENDANTS-APPELLEES' RESPONSE BRIEF

═══════════════════════════════════════════

Miles E. Coleman
William A. Neinast
NELSON MULLINS RILEY & SCARBOROUGH LLP
2 West Washington Street / Suite 400
Greenville, SC 29601
(864) 373-2300
miles.coleman@nelsonmullins.com

*Counsel for Defendants-Appellees Ellen
Weaver, in her official capacity as South
Carolina Superintendent of Education, and
Lexington County School District Three*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2216__        Caption: __South Carolina State Conference of the NAACP et al. v. Weaver et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__ELLEN WEAVER, in her official capacity as South Carolina Superintendent of Education;__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?                ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐YES ☑NO
    If yes, identify all such owners:

12/01/2019 SCC                          - 1 -

i

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: __s/ Miles Coleman_____          Date: _____10/27/2025_____

Counsel for: __Defendants - Appellees_____

- 2 -          **Print to PDF for Filing**

ii

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 25-2216     Caption: South Carolina State Conference of the NAACP et al. v. Weaver et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Lexington County School District Three
(name of party/amicus)


who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.    Does party/amicus have any parent corporations?          ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          ☐YES ☑NO
      If yes, identify all such owners:


12/01/2019 SCC                       - 1 -

iii

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Miles Coleman          Date:          10/27/2025

Counsel for: Defendants - Appellees

- 2 -          **Print to PDF for Filing**

iv

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... viii

JURISDICTIONAL STATEMENT ................................................................... 1

COUNTER-STATEMENT OF THE ISSUES ON APPEAL ..................................... 1

INTRODUCTION ....................................................................................... 3

STATEMENT OF THE CASE ........................................................................ 6

    A.    Factual Background ................................................................ 6

        1.    The General Assembly enacted Budget Proviso 1.79 in the 2024–25 state budget. ............................................. 6

        2.    District Three removed one of Kendi's books from its libraries due to the book's factual errors and omissions but kept two of his other books about race and racism. .................. 11

        3.    The South Carolina Department of Education elected not to renew a pilot of two Advanced Placement classes, one of which was an African American Studies course. ................. 14

        4.    The NAACP seems not to have been harmed at all—either directly or vicariously through its members. ........................... 17

    B.    Procedural Background ......................................................... 18

STANDARD OF REVIEW ........................................................................... 19

SUMMARY OF THE ARGUMENT ................................................................ 21

ARGUMENT ........................................................................................... 26

    I.    Student Appellants lack standing to assert their First Amendment claim. .............................................................. 27

        A.    There is no cognizable First Amendment right to receive information from the government. ........................... 27

B.    Even if their claim rested on a cognizable right, Student Appellants still haven't pled an injury-in-fact because one of them has only a generic, indefinite desire to take AP African American Studies someday, and the others already have access to the equivalent local honors course....................33

C.    Student Appellants' alleged injuries aren't traceable to Weaver or the Proviso...............................................................35

D.    Student Plaintiff-Appellants' alleged injuries aren't redressable by the Court...........................................................36

II.    Plaintiff Kendi lacks standing to assert his First Amendment claim. ..........................................................................................39

A.    There is no cognizable First Amendment right for an author to have his book placed (or retained) in a public-school library.........................................................................39

B.    Kendi was not "excluded" from District Three's libraries, much less on the basis of his viewpoints and, therefore, has not established a constitutional injury. ..............................43

C.    Kendi's alleged injury is not traceable to the budget proviso......................................................................................44

D.    Kendi's alleged injury is not redressable through the relief he seeks. ...............................................................................47

III.    Student Appellants and Kendi lack standing to assert their Fourteenth Amendment "void for vagueness" claim.........................47

A.    The district court correctly held that the Student Appellants and Kendi lack standing to bring void-for-vagueness claims.................................................................47

B.    The district court correctly held that Kendi lacks standing to bring void-for-vagueness and viewpoint discrimination claims ..............................................................................50

1.    The District Court assumed injury and causation and dismissed solely for lack of redressability.......................50

vi

2.    An independent, non-challenged basis for removal defeats redressability........................................................52

3.    Plaintiffs-Appellants' "one obstacle" theory misstates the redressability requirement..........................53

4.    Plaintiffs-Appellants' standing to bring both vagueness and viewpoint discrimination claims fails for the same reason. ........................................................55

5.    The district court's standing decision should be affirmed.........................................................................56

IV.   Student Appellants and Kendi lack standing to assert their Equal Protection claims. ...............................................................56

V.    The Court should reject Plaintiffs-Appellants' invitation to decide, in the first instance, the merits of the parties' substantive arguments and of plaintiffs' request for an injunction........................60

CONCLUSION .................................................................................................62

**Page(s)**

## U.S. Supreme Court Cases

*Babbitt v. United Farm Workers Nat. Union*,
442 U.S. 289 (1979)...................................................................58, 59

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
457 U.S. 853 (1982)...............................................................21, 28, 29

*City of Lockhart v. United States*,
460 U.S. 125 (1983).........................................................................61

*Guiterrez v. Saenz*,
606 U.S. 305 (2025).....................................................................37, 38

*Lamont v. Postmaster Gen. of U.S.*,
381 U.S. 301 (1965).........................................................................30

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................. 26, 33, 34, 36, 44, 58

*Martin v. City of Struthers*,
319 U.S. 141 (1943).........................................................................30

*McConnell v. Fed. Election Comm'n*,
540 U.S. 93 (2003), *overruled on other grounds by Citizens United
v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ...........................28, 33

*McLaughlin v. Florida*,
379 U.S. 184 (1964).........................................................................46

*Students for Fair Admission v. President and Fellows of Harvard
College*, 600 U.S. 181 (2023) ..........................................................10

*Thomas v. Collins*,
323 U.S. 516 (1945).........................................................................30

*United States v. Am. Libr. Ass'n, Inc.*,
539 U.S. 194 (2003)..................................................................40, 41, 42

*Univ. of Penn. v. EEOC*,
   493 U.S. 182 (1990)..................................................................................46

*Warth v. Seldin*,
   422 U.S. 490 (1975)..............................................................................19, 28

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..................................................................................20, 60

**Other Cases**

*Bender v. Elmore & Throop, P.C.*,
   963 F.3d 403 (4th Cir. 2020) ...............................................................26, 61

*Bishop v. Bartlett*,
   575 F.3d 419 (4th Cir. 2009) ......................................................................20

*Bryant v. Gates*,
   532 F.3d 888 (D.C. Cir. 2008) (Kavanaugh, J., concurring).................23, 41

*Chiras v. Miller*,
   432 F.3d 606 (5th Cir. 2005) .........................................................23, 40, 41

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013) ......................................................................28

*Delta Constr. Co. v. E.P.A.*,
   783 F.3d 1291 (D.C. Cir. 2015) (per curiam)..............................................53

*Doe v. Obama*,
   631 F.3d 157 (4th Cir. 2011) ................................................................20, 26

*Fauconier v. Clarke*,
   652 Fed. Appx. 217 (4th Cir. 2016)......................................................26, 61

*Goldfarb v. Mayor & City Council of Baltimore*,
   791 F.3d 500 (4th Cir. 2015) ................................................................26, 60

*Illinois Dunesland Preservation Soc'y v. Illinois Dept. of Natural
   Resources*,
   584 F.3d 719 (7th Cir. 2009) ......................................................................42

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
78 F.4th 622 (4th Cir. 2023) ...................................................................56, 59

*Little v. Llano County*,
138 F.4th 834 (5th Cir. 2025) ...................................................................22, 31

*Long v. Bondi*,
151 F.4th 503 (4th Cir. 2025) ...........................................................................38

*McBurney v. Cuccinelli*,
616 F.3d 393 (4th Cir. 2010) ...................................................................26, 61

*Miami Univ. Wrestling Club. v. Miami Univ.*,
195 F. Supp. 2d 1010 (S.D. Ohio 2001) ...................................................22, 46

*Muir v. Alabama Educ. Television Comm'n*,
688 F.2d 1033 (Former 5th Cir. 1982) ....................................................28, 29

*Page v. Lexington Cnty. Sch. Dist.*,
No. 3:06-249-CMC, 2007 WL 2123784 (D.S.C. July 20, 2007) ....................40

*Pahls v. Thomas*,
718 F.3d 1210 (10th Cir. 2013) .........................................................................31

*People for the Ethical Treatment of Animals v. Gittens*,
414 F.3d 23 (D.C. Cir. 2005)....................................................................41, 43

*Pierce v. N. Carolina State Bd. of Elections*,
97 F.4th 194 (4th Cir. 2024) .............................................................................20

*Pinkley, Inc. v. City of Fredrick*,
191 F.3d 394 (4th Cir. 1999) .............................................................................19

*Richmond Med. Ctr. for Women v. Gilmore*,
55 F. Supp. 2d 441 (E.D. Va. 1999), aff'd, 224 F.3d 337 (4th Cir.
2000) .......................................................................................................24, 48

*Scott v. Baltimore Cnty.*,
101 F.4th 336 (4th Cir. 2024) ...................................................................26, 61

*Sierra Club v. U.S. Dep't of the Interior*,
899 F.3d 260 (4th Cir. 2018) ..........................................................25, 53, 54

x

*Sutliffe v. Epping School District*,
584 F.3d 314 (1st Cir. 2009)..................................................................23, 42

*Toledo Area AFL-CIO Council v. Pizza*,
154 F.3d 307 (6th Cir. 1998) .........................................................................31

*Walls v. Sanders*,
144 F.4th 995 (8th Cir. 2025) ..................................................................22, 32

*White Tail Park, Inc. v. Stroube*,
413 F.3d 451 (4th Cir. 2005) ...........................................................................6

**Statutes**

28 U.S.C. § 1291 ................................................................................................1

28 U.S.C. § 1331 ................................................................................................1

28 U.S.C. § 1343 ................................................................................................1

**Other Authorities**

125th Sess., Part 1B § 1.79 (S.C. 2024),
https://www.scstatehouse.gov/sess125_2023-
2024/appropriations2024/tap1b.htm#s1 (last accessed January 12,
2026) .................................................................................................7, 8, 9

Bradley A. Smith, *Money Talks: Speech, Corruption, Equality, and
Campaign Finance*, 86 GEO. L.J 45, 67 (1997)...........................................31

Cambridge Dictionary,
https://dictionary.cambridge.org/us/dictionary/english/inculcate
(last visited January 12, 2026) .......................................................................9

Collins Dictionary,
https://www.collinsdictionary.com/us/dictionary/english/inculcate
(last visited January 12, 2026 ........................................................................9

Erik Ugland, *Demarcating the Right to Gather News: A Sequential
Interpretation of the First Amendment*, 3 DUKE J. CONST. LAW &
PUB. POL'Y 113, 140 (2008) .........................................................................30

Fed. R. Civ. P. 12(b)(6)...................................................................................60

https://www.ed.sc.gov/newsroom/school-district-memoranda-archive/clarification-on-ap-course-offerings/clarification-on-ap-course-offerings-memo/ ...................................................................14

https://www.edweek.org/teaching-learning/can-south-carolina-schools-teach-ap-african-american-studies-its-complicated/2024/06 ................17

https://www.ibramxkendi.com/how-to-be-an-antiracist (visited January 12, 2026) ................................................................................43

https://www.ibramxkendi.com/stampedbook (last visited January 12, 2026) ...............................................................................................11

https://www.postandcourier.com/education-lab/charleston-schools-african-american-studies-ap-honors/article_97f72c66-5a42-11ef-9082-db96cd28371d.html ...............................................................16

https://www.scstatehouse.gov/sess125_2023-2024/appropriations2024/tap1b.htm#s1 (accessed January 12, 2026) ......................................................................................................7

Ileana Najarro, *Can South Carolina Schools Teach AP African American Studies? It's Complicated*, Educ. Week (June 6, 2024) .....................16

Joe Pearlman, *Latest Kendi disclosures highlight Charlotte-Meck Schools' extravagance*, CAROLINA JOURNAL (Oct. 10, 2023), https://www.carolinajournal.com/opinion/latest-kendi-disclosures-highlight-charlotte-meck-schools-extravagance/ ...............................13

Lillian R. Bevier, *Specious Arguments, Intractable Dilemmas,* 94 COLUM. L. REV. 1258, 1277 (1994) ...................................................31

Mark G. Yudof, *Personal Speech and Government Expression*, 38 CASE W. RES. L. REV. 671, 687 (1987) .......................................40

*Stamped: Racism, Antiracism, and You* ("*Stamped*") by Ibram Kendi and Jason Reynolds ................................................................11

Stephanie Saul, *An Ambitious Antiracism Center Scales Back Amid Allegations of Poor Management*, NEW YORK TIMES (Sept. 23, 2023) ....................................................................................13

xii

Valerie Nava, *State Nixed AP African American Studies Course. Charleston County May Offer Honors Version*, Post & Courier (Aug. 15, 2024) ...................................................................................16, 17

## JURISDICTIONAL STATEMENT

Normally, district courts have jurisdiction under 28 U.S.C. §§ 1331 and 1343 over the types of claims asserted in this proceeding; however, in this instance, the district court correctly found it lacked subject matter jurisdiction in this case due to Plaintiffs-Appellants' lack of constitutional standing. JA967–984 (Order). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## COUNTER-STATEMENT OF THE ISSUES ON APPEAL

1.  Did the district court correctly dismiss the Student Plaintiffs-Appellants' First Amendment claim for lack of standing when:

    a.  There is no cognizable right to receive information from the government;

    b.  Even if there were a cognizable right, Student Plaintiffs-Appellants haven't alleged a constitutional injury because they already have access to the information they seek and/or they've alleged only an inchoate, indefinite hope to receive that information someday;

    c.  Even if there were a cognizable injury, it's not traceable to the Proviso or to Defendant-Appellee Weaver; and

    d.  Even if the court were to grant the relief Plaintiffs-Appellants seek, it wouldn't redress their alleged injury because the challenged action also rests on a separate, independent, unchallenged basis.

1

2.  Did the district court correctly dismiss Plaintiff Kendi's First Amendment claim for lack of standing when:

    a.  There is no cognizable right for an author to demand that his book be present in (or remain in) a public-school library;

    b.  Even if there were a cognizable right, Kendi hasn't established a constitutional injury because neither he nor his work was excluded from District Three's libraries, much less based on his viewpoints;

    c.  Even if there were a constitutional injury, it's not traceable to the Proviso or to Defendant-Appellee District Three; and

    d.  Even if the court were to grant the relief Kendi seeks, it wouldn't redress his alleged injury because the challenged action also rests on a separate, independent, unchallenged basis.

3.  Did the district court correctly dismiss Plaintiffs' claim that the Proviso is void for vagueness when Plaintiffs are not subject to, regulated by, or capable of violating or being sanctioned under the Proviso?

4.  Did the district court correctly dismiss Plaintiffs' Equal Protection claim when Plaintiffs are not subject to any classification, obligation, prohibition, duty, sanction, or enforcement under the Proviso, and the Proviso does not classify or treat them differently based on their race.

2

## INTRODUCTION

This lawsuit arises from a budget proviso enacted by the General Assembly as part of the 2024–2025 State Budget. The proviso prohibits the use of state funds to teach certain divisive concepts in public schools, including that one race or sex is inherently better than another or that an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive. Plaintiffs—who included two high school students, an author, and the NAACP—filed this suit asserting five constitutional claims arising from the proviso.

Defendants Weaver and District Three moved to dismiss. The district court dismissed the case for lack of standing, concluding that Plaintiffs' claims were not redressable. In the same Order, and for the same reason, the district court denied Plaintiffs' motion for preliminary injunction. This Court should affirm for any one of the following reasons.

*First*, before even reaching the traditional analytical starting point, Plaintiffs' First Amendment claims fail for a more fundamental reason: they don't assert a cognizable claim. Article III requires a plaintiff to plead (and later prove) an invasion of a legally protected interest. Plaintiffs here haven't even made it across that starting line. That's because there's no cognizable constitutional right to receive information *from the government*, nor is there a cognizable constitutional right for an author to have his book placed (or retained) in a public-school library. That's the end of the

3

road on the First Amendment claims. If there's no constitutional right, there can be no deprivation of that right. If there's no deprivation, there's no constitutional injury. If no injury, then no standing.

*Second*, even if Plaintiffs had asserted cognizable First Amendment rights, they've failed to show concrete, particularized, imminent injuries. Start with the students. They claim that because of the Proviso, they lost the future opportunity to take a particular Advanced Placement class. But they didn't plead (must less prove) any facts that can establish a constitutional injury. One of them admits he had only an inchoate hope to enroll someday. But indefinite future aspirations do not a constitutional injury make. The others already have what they seek. Their district offers an honors class that covers the same content and allows them to sit for the AP exam. They aren't injured, so they lack standing.

Plaintiff Kendi, fares no better. He claims he was injured by being "excluded" from District Three's libraries, allegedly because of his views about race and racism. But that's not true. Although District Three removed one of his books in 2022 due to its factual distortions, errors, and omissions, the District has at all relevant times—before, during, and after that removal—housed at least two other books by Kendi (and scores of books by other authors) discussing race and racism. Kendi and his viewpoint haven't been excluded. No exclusion means no injury, and no injury means no standing.

4

*Third*, Plaintiffs' First Amendment standing fails the traceability and redressability prongs, too. Both the students' and Kendi's alleged injuries arose from Defendants' actions that were allegedly based not only on the Proviso (assuming they were based on the Proviso at all) but on other, separate, independent reasons—reasons not challenged in this suit. Accordingly, the alleged injuries are neither traceable to the Proviso nor redressable by the Court, and even if the court were to grant the relief Plaintiffs seek, the supposed injuries would persist because the challenged actions rest on independent, unchallenged grounds.

*Fourth*, Plaintiffs' void-for-vagueness and Equal Protection claims fail because the Proviso regulates and controls *school districts*, not students or authors. The Proviso doesn't regulate or control Plaintiffs, and it doesn't impose any duty, obligation, prohibition, or classification on them. Accordingly, Plaintiffs are incapable of violating the Proviso and, in any event, it has no mechanism or ability to impose any sanction or penalty on them. When, as here, a plaintiff is not subject to, regulated by, capable of violating, or sanctionable under a law, he lacks standing to challenge it.

This Court should affirm.

## STATEMENT OF THE CASE

### A.    Factual Background[1]

Plaintiffs-Appellants—the South Carolina State Conference of the NAACP, author Ibram X. Kendi, and minors T.R. and J.S.—filed this suit challenging Section 1.79 of the 2024–2025 South Carolina Appropriations Bill (the "Proviso"), and similar provisos enacted since 2021. The 96-page Amended Complaint recounts nearly 300 years of racial injustice and inequality in South Carolina, which—though tragic and shameful—predates or is legally irrelevant to Plaintiffs-Appellants' claims. The following summary contains only the facts necessary and sufficient to affirm the district court's dismissal of the Amended Complaint and denial of the Motion for Preliminary Injunction.

### 1.    The General Assembly enacted Budget Proviso 1.79 in the 2024–25 state budget.

The crux of Plaintiffs' case is the Budget Proviso enacted by the General Assembly as part of the 2024–2025 State Budget. All five of Plaintiffs' causes of

---

[1] Because Plaintiffs-Appellants are appealing from both a dismissal for lack of standing and the denial of their motion for preliminary injunction, the information that follows includes the allegations of the operative Complaint, the materials incorporated by reference therein, and evidence presented in support and opposition to the requested injunction. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (noting that when ruling on a motion to dismiss for lack of standing, the court may consider evidence outside the pleadings without converting the motion to one for summary judgment).

action are premised expressly on the alleged unconstitutionality of the Proviso, and each of Plaintiffs' substantive Requests for Relief relates explicitly to the Proviso. JA237–238, JA211, JA238–251. The Proviso prohibits the expenditure of state funds for instruction on concepts identified by the General Assembly as partisan or ideologically divisive, including teaching that:

(1) one race or sex is inherently superior to another race or sex;

(2) an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

(3) an individual should be discriminated against or receive adverse treatment solely or partly because of his race or sex;

(4) an individual's moral standing or worth is necessarily determined by his race or sex;

(5) an individual, by virtue of his race or sex, bears responsibility for actions committed in the past by other members of the same race or sex;

(6) an individual should feel discomfort, guilt, anguish, or any other form of psychological distress on account of his race or sex;

(7) meritocracy or traits such as a hard work ethic are racist or sexist, or were created by members of a particular race to oppress members of another race; and

(8) fault, blame, or bias should be assigned to a race or sex, or to members of a race or sex because of their race or sex.

H. 5100, 2023–2024 Gen. Assemb., 125th Sess., Part 1B § 1.79 (S.C. 2024) (text unaltered) (formatted for ease of readability).[2] The Proviso expressly allows

---

[2] https://www.scstatehouse.gov/sess125_2023-2024/appropriations2024/tap1b.htm#s1 (accessed January 12, 2026).

7

professional development training to address unconscious bias in the context of literary or historical instruction regarding historical discrimination. *Id*. The Amended Complaint alleges that an identical proviso had been enacted in the state budget for each of the preceding three years. JA158.

The Amended Complaint refers to allegedly invidious comments made by three members of the General Assembly. JA186, JA203, JA224, JA227. From this, Plaintiffs extrapolates the remarkable proposition that the entire General Assembly, the Defendants, and the law itself are motivated by racism or are racist in effect. JA199, JA202, JA207–208, JA212, JA226, JA243–248.[3]

Plaintiffs-Appellants' Opening Brief significantly misapprehends the plain language and meaning of the Proviso. Repeatedly, whether by ignorance or design, they erroneously describe the Proviso as prohibiting the *discussion* of certain topics and preventing even the *acknowledgment* that particular views exist. For instance, they state the Proviso "censor[s] discussion of affirmative action" and prevents students from engaging with "information, facts, and ideas" that are allegedly disfavored by the General Assembly. *See* Plaintiffs-Appellants' Br. at 2, 51; *id*. at 27, 53, 54, 56 (similar).

---

[3] Similarly, Plaintiffs allege that discriminatory intent can be imputed to Weaver, District Three, District Five, and the Legislature based on three centuries of South Carolina history plus comments from the Governor, former Governor, and former State Superintendent. JA245.

But that's not what the Proviso says or does. Its concern is not with mere discussion or understanding of concepts, even controversial ones, but with persuasion—when certain divisive concepts are taught as truths to be adopted, internalized, and believed. Specifically, the Proviso states that districts and schools may not use state-allocated funds "to *inculcate*" (i.e., instill or entrench) the concepts in students or to instruct or train employees "to *adopt* or *believe*" them.[4] H. 5100, 2023–2024 Gen. Assemb., 125th Sess., Part 1B § 1.79 (S.C. 2024), https://www.scstatehouse.gov/sess125_2023-2024/appropriations2024/tap1b.htm#s1 (last accessed January 12, 2026).

The Proviso does not prohibit classroom instruction or discussion of the history of racial discrimination, Black history, or racial inequality. Instead, it merely disincentivizes efforts to teach students or staff to believe racist or sexist things, *e.g.*, that American Indians are inherently superior to Whites, that a particular woman is inherently racist because she's Asian, or that a man should be discriminated against

---

[4] Plaintiffs-Appellants argue that neither they nor public-school teachers understand the word "inculcate." The word's meaning can be discerned both from the text of the Proviso itself (i.e., to make the hearer "adopt or believe") or from another source often used to interpret words—dictionaries. *See, e.g.*, Cambridge Dictionary (inculcate: "to fix beliefs or ideas in someone's mind" and "to cause someone to have particular beliefs or values by repeating them frequently"), https://dictionary.cambridge.org/us/dictionary/english/inculcate (last visited January 12, 2026); Collins Dictionary (inculcate: "to implant" ideas or to "cause or influence someone to accept an idea or feeling"), https://www.collinsdictionary.com/us/dictionary/english/inculcate (last visited January 12, 2026).

or subject to adverse treatment because he's Black.[5] *See* Proviso 1.79, *supra*. The language and meaning of the Proviso are different and much narrower than Plaintiffs-Appellants make them out to be. They don't restrict individual student speech or class discussions, and they are reasonably related to the state's legitimate interest in reducing racism and discrimination.

Defendant-Appellee Ellen Weaver, Superintendent of Education for the State of South Carolina, is responsible for implementing state education laws and policies enacted by the legislature, including the Proviso. JA167. Defendant-Appellee District Three is a local educational subdivision subject to compliance with legislative mandates, including the Proviso. JA167. Neither Weaver nor District Three was involved in passing the Proviso.

---

[5] As to the final example, even if Plaintiffs are right and the Proviso implies that affirmative action is itself a type of unconstitutional racial discrimination, that implication conforms with controlling precedent. *See Students for Fair Admission v. President and Fellows of Harvard College*, 600 U.S. 181, 218 (2023) ("The race-based admissions systems that respondents employ also fail to comply with . . . the Equal Protection Clause that race may never be used as a 'negative' . . . . [O]ur cases have stressed that an individual's race may never be used against him in the admissions process."); *see also id.* at 277 (Thomas, J., concurring) (noting that "universities' racial [admissions] policies" are "the same naked racism upon which segregation itself was built").

**2.    District Three removed one of Kendi's books from its libraries due to the book's factual errors and omissions but kept two of his other books about race and racism.**

In 2020, District Three acquired two copies of *Stamped: Racism, Antiracism, and You* ("*Stamped*") by Ibram Kendi and Jason Reynolds. JA538 (Declaration of Ashley Atkinson ("Atkinson Decl.")). The book is intended for young adults and "reveals the history of racist ideas in America." *See* https://www.ibramxkendi.com/stampedbook (last visited January 12, 2026); JA165. The authors emphasize that *Stamped* isn't a normal history book. *See* Ibram X. Kendi & Jason Reynolds, *Stamped* at 1 (2020). Rather, they say, it is a book that talks about history for the purpose of exposing racist ideas in America. *Stamped* at 1; JA165.

In October 2022, District Three convened a committee including a teacher, administrator, media specialist, and community member to review the educational suitability of *Stamped*. JA211. The committee brought impressive credentials to the table. Collectively, they had over 95 years of education experience, 10 degrees in education, including five master's degrees, experience at nearly every level of the public school system, and extensive training and experience in the selection and review of instructional materials and supplemental texts. JA545 (Declaration of Angie Rye ("Rye Decl.")); JA548 (Declaration of Sonya Bryant ("Bryant Decl.")); JA552 (Declaration of Julie Ruff ("Ruff Decl.")); JA555 (Declaration of Charlene High ("High Decl.)); JA558 (Declaration of Randy Fox ("Fox Decl.")).

11

Each member read *Stamped*, carefully and independently evaluated its educational suitability, accuracy, and objectivity, and carefully considered the rights of the District's students and parents. JA545–546 (Rye Decl.); JA550 (Bryant Decl.); JA553 (Ruff Decl.); JA555–556 (High Decl.); JA558–559 (Fox Decl.). After its review and discussion, the committee unanimously recommended the removal of *Stamped* from the District's middle school library and its high school library. JA211; JA546 (Rye Decl.); JA550 (Bryant Decl.); JA553 (Ruff Decl.); JA556 (High Decl.); JA559 (Fox Decl.).

In Plaintiffs' telling, the District "banned" *Stamped* because the District disagreed with the viewpoints expressed in the book rather than for any legitimate pedagogical reason. JA213. That allegation, however, is not supported by—and is contrary to—the documents the Complaint itself relies on. For example, the committee's report *does* provide legitimate pedagogical, non-viewpoint-discriminatory reasons for the committee's decision, namely the fact that *Stamped* contained "inaccuracies," "conjecture," and a "lack of objectivity." JA078. The committee members' declarations likewise confirm that their decision was motivated by the factual and historical errors, omissions, distortions, and misrepresentations in *Stamped*, not by any disagreement with or objection to its contents or viewpoints. JA546 (Rye Decl.); JA550 (Bryant Decl.); JA553 (Ruff Decl.); JA556 (High Decl.); JA559 (Fox Decl.); JA562-564 *(Expert Declaration of

12

Prof. David Bernstein (recounting the numerous factual errors, omissions, and misrepresentations in *Stamped*)).[6]

None of the committee's members or the district's leadership objects to or opposes the inclusion of books in the District's libraries discussing race, racism, slavery, civil rights, racial justice, or related topics. JA546 (Rye Decl.); JA550 (Bryant Decl.); JA553 (Ruff Decl.); JA556 (High Decl.); JA559 (Fox Decl.); JA538-539 (Atkinson Decl.). Indeed, District Three's libraries still contain other books by Plaintiff Kendi himself (and by many others, too) that discuss subjects similar to *Stamped* and that convey Kendi's perspective and viewpoints on contemporary and historic racism and racial injustice in America. JA538 (Atkinson Decl.).

---

[6] This conclusion was not unique to District Three. *See*, *e.g*., Expert Declaration of Professor David Bernstein, ECF No. 21-1, *Pickens County Branch of the NAACP, et al v. Sch. Dist. of Pickens Cnty*, Civil Action No. 8:23-cv-01736-JDA (July 20, 2023) (recounting the numerous factual errors, omissions, and misrepresentations in *Stamped*); Joe Pearlman, *Latest Kendi disclosures highlight Charlotte-Meck Schools' extravagance*, CAROLINA JOURNAL (October 10, 2023), https://www.carolinajournal.com/opinion/latest-kendi-disclosures-highlight-charlotte-meck-schools-extravagance/ ("The academic rigor of Kendi's work has received no small amount of criticism."); Stephanie Saul, *An Ambitious Antiracism Center Scales Back Amid Allegations of Poor Management*, NEW YORK TIMES (Sept. 23, 2023), https://www.nytimes.com/2023/09/23/us/ibram-x-kendi-antiracism-boston-university.html (noting that Boston University's Center for Antiracist Research, led by Ibram Kendi, had abruptly laid off more than half of its employees amidst complaints from employees and scholars of color who alleged mismanagement by Kendi, and noting that Kendi's "work has been criticized by some scholars who question its academic rigor").

13

**3.    The South Carolina Department of Education elected not to renew a pilot of two Advanced Placement classes, one of which was an African American Studies course.**

In 2022, one South Carolina high school tested out a new Advanced Placement ("AP") course in African American Studies ("AP AAS") that was being piloted by the College Board, a private nonprofit that develops and administers the SAT and AP courses. JA228. In the second year of its pilot status (the 2023–24 school year), the program expanded to 12 of South Carolina's 249 public high schools. JA228.

On June 4, 2024, the South Carolina Department of Education released a memorandum notifying school districts that two new AP classes—AP Precalculus and AP AAS—would not be added to the regular roster for the 2024–25 school year. JA231–232; JA095 (Memorandum from C. Matthew Ferguson, Deputy Superintendent, S.C. Department of Education (June 4, 2024) ("Ferguson memorandum").[7] The Amended Complaint alleges that this memorandum disrupted the student plaintiffs' hopes of someday enrolling in the class. JA166; JA137–138; (Declaration of T.R.); JA145–146 (Declaration of J.S.).

---

[7] https://www.ed.sc.gov/newsroom/school-district-memoranda-archive/clarification-on-ap-course-offerings/clarification-on-ap-course-offerings-memo/).

14

In Plaintiffs-Appellants' view, the Department's decision to postpone the assignment of a permanent course code to AP AAS was motivated by invidious, partisan, or discriminatory motivations and, therefore, was unconstitutional. But the facts reveal a very different explanation. Ferguson's memorandum provided two independent bases for the Department's decision: (1) to ensure compliance with state law and (2) to await the conclusion of the then-pending, regularly scheduled review and update of statewide social studies standards before approving any new social studies classes. JA095 (Ferguson memorandum). The latter provides an independent, unchallenged, content- and viewpoint-neutral basis for the decision to pause the assignment of a permanent AP AAS course code. It is the Department's normal practice to pause the approval of statewide course codes in a particular subject while that subject's standards are under revision. JA578–580 (Ferguson Decl.).

The Department's decision was not based on any partisan or political beliefs or any objection to or disagreement with the subject matter. JA579–580 (Ferguson Decl.). To the contrary, the Department and its leadership affirmatively support teaching a clear-eyed, objective history of race, racism, racial injustice and related topics, and are committed to highlighting the contributions black South Carolinians have made to our state, nation, and the world. JA579–580 (Ferguson Decl.); JA095 (Ferguson mem.).

15

Although the Department paused the extension of the course code for AP AAS, students still have access to the material, complete with all the trappings of an AP course. As noted in Ferguson's memorandum to District superintendents, districts could continue to "offer AP African American Studies as a locally-approved honors course should they choose to do so, in addition to continuing to offer other approved African American courses as districts have already done for a number of years." JA095 (Ferguson mem.); JA232.

That is precisely what has happened in districts throughout the state. In fact, the opportunity is even better than Ferguson suggested. Two of the sources cited in the Complaint, JA228–229, expressly state that districts in South Carolina, including Richland County School District Two—the district in which plaintiff J.S. is a student—continued offering the AP AAS course content in a local honors class format. *See* Valerie Nava, *State Nixed AP African American Studies Course. Charleston County May Offer Honors Version*, Post & Courier (Aug. 15, 2024) ("Richland Two school board members in Columbia have already approved an honors version of the halted course.");[8] Ileana Najarro, *Can South Carolina Schools*

---

[8] https://www.postandcourier.com/education-lab/charleston-schools-african-american-studies-ap-honors/article_97f72c66-5a42-11ef-9082-db96cd28371d.html.

*Teach AP African American Studies? It's Complicated*, Educ. Week (June 6, 2024).[9]

In addition, South Carolina students taking an AAS honors class can still sit for the AP exam and receive college credit. *See* Nava, *State Nixed AP* (noting that students enrolled in the local honors classes "will also have the opportunity to take the AP exam," and that "New York-based College Board, the nonprofit developing curricula and administering AP tests, has authorized South Carolina schools that offer an honors version of African American studies as an AP course" and "will allow students to take the AP test for potential college credit"); Najarro, *Can South Carolina Schools Teach AP African American Studies?* (same).

### 4. The NAACP seems not to have been harmed at all—either directly or vicariously through its members.

Plaintiff-Appellant South Carolina State Conference of the NAACP (the "NAACP") alleges broader theoretical harms from enacting the Budget Proviso statewide, asserting generalized impact related to race education and equity discussions. JA165–166. However, the Complaint does not explicitly allege any direct actions or harms attributable to Defendant-Appellee Weaver or District Three (or District Five for that matter) that affected or injured the NAACP. Instead, the Complaint lumps the NAACP in with the students, author, and school employees to

---

[9] https://www.edweek.org/teaching-learning/can-south-carolina-schools-teach-ap-african-american-studies-its-complicated/2024/06.

17

assert claims under the First Amendment and the Due Process and Equal Protection Clauses. JA166–167; JA237–249. The Complaint barely even tries (and, ultimately, fails) to establish organizational standing for the NAACP.  In 96 pages containing 285 paragraphs, the most the Complaint can muster is vague assertions that the NAACP has members who are (1) teachers who "do not know what is permissible to teach under the Budget Proviso" and (2) students who "are now unable to receive the information in AP AAS." JA198–236.

### B.    Procedural Background

Plaintiffs filed this suit in the District of South Carolina on January 27, 2025, asserting claims under the First and Fourteenth Amendments. (ECF 1.) Plaintiffs included two high school students (T.R. and J.S.), an author (Ibram Kendi), a teacher and librarian (Mary Wood and Ayanna Mayes, respectively, both of whom worked at a public high school in School District Five of Lexington and Richland Counties), and the South Carolina Chapter of the NAACP. The Complaint asserted five claims brought by varying combinations of the Plaintiffs against three Defendants: Weaver, District Three, and School District Five of Lexington and Richland Counties ("District Five").

District Five moved to dismiss the claims against it for lack of standing and failure to state a claim. (ECF 23.) So, too, did Defendant Weaver and District Three. (ECF 33.)

18

Plaintiffs filed a Motion for Preliminary Injunction and an Amended Complaint. JA18, JA157. Defendants filed renewed Motions to Dismiss and exhibits. JA267–357, JA358–401, and JA542–580. The pending motions were all fully briefed by June 2, 2025, after which the parties traded a few volleys of supplemental authorities.

The district court heard arguments from counsel on July 30, 2025, in a hearing lasting slightly over four hours that covered both pending Motions to Dismiss and the Motion for Preliminary Injunction. JA822–965. The district court issued its Order dismissing the case for lack of standing and denying the requested injunction on September 8, 2025. JA967. The district court entered its judgment the same day. JA985. The Plaintiffs other than Mayes and Wood appealed on October 8, 2025. JA986. Because only Mayes and Wood had asserted claims against District Five, and because they did not appeal, there are no claims against District Five before this Court, so Weaver and District Three are the sole Appellees.

## STANDARD OF REVIEW

**Dismissal for lack of standing.** "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Fredrick*, 191 F.3d 394, 399 (4th Cir. 1999). Whether a plaintiff has standing to warrant the invocation of federal jurisdiction presents a threshold question in every federal case, *Warth v. Seldin*, 422 U.S. 490,

498 (1975). This Court is "not at liberty to resolve every grievance over government policy, no matter how significant," because Article III "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011). "We review de novo the district court's decision to dismiss for lack of standing." *Id.* (citing *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009)).

**Denial of a preliminary injunction.** "In challenging the district court's denial of preliminary injunctive relief, Plaintiffs shoulder a heavy burden on appeal." *Pierce v. N. Carolina State Bd. of Elections*, 97 F.4th 194, 209 (4th Cir. 2024). Indeed, "[a] preliminary injunction is 'an extraordinary remedy' that 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "Thus, Plaintiffs can prevail only if it is clear that they are 'likely to succeed on the merits,' that they are 'likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" *Id.* (quoting *Winter*, 555 U.S. at 20).

On top of that, "Plaintiffs seek a particularly aggressive form of preliminary injunction, one that is disfavored in *any* circumstance." *Id.* at 209 (cleaned up) (emphasis added). That is, "Plaintiffs are not asking the Court to maintain the status quo until after a trial and final judgment, which is the traditional function of a preliminary injunction." *Id.* Instead, "Plaintiffs seek an order *altering* the status quo

before the case even begins," which this Court has called a "mandatory" injunction. *Id.* (cleaned up) (emphasis added). "Mandatory preliminary injunctions are warranted only in the most extraordinary circumstances." *Id.* Put another way, "Plaintiffs seek an *(extra) extraordinary remedy* that raises the stakes of an erroneous decision and erects a high bar for relief." *Id.* at 210 (emphasis added).

And "[o]n top of the high standard for obtaining a mandatory preliminary injunction, Plaintiffs must *also* overcome a deferential standard of appellate review." *Id.* at 210 (emphasis added). This Court "review[s] the denial of a preliminary injunction for whether the record shows an abuse of discretion by the district court, *not* whether [this Court] would have granted or denied the injunction." *Id.* at 210 (cleaned up) (emphasis added). Under that standard, this Court "review[s] legal conclusions de novo and factual findings for clear error." *Id.* at 210.

## SUMMARY OF THE ARGUMENT

1. The student Plaintiff-Appellants lack standing to assert their First Amendment claim. Constitutional standing requires that a plaintiff assert an invasion of a cognizable, legally protected right. There is no constitutional right to receive information from the government. In the only Supreme Court case ever to consider public school book selection and removal, a majority of the Justices concluded students had no right to receive information from the government. *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982). The en banc

21

Fifth Circuit and Eighth Circuit recently reached similar conclusions. *Little v. Llano County* is instructive. 138 F.4th 834 (5th Cir. 2025) (*en banc*); *Walls v. Sanders,* 144 F.4th 995, 1000 (8th Cir. 2025).

Even if there were a cognizable right, the student Plaintiff-Appellants lack standing to assert it. That's because they've failed to show concrete, particularized, imminent injuries. They claim that because of the Proviso, they lost the future opportunity to take a particular AP class. But one of them admits he had only an inchoate hope to enroll someday. That's not enough to constitute a constitutional injury. *See ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1196–98 (11th Cir. 2009) ("a free-floating desire to access" information, "untethered to any intended action during any reasonably specific period of time" was inadequate to establish standing). The other students already have what they seek. Their district offers an honors class that covers the same content and allows them to sit for the AP exam. They aren't injured, so they lack standing.

Even if the student Plaintiffs were injured, they can't establish traceability and redressability. The allegedly unconstitutional action—the postponement of the course code for AP AAS—was simultaneously premised on two independent bases, one of which wasn't challenged in the suit. That means the alleged injury isn't traceable to the Proviso (there's a concurrent, separate cause) and that an injunction

of the Proviso wouldn't change anything, since the pause on AP AAS would still be supported by the other, unchallenged basis.

2. Plaintiff Kendi lacks standing to assert his First Amendment claim. There is no cognizable First Amendment right for an author to have his book placed or retained in a public-school library. That's because a public school's selection, curation, and management of its libraries is government speech that's not subject to scrutiny under the Free Speech Clause or its forum analysis framework. *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 205 (2003) (plurality); *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005); *People for the Ethical Treatment of Animals v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005); *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008) (Kavanaugh, J., concurring); *Sutliffe v. Epping School District*, 584 F.3d 314 (1st Cir. 2009).

Even if Kendi had asserted a cognizable right, he still lacks standing because he hasn't been excluded from District Three's libraries, much less on the basis of content or viewpoint. District Three's libraries still house other books by Kendi and scores of other authors about similar topics, contents, and viewpoints.

Kendi's standing also fails on traceability and redressability. His alleged injury, like the students' alleged injury, arises not only (allegedly) from the Proviso, but also from a separate, independent, unchallenged basis, namely the review committee's determination that *Stamped* lacks historical accuracy and objectivity

23

and contains multiple errors, omissions, and factual distortions. Accordingly, even if the Court enjoined the Proviso, *Stamped*'s removal would remain unchanged, since it rests on a separate, independent, unchallenged ground.

3.      Plaintiffs-Appellants' void-for-vagueness claims fail at the threshold because none of the Plaintiffs-Appellants are regulated by the Budget Proviso. The Proviso governs only schools and school districts. It does not regulate or apply to students, authors, parents, or advocacy organizations. Because the Proviso does not apply to them, Plaintiffs-Appellants lack standing to assert a vagueness claim. *Abbott v. Pastides,* 900 F.3d 160, 176 (4th Cir. 2018); *Richmond Med. Ctr. for Women v. Gilmore,* 55 F. Supp. 2d 441, 464 n.28 (E.D. Va. 1999), aff'd, 224 F.3d 337 (4th Cir. 2000); *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 854 (6th Cir. 2024).

Kendi's void-for-vagueness claim fails for an additional reason. Even if he had alleged a cognizable claim and a constitutional injury, the removal of *Stamped* lacks traceability and redressability. That's because *Stamped* was removed from circulation pursuant to an independent decision for reasons unrelated to the Proviso. Because this independent, objective, unchallenged basis remains fully operative (and would be so even should this Court overturn the Order), enjoining the Budget Proviso would not restore *Stamped* to classrooms or libraries. The book would remain out of circulation for the same reasons as those initially stated.

24

Nor is redressability satisfied when the requested relief would eliminate only one of several independent, simultaneous causes of an alleged injury and would not actually changing the plaintiff's real-world position. *Sierra Club,* 899 F.3d at 284; *Fischer v. Governor of New Jersey,* 842 F. App'x 741, 751 n.11 (3d Cir. 2021); 15 *Moore's Federal Practice: Civil* § 101.42 (2020).

4.      Plaintiffs-Appellants lack standing to assert their Equal Protection claims because none of the Plaintiffs-Appellants are subject to any governmental classification, obligation, prohibition, sanction, or enforcement under the Proviso. The Proviso regulates only how school districts spend state-allocated funds; it does not regulate students or authors, does not classify them by race, and does not impose any duty or penalty on them, much less treat them differently because of membership in a protected class.

When a law governs third parties and leaves plaintiffs unregulated and unsanctioned, they have not been personally "denied equal treatment" and therefore lack Article III standing to press Equal Protection claims. *Jackson v. City of Houston* 143 F.4th 640, 646 (5th Cir. 2025); *Justice 360 v. Stirling*, 42 F.4th 450, 459 (4th Cir. 2022); *see also Heckler v. Mathews*, 465 U.S. 728, 739–740 (1984).

5.      The Court should decline Plaintiffs-Appellants' invitation to decide, in the first instance, the merits of the parties' substantive arguments and of plaintiffs' request for an injunction. This Court has regularly and repeatedly explained that in

25

situations like this, the district court—not the appellate court—is best suited to consider arguments in the first instance. *See Scott v. Baltimore Cnty.*, 101 F.4th 336, 349–50 (4th Cir. 2024); *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403 (4th Cir. 2020); *Fauconier v. Clarke*, 652 Fed. Appx. 217, 221 (4th Cir. 2016); *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 515 (4th Cir. 2015); *McBurney v. Cuccinelli*, 616 F.3d 393, 404 (4th Cir. 2010). So, too, here.

## ARGUMENT

Article III of the Constitution limits the federal courts to adjudicating actual "cases" and "controversies." *See Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011). "[S]tanding is an essential and unchanging part" of that case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum" of standing has three elements, each of which must be established. *Id.* First, the plaintiff must have suffered an "injury in fact," an invasion of a legally protected interest which is concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* Second, there must be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* Third, it must be "likely," not merely "speculative" that the injury will be "redressed by a favorable decision." *Id.* at 561. Plaintiffs' allegations fail to satisfy these elements.

26

**I.     Student Appellants lack standing to assert their First Amendment claim.**

Student Appellants lack standing to bring their claim that the Budget Proviso violates the First Amendment. First, Student Appellants lack a cognizable right to receive information from the government. Second, even if Student Appellants pled a cognizable right, they have failed to allege an actual injury-in-fact. Third, any alleged injury is not traceable to Defendant Weaver. Finally, any alleged injury by Student Appellants is not redressable by this Court.

**A.     There is no cognizable First Amendment right to receive information from the government.**

Contrary to Student Appellants' claims, the First Amendment does not confer any rights to receive information from the government. The assertion of a non-cognizable right fails to provide Student Appellants with what they lack most—standing.[10]

---

[10] As the District Court acknowledged, the so-called right to receive information is "at best, unsettled" in the public-school context. In fact, as explained more fully in the sections that follow, the supposed right is non-existent, as a majority of the Supreme Court Justices noted in *Pico*. Accordingly, the absence of a cognizable right is one route this Court could take to affirm the district court's conclusion that Student Appellants lack standing. In the alternative, however, the Court could affirm the district court without deciding this question. That's because Student Appellants cannot establish standing even if there *is* a cognizable right to receive information. They can't establish an injury-in-fact, can't show the alleged injury is traceable to Defendant Weaver, and can't show their injuries can be resolved by an order of this Court.

To show Article III standing, a plaintiff bears the burden of establishing "a concrete and particularized invasion of a ***legally protected interest***." *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013) (cleaned up) (emphasis added). "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, . . . it often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). If the nature and source of the claim asserted is not a legally cognizable right, then plaintiffs asserting such a claim lack standing.

For example, in *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 227 (2003), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), plaintiffs claimed that increases in hard-money campaign contributions in a federal law deprived them of an "equal ability to participate in the election process based on their economic status." *Id.* The Supreme Court held that plaintiffs lacked standing because the Court had "never recognized a legal right comparable to the broad and diffuse injury asserted" by the plaintiffs. *Id.* So too here.

Indeed, a majority of the Supreme Court has said so in the context of public-school book selection and removal. The Supreme Court has only once considered this fact pattern, and the severely fractured court reached no clear majority holding. *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982); *see also Muir v. Alabama Educ. Television Comm'n*, 688 F.2d 1033, 1045

n.30 (Former 5th Cir. 1982) (en banc) (noting that in *Pico*, "[a] majority of the justices did not join any single opinion" and that the narrowest opinion (Justice White's) said nothing about the First Amendment, thus concluding that "*Pico* is of no precedential value as to the application of the First Amendment to these issues.").

But one idea, at least, garnered majority agreement amid the splintered opinions in *Pico*: that the so-called right to receive information does *not* require a public-school library to shelve or retain a particular book. *See Muir*, 688 F.2d at 1045 n.30 (noting that a "majority" of *Pico's* Justices agreed "there is no First Amendment obligation upon the State to provide continuing access to particular books"). Chief Justice Burger's opinion said it plainly: "the right to receive information and ideas [] does not carry with it the concomitant right to have those ideas affirmatively provided at a particular place by the government." *Pico*, 457 U.S. at 888 (citation omitted) (Burger, C.J., dissenting). Three Justices joined that opinion in full, and a fourth agreed with this point. *See id.* at 878 (Blackmun, J., concurring in part and concurring in the judgment) ("I do not suggest that the State has any affirmative obligation to provide students with information or ideas, something that may well be associated with a 'right to receive.'"); *id.* at 895 (Powell, J., dissenting) (agreeing with the Chief Justice that a "'right to receive ideas' in a school . . . . finds no support in the First Amendment precedents of this Court"); *id.* at 904, 910 (Rehnquist, J., dissenting) ("agree[ing] fully" with the Chief Justice's opinion and

29

rejecting "the very existence of a right to receive information" in the school setting as "wholly unsupported by our past decisions and inconsistent with the necessarily selective process of elementary and secondary education"); *id*. at 921 (O'Connor, J., dissenting) (joining the Chief Justice's opinion).

The Supreme Court has generally recognized in other contexts that the First Amendment sometimes limits the government's power to prevent one private person from receiving another private person's speech. *See*, *e.g.*, *Martin v. City of Struthers*, 319 U.S. 141, 142–43 (1943) (holding that a city's prohibition on door-to-door distribution of "handbills, circulars[,] or other advertisements" violated the First Amendment based on a person's "right to distribute literature" and another's "right to receive it"); *Thomas v. Collins*, 323 U.S. 516, 538 (1945) (holding a court could not bar a union organizer from delivering a speech to company employees); *Lamont v. Postmaster Gen. of U.S.*, 381 U.S. 301, 306 (1965) (holding the government could not burden someone's right to receive political literature through the mail).

But none of the right-to-receive-information cases concerned the alleged right to receive information *from the government*. And the Supreme Court has never suggested that the First Amendment obligates the government to provide information to anyone. Instead, the right to receive information is a *negative* right— the negative right to be free from "government interference with the exchange of information by private citizens." Erik Ugland, *Demarcating the Right to Gather*

30

*News: A Sequential Interpretation of the First Amendment*, 3 DUKE J. CONST. LAW & PUB. POL'Y 113, 140 (2008); *see also Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 319 (6th Cir. 1998) ("the First Amendment only 'protects individuals' 'negative' rights to be free from government action and does not create 'positive' rights—requirements that the government act'") (quoting Bradley A. Smith, *Money Talks: Speech, Corruption, Equality, and Campaign Finance*, 86 GEO. L.J 45, 67 (1997)); *Pahls v. Thomas*, 718 F.3d 1210, 1239 (10th Cir. 2013) ("The First Amendment does not impose upon public officials an affirmative duty to ensure a balanced presentation of competing viewpoints" given that "freedom of speech is a negative liberty."); Lillian R. Bevier, *Specious Arguments, Intractable Dilemmas,* 94 COLUM. L. REV. 1258, 1277 (1994) (the First Amendment "is a source of negative rights against the government, not a repository of positive entitlement to government favors"). This negative-rights understanding of the Free Speech Clause is consistent with the constitutional text, which simply restricts the government's power to "abridge[]" speech. U.S. Const., amend. I.

The Fifth Circuit's recent *en banc* decision in *Little v. Llano County* is instructive. 138 F.4th 834 (5th Cir. 2025) (*en banc*). In that case, patrons of a county library in Texas sued the local librarian and other officials, alleging they removed 17 books because of their treatment of racial and sexual themes. *Id.* at 836. The district court concluded that defendants abridged plaintiffs' "right to receive

31

information" under the First Amendment and ordered the books be returned to the shelves; a divided Fifth Circuit panel affirmed in part. *Id.*

The *en banc* court reversed, holding that "plaintiffs cannot challenge the library's decision to remove the 17 by invoking a right to receive information" because there is no right to receive "a book of their choice at taxpayer expense." *Id.* at 848, 850–51.[11] The court reasoned that if a public library declines to purchase a book or removes a book from the shelves that it previously purchased, "the library does not prevent anyone from 'receiving' the information in it." *Id.* Because the library does not own every copy of every book, someone could buy the book themself, borrow it from a friend, or even look for it at another library. *Id.*

The Eighth Circuit's recent decision in *Walls v. Sanders,* 144 F.4th 995, 1000 (8th Cir. 2025), further underscores the failure of the arguments propounded by Student Appellants.  In *Walls*, two students sued government officials alleging an Arkansas law violated their rights under the First Amendment because it prohibited teachers from providing instruction and materials on Critical Race Theory (CRT). The court concluded that the students did not have standing to bring their claims

---

[11] Ten of the 17 judges of the Fifth Circuit joined the part of the opinion holding that the defendants' decision to remove the 17 books did not infringe plaintiffs' alleged right to receive information.

because they were "unlikely to succeed on the merits of their right-to-receive claim[.]" *Id.*

Simply put, the Supreme Court has never recognized a right to receive content *from the government*. Neither has this Court, and it shouldn't start now. Student Plaintiffs-Appellants' right-to-receive-content-from-the-government claim is novel, involving a "broad and diffuse injury," *McConnell*, 540 U.S. at 227, that is not legally cognizable. Accordingly, the District Court's ruling can (and should) be affirmed, and Student Plaintiffs-Appellants' claims should be dismissed for lack of standing.

> **B.  Even if their claim rested on a cognizable right, Student Appellants still haven't pled an injury-in-fact because one of them has only a generic, indefinite desire to take AP African American Studies someday, and the others already have access to the equivalent local honors course.**

To establish an injury-in-fact, T.R. and J.S. (and the two NAACP student members) must demonstrate a concrete and particularized invasion of a legally protected interest that is actual or imminent. *Lujan,* 504 U.S. at 560. The students have not faced, nor could they face, any penalty, sanction, punishment, or other adverse action or the threat of any of those things under the Proviso. Their claims of educational harm from the removal of the pilot program AP AAS course code are speculative and lack the requisite concreteness and particularity. For example, the Complaint alleges that T.R., a sophomore enrolled at A.C. Flora High School in

33

Richland County School District One, has an inchoate desire someday to take AP AAS, but he took no concrete steps to do so and had no imminent, definite plans to take the class. JA166. Similarly, the NAACP student members J.C. and A.G. merely "attend schools that [had] planned to offer the AP AAS course" but now they "will no longer be able to take the course." JA235 Even the *Amended* Complaint doesn't offer any degree of factual allegations of concrete, particular plans to take the class in the imminent future. Vague, hypothetical "plans" to take a pilot program course "some day" in the future cannot give rise to injury-in-fact, and without more, T.R.'s (and J.C.'s and A.G.'s) allegations here amount to no more than Ms. Skilbred's plans to go to Sri Lanka "[i]n the future." *Lujan,* 504 U.S at 563–64. As a matter of law, therefore, they lack standing.

The other student Plaintiff, J.S., is a junior at Spring Valley High School. JA142 (Declaration of J.S.). In the Amended Complaint, she alleges that her mom emailed her guidance counselor to see if J.S. could enroll in the AP AAS course for the 2024–2025 school year, but J.S. later learned through her guidance counselor that the class would no longer be offered. JA165–166. Even assuming that was a sufficiently concrete plan of action to establish standing (which isn't conceded), J.S.

34

still lacks standing because her district offers an honors AAS class that would cover the same material and would allow her to sit for the AP exam. *See* p. 17, *supra.* The same is true for the NAACP's two student members, J.C. and A.G., who (even if they had made concrete plans to take the class) are also students in Richland Two high schools and could take the honors class.

## C.    Student Appellants' alleged injuries aren't traceable to Weaver or the Proviso.

Further, the Student Appellants lack standing because their alleged injuries aren't traceable to Weaver. South Carolina school districts retain the ability to offer AAS as an Honors course, even if the AP designation has been removed. The AP AAS course was initially offered in South Carolina merely as a temporary "pilot program" rather than a standard AP course, JA216, and there wasn't any guarantee that it would immediately and automatically be converted to a standard AP course at the conclusion of the initial pilot period.

Neither the Budget Proviso nor any other action or omission of Weaver prohibits districts from providing instruction on African American Studies, and the Ferguson Memo affirmatively encouraged districts to do so. JA095. Therefore, the students' alleged harm of being unable to learn about African American Studies is not attributable to the Budget Proviso itself or to Weaver. And J.S.'s (and J.C.'s and A.G.'s) District is, in fact, doing so! (*See* footnotes 8–9 and accompanying text, *supra*.) And T.R.'s district could do the same if it wishes. If his district chooses not

35

to, the solution isn't to sue Weaver. Therefore, the Student Appellants' alleged injury is not traceable to any named Defendant, and they lack standing to bring their claims. *See Lujan,* 504 U.S. at 560.

The Student Appellants have another traceability problem, too. To the extent T.R.'s alleged injury—the inability to take the AAS class even as an Honors class— is due to his district choosing not to offer that class, his district's decision is not attributable to Weaver. The decision to offer AAS as an Honors course lies within the discretion of the individual school districts. JA191. The decision of their district to offer or refrain from offering AAS as an Honors course would consequently not be attributable to Weaver. Plaintiffs have not demonstrated that their district has refused or is unable to offer the course as an Honors option. Without pleading that their district has definitively excluded African American Studies from its available curricula, the students' claims remain speculative and hypothetical.

### D. Student Plaintiff-Appellants' alleged injuries aren't redressable by the Court.

The Student Appellants have not shown that their alleged injuries are redressable by a favorable decision in this case. Even if the Court were to declare the Budget Proviso unconstitutional and reinstate the AP designation, it is speculative to assume that the students would be able to enroll in the course. The districts retain discretion over their course offerings, and there is no guarantee that a district *would* offer the AP AAS course just because it could, nor is there any

36

guarantee that either student would be able to secure a spot in the class. Consequently, the students' claims fail to meet the requirements for standing under Article III of the Constitution.

In support of their argument, Student Appellants rely on *Guiterrez v. Saenz*, 606 U.S. 305 (2025), a recent Supreme Court case easily distinguishable from this case, where Plaintiff-Appellants *admit* that the South Carolina Department of Education expressly provided multiple reasons for pausing the AP AAS course code. In contrast, *Guiterrez* dealt with instances in which the government asserted one reason for its action, but there was the *possibility* that (a) if that basis were eliminated, the government might in the *future* pivot to assert other bases to justify the action or (b) the government might in the *future* take some entirely new or different action designed to reach the same end result. It does not stand for the proposition, as Plaintiffs-Appellants suggest here, that redressability is established in a case in which the challenged action was *simultaneously* and expressly based on two independent justifications—controversy over the material *and* the impending statewide review and revision of social studies standards—*one of which was not challenged in the suit*. Contrary to Student Appellants' argument, the enjoinment of the Budget Proviso will not change their "legal status" or make full relief more likely. And, as Student Appellants acknowledge, the Ferguson Memo cited a basis

37

apart from the Budget Proviso for canceling the AP AAS course—the impending review of social studies standards.

Similarly, Student Appellants' reliance on *Long v. Bondi,* 151 F.4th 503 (4th Cir. 2025) is misplaced. Indeed, it's not clear why Plaintiff-Appellants think *Long* is relevant, as it doesn't involve a situation in which multiple simultaneous justifications were given (or even where potential *future* justifications could be hypothesized) to support the challenged action. The plaintiff in *Long* sought to challenge his inclusion on a terrorist watch list, which was directly traceable to him being constructively denied from receiving specific "commercially valuable" licenses that related to his work as a truck driver. *Long* at 516. His alleged injury— delay and denial of his application of the licenses—was directly traceable to his placement on the terrorist watchlist, leading the court to conclude "[a]n injunction requiring TSC to remove Long's name from the Watchlist 'would . . . redress his injury by removing the allegedly unconstitutional barrier' to approval of his applications." *Id. (citing Gutierrez v. Saenz,* 606 U.S. 305 (2025)). Maybe so, but that's not analogous to the fact pattern in our case. Here, unlike the plaintiff in *Long*, Plaintiff Students' alleged injury will not be immediately remedied simply by invalidating the Budget Proviso because the challenged action will still rest on the independent, unchallenged justification.

As Defendants-Appellees have continually argued, even if the Budget Proviso was enjoined, Student Appellants' alleged injury—the inability to access the AP AAS—would not be remedied immediately (or at all). Invalidating the Budget Proviso would not automatically reinstate the AP AAS code. And even if it did, reinstatement of the AP AAS code does not mean the course would necessarily be offered at Student Appellants' schools. The Student Appellants' injury would not be redressed by removing the Budget Proviso.

## II.     Plaintiff Kendi lacks standing to assert his First Amendment claim.

Plaintiff-Appellant Kendi's claim suffers from the same affliction as the students—he does not have a cognizable claim.  Even if his claim were cognizable, he still cannot establish injury in fact, traceability, or redressability and, therefore, lacks standing to assert his claims.  The district court's conclusion that Kendi lacked standing was correct and should be affirmed.

### A.     There is no cognizable First Amendment right for an author to have his book placed (or retained) in a public-school library.

As with the Student Appellants, so too Kendi lacks a cognizable right that is the most foundational basis required to establish standing.[12] Kendi's claim fails

---

[12] As with the analysis of the students' First Amendment claim, this argument provides a basis on which the Court can affirm the district court's conclusion. *See* n.10, *supra*. In the alternative, however, the Court could affirm the district court without deciding this question. That's because Kendi cannot establish standing here

39

because he starts from the wrong premise, namely his view that a public-school library is a forum that he allegedly has a constitutional right to access. Not so. A public school's choice of some books for its libraries, and its rejection of others, is government speech; therefore, the selection, curation, and management of the library's contents is not subject to scrutiny under the Free Speech Clause, and the forum analysis framework proposed by Kendi doesn't apply. *See United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 205 (2003) (plurality) (hereinafter "*ALA*") ("[F]orum analysis and heightened judicial scrutiny are . . . incompatible with the discretion that public libraries must have to fulfill their traditional missions."); *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) (affirming the dismissal of First Amendment suit brought by a textbook author and noting that two "key" points to the analysis were (1) that "in establishing and implementing certain governmental functions, the government, including its educational institutions, has the discretion to promote policies and values of its own choosing free from forum analysis or the viewpoint-neutrality requirement," and (2) "the government retains this discretion even where it chooses to employ private speakers to transmit its message"); *Page v. Lexington Cnty. Sch. Dist.*, No. 3:06-249-CMC, 2007 WL 2123784, at *6 (D.S.C. July 20, 2007) (same); *see also* Mark G. Yudof, *Personal Speech and Government*

---

even if there *is*, in the abstract, a cognizable right to place or retain a book on a public-school library.

*Expression*, 38 CASE W. RES. L. REV. 671, 687 (1987) ("Even in the school library, the librarian must normally implement the board's decisions, and certainly the writers of the books do not have a constitutional right to determine what books will be acquired.").

Courts have concluded that library curation is government speech in the context of public libraries, and their reasoning applies even more strongly in the context of public-school libraries, which are not passive repositories of information but are part of a governmental program designed to accomplish a particular purpose and convey specific ideas and message selected by the government. *See People for the Ethical Treatment of Animals v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005) (hereinafter "*PETA*") ("With respect to the public library, the government speaks through its selection of which books to put on the shelves and which books to exclude."); *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008) (Kavanaugh, J., concurring) ("As the case law makes clear, 'government speech' can include not only the words of government officials but also 'compilation of the speech of third parties' by government entities such as libraries[.]"); *see also ALA*, 539 U.S. at 205 (plurality) ("Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.");[13] *Chiras*, 432 F.3d 606, 615

---

[13] *See also ALA*, 539 U.S. at 204 (plurality) ("To fulfill their traditional missions, public libraries must have broad discretion to decide what material to provide to their patrons."); *id.* (a library's "goal has never been to provide 'universal coverage,'" but

(affirming the district court's dismissal of a First Amendment lawsuit brought by an author whose textbook was excluded from public schools, holding that "[b]ecause the Board must necessarily exercise its editorial discretion in selecting which private entities will convey the message the state selects, forum analysis and the viewpoint neutrality requirement are inapposite in this case.").

Selecting materials based on their "requisite and appropriate quality" necessarily means choosing some content and viewpoints while rejecting others, and the First Amendment allows this. *See ALA*, 539 U.S. at 204–08. When, as here, government officials determine how public funds and spaces will be used to present ideas and messages, those decisions constitute government speech. *See Sutliffe v. Epping School District*, 584 F.3d 314 (1st Cir. 2009) (rejecting the plaintiffs' Free Speech challenge and holding that when the government "uses its discretion to select between the speech of third parties for presentation" through government channels, that decision and selection constitutes government speech and "an expressive act by the government"); *see also Illinois Dunesland Preservation Soc'y v. Illinois Dept.*

---

rather "to provide materials 'that would be of the greatest direct benefit or interest to the community'") (citation omitted); *id*. ("libraries collect only those materials deemed to have 'requisite and appropriate quality'"); *id*. at 208 ("A library's need to exercise judgment in making collection decisions depends on its traditional role in identifying suitable and worthwhile material[.]"); *id*. at 217 (Breyer, J., concurring in judgment) (referring to "the discretion necessary to create, maintain, or select a library's 'collection'").

*of Natural Resources*, 584 F.3d 719, 721 (7th Cir. 2009) (rejecting the plaintiffs' Free Speech challenge and holding that the government's selection of which private messages to display or present to the public constitutes government speech); *PETA*, 414 F.3d at 28 (rejecting plaintiff's Free Speech claim and, analogizing to the library context, noting that "the government speaks through its selection of which books to put on the shelves and which books to exclude").

**B.    Kendi was not "excluded" from District Three's libraries, much less on the basis of his viewpoints and, therefore, has not established a constitutional injury.**

Even if there were a cognizable right for an author's work to be included (or, at least, not excluded) from a public library, Kendi still lacks standing because he hasn't been excluded from District Three's libraries. District Three's libraries still house Kendi's book *How to Be an Antiracist* and *Barracoon: Adapted for Young Reader—The Story of the Last Black Cargo*. JA538 (Atkinson Decl). Kendi describes the former book as one that "reshapes the conversation about racial justice in America" and helps the reader to "rethink" and "reexamine" the "policies and larger social structures" in America today. https://www.ibramxkendi.com/how-to-be-an-antiracist (visited January 12, 2026). Kendi's books and perspectives on race, racism, antiracism, and the black experience in America have not been "excluded" from District Three's libraries. He lacks standing to claim otherwise.

Even focusing solely on *Stamped*, Kendi still lacks standing.  The district court's reasoning was correct: *Stamped* was removed on an independent, non-challenged basis. JA979. That basis—the Materials Selection Criteria— and decision mean *Stamped* will continue to remain out of circulation, even if the Budget Proviso was invalidated.

Furthermore, to establish an injury-in-fact, Kendi must demonstrate a concrete and particularized invasion of a legally protected interest that is actual or imminent. *Lujan,* 504 U.S. at 560. Kendi's nebulous claim of "personal and professional harm" due to the removal of *Stamped* from school libraries is speculative and lacks the requisite concreteness and particularity. JA165. Kendi's general statement of "personal and professional harm" fails to establish any concrete injury.

### C.   Kendi's alleged injury is not traceable to the budget proviso.

Even if Kendi could establish an injury-in-fact, he must also demonstrate a causal connection between the injury and the conduct of which he complains. *Lujan,* 504 U.S. at 560. The injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* Here, there's no traceability between the Budget Proviso and Kendi's alleged harm. The Proviso, which prohibits the expenditure of state funds by schools for instruction on certain concepts, does not directly regulate Kendi's actions or prevent him from "disseminating his messages." And the proviso doesn't have any

44

enforcement mechanism or penalties that can be brought to bear directly against Kendi.

In addition, Kendi falters on the traceability prong because both the contemporaneous evidence and subsequent declarations demonstrate that the removal of *Stamped* was a result not of the Proviso but because of the book's factual and historical errors, omissions, distortions, and misrepresentations. JA078 (explaining the committee's removal decision was based on the fact that *Stamped* contained "inaccuracies," "conjecture," and a "lack of objectivity"); JA546–547 (Rye Decl.); JA550 (Bryant Decl.); JA553 (Ruff Decl.); JA556 (High Decl.); JA559 (Fox Decl.); JA562–564 (Expert Declaration of Prof. David Bernstein).

Kendi's argument to the contrary badly misapprehends the facts—despite this misapprehension being explained to him already in this litigation. Specifically, he argues that "Notes from the *review committee . . .* mirror the Budget Proviso's operative language." Plaintiff-Appellants' Br. at 13 (citing JA80–81) (emphasis added). But that's facially implausible. The document contains the notes of *one* of the Committee's members. It speaks in singular personal pronouns ("*I* have read the book") and lists examples supporting that person's conclusion ("*my* decision"). JA80–81.

The notes reference the Proviso once. (*Id.* ("[T]he book constantly presents the analogy that being white equals racism. This thought would be adverse to the

45

state requirement that books under the theme SCE: Partisanship Curriculum item number 2 – an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously.").) But that assertion does not, as Plaintiff claims, mean that the reviewer, much less the Committee, discriminated against Kendi based on his viewpoint. Kendi, one hopes, would disavow the analogy that the reviewer perceived in the book (that being White equals racism). But even so, the reviewer hardly had discriminatory intent when his expressly stated belief was that he was *eliminating* discriminatory ideas that were conveyed as true—an endeavor that is a legitimate governmental and pedagogical purpose.[14] In any event, regardless of what that one reviewer thought, the *Committee's* reasoning and explanation didn't rest on the Proviso. It relied, instead, on the troubling lack of objectivity and accuracy. JA078. In short, the Committee did not remove the book based on its viewpoints or because of the Proviso. Kendi suffered no constitutional injury, and he lacks standing.

---

[14] *See*, *e.g.*, *Univ. of Penn. v. EEOC*, 493 U.S. 182, 193 (1990) (noting in the context of racial discrimination in educational settings that "[f]ew would deny that ferreting out this kind of invidious discrimination is a great, if not compelling, governmental interest"); *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964) ("[T]he historical fact [is] that the central purpose of the Fourteenth Amendment was to eliminate racial discrimination."); *see also Miami Univ. Wrestling Club. v. Miami Univ.*, 195 F. Supp. 2d 1010 (S.D. Ohio 2001) ("The elimination of sex discrimination in publicly funded educational institutions is an important governmental objective.") (citations omitted).

**D.** **Kendi's alleged injury is not redressable through the relief he seeks.**

Like Student Appellants, Kendi's injury is not redressable through the relief he seeks. Invalidating the Budget Proviso would not return *Stamped* to circulation or otherwise remedy the harms Kendi has allegedly experienced, since the alleged injury rests on the independent, unchallenged basis of its documented historical inaccuracies, misrepresentations, and omissions, and lack of objectivity.

**III.** **Student Appellants and Kendi lack standing to assert their Fourteenth Amendment "void for vagueness" claim.**

**A.** **The district court correctly held that the Student Appellants and Kendi lack standing to bring void-for-vagueness claims.**

All Plaintiffs-Appellants' void-for-vagueness claims fail at the threshold because none of the Plaintiffs-Appellants are regulated by the Budget Proviso.[15] By

---

[15] Plaintiffs-Appellants assert the district court was required to evaluate standing on a claim-by-claim basis and criticize the court for not separately addressing Plaintiffs' void-for-vagueness theories. *See* Plaintiffs-Appellants Br. at 42 n.11. The Order's reasoning, however, turns on redressability of Appellants' alleged injuries, not on the label attached to any particular constitutional theory of recovery for those injuries. For the Student Appellants, the court determined that the AP AAS pilot ended and the course code was removed for reasons beyond the Budget Proviso, including the Department's stated, legitimate, unchallenged grounds, and that an injunction against the Proviso would not likely change course availability because the independent decisionmaker retained discretion and the unchallenged rationale would remain operative. JA974–76. For Kendi, the court found that District Three's removal recommendation expressly invoked the Materials Selection Criteria and that those Criteria supplied an independent, unchallenged ground for removal; thus, even if the Budget Proviso were enjoined, *Stamped* would likely remain out of circulation. JA977–79. Because Plaintiffs could not establish redressability as to the concrete actions they challenge, but rather asserted claims that "rest[ed] on speculation," the

47

its plain terms, the Proviso governs only the use of state-allocated funds by schools and school districts. It does not regulate students, authors, parents, or advocacy organizations at all. Nor does it impose obligations, prohibitions, or standards of conduct on any Plaintiff-Appellant. Because the Proviso does not apply to them, Plaintiffs-Appellants cannot plausibly claim uncertainty about how to comply with it or how to avoid violating it.

That defect is fatal to the claimants' standing to bring a vagueness challenge. A void-for-vagueness claim requires that a plaintiff be subject to a law's commands or prohibitions, such that unclear language leaves the plaintiff unable to determine what conduct is required or forbidden. *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 854 (6th Cir. 2024) (requiring "credible threat of enforcement.") (quoting *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024)); *Abbott v. Pastides,* 900 F.3d 160, 176 (4th Cir. 2018) (holding that a "credible threat of enforcement is critical. . .").

Plaintiffs who are not subject to the challenged laws have no standing to claim they are void for vagueness. *See*, *e.g*., *Richmond Med. Ctr. for Women v. Gilmore,* 55 F. Supp. 2d 441, 464 n.28 (E.D. Va. 1999), aff'd, 224 F.3d 337 (4th Cir. 2000)

---

court's standing ruling necessarily foreclosed all of their claims, including vagueness. JA976.

48

("And, as a matter of common sense, one to whose conduct a statute clearly does not apply surely has no standing. . .").

Here, Plaintiffs-Appellants are not required to do anything, refrain from doing anything, or modify their behavior in response to the Proviso in any way. They cannot violate it, and they face no risk of sanction under it. Defendants-Appellees do not concede that the Proviso is vague in any way. Its text is plain and speaks for itself. However, as a threshold matter, it simply does not proscribe the conduct of any Plaintiff-Appellant.

This is not a case in which individuals must guess at the boundaries of lawful conduct under threat of enforcement. The Proviso contains no enforcement mechanism directed at Plaintiffs-Appellants and authorizes no penalties against them. It does not expose them to liability of any kind. Therefore, any alleged vagueness in the Proviso does not inflict a personal, cognizable injury upon them. The Proviso's alleged indeterminacy, even if assumed, affects only the discretion of schools and districts in spending public funds. It does not place Plaintiffs-Appellants in a position of having to conform their own conduct to a supposedly unclear legal standard.

In short, Plaintiffs-Appellants' vagueness claims fail for the same reason their other claims fail. The Proviso does not regulate them, does not expose them to enforcement, and does not place them at risk of violation. Where a law governs only

third parties, appellants lack standing to assert that the law is impermissibly vague as applied to anyone, much less to themselves.

### B. The district court correctly held that Kendi lacks standing to bring void-for-vagueness and viewpoint discrimination claims

Plaintiffs-Appellants' argument that Kendi has standing to challenge the Budget Proviso rests on a fundamental misunderstanding of the district court's decision and of what a standing determination requires. The district court did not dismiss Kendi's claims because it disputed the veracity of his allegations or resolved factual disputes against him. Instead, the court assumed, for purposes of its standing analysis, that Kendi suffered an injury and that the Budget Proviso played some role in the decision to remove his book. JA977. Even on those assumptions (which Defendants-Appellees did not concede), the court correctly concluded that Kendi failed to satisfy redressability, an independent and essential element of Article III standing.

Because Plaintiffs-Appellants cannot show that the relief they seek would likely remedy Kendi's alleged injury, the district court's dismissal should be affirmed.

### 1. The District Court assumed injury and causation and dismissed solely for lack of redressability

At the outset, note precisely what the District Court held. The court expressly assumed, without deciding, that Kendi suffered a causally related injury from the

removal of *Stamped* and that the Budget Proviso may have influenced the removal of *Stamped*. JA977–978.[16] The court's standing analysis, therefore, did not turn on whether Kendi plausibly alleged viewpoint discrimination, nor on whether his allegations were entitled to favorable inferences at the pleading stage. Instead, the court dismissed his claims because he failed to demonstrate that a favorable decision would likely redress his claimed injury. JA979.

Plaintiffs-Appellants repeatedly assert that the district court improperly rejected allegations or privileged competing evidence. That characterization is simply incorrect. The court's reasoning makes clear that even if every factual allegation that Kendi advances were taken as true, the outcome would not change. The dispositive defect is that the requested relief would not return *Stamped* to circulation or otherwise remedy the harm Kendi claims.

---

[16] And, as the court noted, at least the latter assumption was "not a small one." JA978 n.10. To support this conclusion, Kendi provided a single page of notes—which mentions the Proviso a grand total of ***one time***—from an unidentified reviewing member. *Id.* The allegation that *Stamped* was removed because of the Proviso therefore balances treacherously on this single toothpick of fact. On the other hand, each member of the committee filed declarations affirming that their decisions to vote to remove *Stamped* were based on their "evaluation of its factual or historical veracity, accuracy, and completeness." *Id.* However, Appellants' insistence that the court improperly weighed evidence or discredited allegations relating to Kendi misses the point. The court's holding does not depend on rejecting Kendi's factual narrative. It depends on the legal reality that invalidating the Proviso would not undo the committee's stated findings or compel reinstatement of the book.

51

## 2. An independent, non-challenged basis for removal defeats redressability.

*Stamped* was removed from circulation pursuant to an independent decision by a District Three review committee applying its Materials Selection Criteria, which contained an objective, ten-factor policy governing material removal.[17] That decision rested on findings that the book contained inaccuracies and lacked objectivity inconsistent with the purpose of a nonfiction educational text. JA978–979. Critically, those Materials Selection Criteria operate totally separate from the Budget Proviso. The district court emphasized that the removal recommendation expressly cited the Criteria as its basis and that the Criteria themselves require evaluation of a text's validity, accuracy, and objectivity. JA977–979.

Because this independent, objective, unchallenged basis remains fully operative (and would be so even should this Court overturn the Order), enjoining the Budget Proviso would not restore *Stamped* to classrooms or libraries. The book would remain out of circulation for the same reasons as those initially stated. As the District Court correctly explained, where an independent, non-challenged action causes the same alleged harm, a favorable ruling does not satisfy redressability.

---

[17] Plaintiffs-Appellants argue that "The district court erred when it described District Three's justifications surrounding the Materials Selection Criteria as 'unchallenged.'" Plaintiffs-Appellants Br. at n.12. The only citation Appellants provide for this argument is, bafflingly, the district court's description of the Criteria as "non-challenged." JA979.

JA979. *See*, *e.g.*, *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018); *Delta Constr. Co. v. E.P.A.*, 783 F.3d 1291, 1296–97 (D.C. Cir. 2015) (per curiam) ("[E]ven were we to vacate the EPA standards, the NHTSA standards would still increase the price of vehicles. Accordingly, [] Petitioners cannot demonstrate . . . that a favorable decision by this court would redress [their injury].")

Appellants never meaningfully confront this logic. Instead, they attempt to collapse causation and redressability into a single inquiry, asserting that because the Proviso allegedly influenced the decision to remove *Stamped*, invalidating it necessarily provides relief. The district court correctly rejected that approach. Even assuming influence of the Proviso on one member, the continued existence of an independent removal decision means the injury persists unchanged.

### 3. Plaintiffs-Appellants' "one obstacle" theory misstates the redressability requirement

Plaintiffs-Appellants argue that removing the Budget Proviso would at least eliminate one obstacle to *Stamped's* return, and that this is sufficient for standing. Perhaps it may remove a molehill; it will not remove the mountain. The district court correctly rejected this theory.

This is not a case involving multiple sequential hurdles where removing one barrier makes relief meaningfully more likely. It is a case involving concurrent, independent causes that each, standing alone, would produce the same result. The

Materials Selection Criteria provide a complete and sufficient basis for removal regardless of the Proviso's existence. JA979.

As the district court explained, redressability is not satisfied where the requested relief would eliminate one of several independent causes of an injury without actually changing the plaintiff's real-world position. *See Sierra Club,* 899 F.3d at 284; *see also Fischer v. Governor of New Jersey,* 842 F. App'x 741, 751 n.11 (3d Cir. 2021); 15 *Moore's Federal Practice: Civil* § 101.42 (2020) ("[T]he redressability element [of Article III standing] is not satisfied if a favorable result would eliminate one of multiple causes of an injury without actually decreasing the injury at all."). Here, even a complete injunction against the Budget Proviso— or, even, total invalidation of it—would leave *Stamped* excluded for the same objective, unchallenged, legitimate pedagogical reasons. The relief Appellants seek does not bring Kendi any closer to having his book recirculated.

Appellants attempt to sidestep the independent-basis problem with a late-breaking argument, suggesting that the Materials Selection Criteria rationale was pretextual. That argument fails as well, for three reasons. *First*, there is no allegation or piece of evidence in the record tending to prove that the committee's employment of the Materials Selection Criteria was a pretextual justification for constitutionally impermissible action. Such a statement is utterly baseless and finds no support in the

record. The removal recommendation itself cited the Criteria, and the court relied on that contemporaneous and unchallenged explanation. JA979.

*Second*, even if Appellants dispute the committee's motivations, standing requires more than allegations of improper intent. It requires a showing that the requested relief would likely change the outcome. Appellants never explain how enjoining the Budget Proviso would invalidate the committee's findings (which they haven't challenged) regarding *Stamped's* lack of factual accuracy and objectivity or require District Three to reverse its decision.

*Third*, converting every redressability problem into a pretext dispute would effectively eliminate the redressability requirement altogether. The district court correctly declined to do so.

Because *Stamped* would remain out of circulation even if the Budget Proviso were enjoined, the alleged downstream harms would likewise persist. Overruling the Order would not require recirculation of the book, would not alter the committee's findings, and would not compel the District to change its policies regarding application of the Materials Selection Criteria—which, it bears repeating, remain unchallenged. JA979.

### 4. Plaintiffs-Appellants' standing to bring both vagueness and viewpoint discrimination claims fails for the same reason.

Plaintiffs-Appellants assert that the standing analysis is "identical" for Kendi's vagueness and viewpoint discrimination claims. Plaintiffs-Appellants Br. at

55

42. To the extent that is true, it undermines rather than supports their position. Because redressability is lacking as to the removal of *Stamped*, both theories fail. Plaintiffs-Appellants identify no separate injury tied to either theory that would be remedied by enjoining the Proviso independently of the book's continued exclusion under the Materials Selection Criteria.

### 5. The district court's standing decision should be affirmed.

The district court carefully applied Article III's requirements and identified a clear, dispositive defect in Kendi's standing. Even accepting Plaintiffs-Appellants' factual allegations as true, the relief they seek would not likely remedy the injury alleged. Where an independent, unchallenged basis exists, Article III does not permit federal courts to issue advisory rulings. The district court correctly dismissed Kendi's claims for lack of standing, and its judgment should be affirmed.

## IV. Student Appellants and Kendi lack standing to assert their Equal Protection claims.

To succeed on their Equal Protection claims, Plaintiffs-Appellants were required to demonstrate Article III standing. *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 628 (4th Cir. 2023). As set forth above, however, they did not do so.[18] All the Plaintiffs-Appellants' Equal Protection theories fail at

---

[18] As discussed in footnote 15, *supra*, the district court did not assess standing for each claim individually because doing so would be unnecessary. The absence of redressability is common to all the Plaintiffs-Appellants and all their claims.

the threshold because none of the Plaintiffs-Appellants are subject to any governmental classification, obligation, prohibition, sanction, or enforcement under the Budget Proviso. The Proviso regulates only how school districts spend state-allocated funds; it does not regulate students or authors, does not classify them by race, and does not impose any duty or penalty on them, much less treat them differently because of membership in a protected class.

When a law governs third parties and leaves plaintiffs unregulated and unsanctioned, they have not been personally "denied equal treatment" and therefore lack Article III standing to press Equal Protection claims. As the Fifth Circuit recently held in *Jackson v. City of Houston*,

> [The] rule against general grievances applies with as much force in the equal   protection context as in any other. [E]ven if a governmental actor is discriminating on the basis of race, the resulting injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.

143 F.4th 640, 646 (5th Cir. 2025) (quoting *United States v. Hays*, 515 U.S. 737, 743 (1995)) (quotation marks and internal citation omitted).

An Equal Protection injury requires that a plaintiff *himself* be subject to, or personally disadvantaged by, a government classification or unequal treatment, not merely that government policy allegedly influences a third party's discretionary choices. *See*, *e.g.*, *Justice 360 v. Stirling*, 42 F.4th 450, 459 (4th Cir. 2022). Further, nebulous claims of generalized harm in the form of stigma to racial groups accords

a basis for standing only to "those persons who are personally denied equal treatment[.]" *Heckler v. Mathews*, 465 U.S. 728, 739–740 (1984).

Here, to the extent the Proviso dictated *any* state action, no Appellant can demonstrate that they have been treated differently via that action because of their membership in any protected class. The pilot program for AP AAS was removed for all students, regardless of race. Likewise, Kendi is not regulated by the Proviso, is not the subject of any state classification, and there is no evidence in the record that District Three removed his book because of his race.

Nor can Appellants salvage standing by recasting their claims as "intent" or "selective enforcement" theories. Even assuming *arguendo* discriminatory motivation in enactment (which is neither demonstrated nor conceded), Article III still requires a ***plaintiff-specific*** injury-in-fact: a personal denial of equal treatment that is fairly traceable to the challenged policy and likely to be redressed by the requested relief. Generalized allegations about what "selective enforcement" ***could*** do to Black people at large do not suffice, as a matter of law. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ("***[T]he plaintiff*** must have suffered an 'injury-in-fact'") (emphasis added); *see also Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979) (fears of enforcement that are "imaginary or wholly. Speculative" are insufficient to confer standing); *Cousins v. Sch. Bd. of Orange Cnty., Fla.*, 687 F. Supp. 3d 1251, 1279 (M.D. Fla. 2023) ("Because there

is no allegation that [any Plaintiff] has been treated unequally by the removal of materials or the selection of material to be removed, Plaintiffs have failed to allege an injury.").

Plaintiffs have pointed to no state-imposed classification or impact of unequal treatment that has tangibly affected them, specifically, in any legally cognizable way. General, nebulous claims that the Proviso could be enforced in a manner which may potentially "stigmatize" Black "history and identity" are nothing more than speculation. They're certainly not legally cognizable injuries-in-fact for purposes of assessing Article III standing, nor are they injuries to these specific Plaintiff-Appellants. *See Montgomery Cnty.*, 78 F.4th at 631 ("[Plaintiffs'] claims likewise depend on a speculative fear, the occurrence of which requires guesswork as to actions of others."); *Babbitt,* 442 U.S. at 302 (fears of enforcement that are "imaginary or wholly speculative" are insufficient to confer standing). As this Court recently noted in *Menders v. Loudoun Cnty. Sch. Bd*.,

> [F]ederal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory opinions.

65 F.4th 157, 163 (4th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021)).

59

Appellants' Equal Protection claims fail for the same reason their other claims fail. The Proviso does not classify, regulate, restrict, or sanction them; any alleged discrimination is neither to them nor remedied by enjoining the Proviso.

**V.    The Court should reject Plaintiffs-Appellants' invitation to decide, in the first instance, the merits of the parties' substantive arguments and of plaintiffs' request for an injunction.**

Because the district court dismissed the case and denied Plaintiffs' request for preliminary injunction due to their lack of redressable injuries and, therefore, their lack of standing, the court did not consider and rule on Defendants' arguments under Rule 12(b)(6) or on the *Winter* factors opposing the preliminary injunction. This Court should affirm for the reasons described in the preceding sections of this brief. But if the Court disagrees with the district court and Defendant-Appellees' view of the law, it should decline Plaintiffs-Appellants' irregular request to decide the substantive arguments and injunction factors in the first instance. *See* Plaintiffs-Appellants' Br. at 19 n.8 and 54–57.

This Court has regularly and repeatedly explained that in situations like this, the district court—not the appellate court—is best suited to consider arguments in the first instance. *See, e.g.*, *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 515 (4th Cir. 2015) ("The district court is in a better position to consider the parties' arguments in the first instance, which can be presented at length rather than being discussed in appellate briefs centered on the issues the district court did

60

decide."). In such situations, remand for the district court's consideration of the previously undecided issues and arguments is the "better," "usual," and "most prudent" approach:

> Put succinctly, our Court is one "of review, not of first view." [] Because the complaint's contentions regarding injunctive relief and equal protection were not addressed by the district court, . . . our most prudent disposition is to vacate and remand, and thus "allow the district court to address [them] in the first instance."

*Fauconier v. Clarke*, 652 Fed. Appx. 217, 221 (4th Cir. 2016); *see also City of Lockhart v. United States*, 460 U.S. 125, 133 n.9 (1983) ("The District Court did not pass on this argument, and we decline to review it in the first instance. The issue remains open on remand."); *McBurney v. Cuccinelli*, 616 F.3d 393, 404 (4th Cir. 2010) (declining to address merits of § 1983 claim in the first instance and, instead, remanding to the district court for its analysis and ruling); *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403 (4th Cir. 2020) ("The district court did not rule on these alternative arguments in its decision, and we decline to address them in the first instance."); *Scott v. Baltimore Cnty.*, 101 F.4th 336, 349–50 (4th Cir. 2024) (even when the "ultimate conclusion" "presents a legal question," "we think it better to follow our usual practice of allowing the district court to conduct the required analysis in the first instance").

61

## CONCLUSION

For the foregoing reasons, the Court should affirm the careful and well-reasoned ruling of the district court.

## REQUEST FOR ORAL ARGUMENT

Defendants-Appellees request oral argument under Rule 34, Fed. R. App. P.

Respectfully submitted,

/s/ Miles E. Coleman

Miles E. Coleman
William A. Neinast
NELSON MULLINS RILEY & SCARBOROUGH LLP
2 West Washington Street / Suite 400
Greenville, SC 29601
(864) 373-2300
miles.coleman@nelsonmullins.com
will.neinast@nelsonmullins.com

*Counsel for Defendants Ellen Weaver, in her official capacity as South Carolina Superintendent of Education, and Lexington County School District Three*

62

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(1) because it contains 12,998 words. This motion complies with the typeface and typeset requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


January 12, 2026                                   /s/ Miles E. Coleman
                                                   Miles E. Coleman
                                                   Counsel for Defendants-Appellees