No. 25-2216

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SOUTH CAROLINA STATE CONFERENCE OF THE NAACP; IBRAM X.
KENDI; T.R., a minor by and through their father and next friend, TODD
RUTHERFORD; J.S., a minor by and through their mother and next friend,
AMANDA BRADLEY,
*Plaintiffs-Appellants*,

v.

ELLEN WEAVER, in her official capacity as South Carolina Superintendent of
Education; LEXINGTON COUNTY SCHOOL DISTRICT THREE,
*Defendants-Appellees.*

On Appeal from the United States District Court
for South Carolina, Case No. 3:25-cv-00487-SAL

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS

JIN HEE LEE
CHARLES MCLAURIN
KACEY MORDECAI
JASON P. BAILEY
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
(202) 682-1300

KEVIN E. JASON
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

TYLER D. BAILEY
BAILEY LAW FIRM, LLC
1430 Richland St.
Columbia, SC 29201
(803) 667-9706

DEBO P. ADEGBILE
THAIS R. RIDGEWAY
WILMER CUTLER PICKERING HALE AND
DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

*Counsel for Plaintiffs-Appellants*
(Additional counsel on next page)

MOLLY CALHOON SILVA
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 S Grand Ave, Ste. 2400
Los Angeles, CA 90071
(213) 443-5300

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. v

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF ISSUES ................................................................. 1

PERTINENT STATUTES ................................................................... 3

INTRODUCTION ............................................................................. 4

STATEMENT OF CASE .................................................................... 7

    I. Relevant Facts.......................................................................... 7

        A.    Enactment of the Budget Proviso and its Racially Motivated Purpose 7

        B.    Removal of Advanced Placement African American Studies Pursuant to the Budget Proviso ..................................................................... 9

        C.    Defendant School District Three's Removal of *Stamped* Pursuant to the Budget Proviso ........................................................................12

        D.    Racial Motivation Behind Enactment of the Budget Proviso.............13

    II. Procedural History .................................................................17

SUMMARY OF ARGUMENT .........................................................20

ARGUMENT....................................................................................23

    I. Standard of Review.................................................................23

    II. Plaintiffs Have Standing to Pursue Their First and Fourteenth Amendment Claims...........................................................................................25

        A.    Student Plaintiffs Have Standing to Bring a Right to Receive Claim.26

            1.    At Least One Student Plaintiff Sufficiently Alleged an Injury in Fact…..................................................................................26

            2.    Student Plaintiffs Sufficiently Alleged That Their Injuries Are Traceable to the Budget Proviso. .........................................32

            3.    Student Plaintiffs' Injuries Are Redressable by Enjoining the Budget Proviso................................................................................35

B.     Dr. Kendi Has Standing to Bring Vagueness and Viewpoint Discrimination Claims. ...............................................................41

C.     Student Plaintiffs Sufficiently Allege Standing to Bring a Void for Vagueness Claim. ........................................................................46

III. Plaintiffs Sufficiently Alleged Standing to Bring Equal Protection Claims. 47

IV. Plaintiffs Are Entitled to a Preliminary Injunction......................................54

CONCLUSION .................................................................................57

REQUEST FOR ORAL ARGUMENT ...............................................57

ADDENDUM .................................................................................. A-1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Pastides*,
900 F.3d 160 (4th Cir. 2018)............................................................28

*Acosta v. Huppenthal*,
No. 10-CV-623-TUC, 2012 WL 12829991 (D. Ariz. Jan. 10, 2012)...............29

*Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,
557 F.3d 1177 (11th Cir. 2009)..................................................29, 32

*Arce v. Douglas*,
793 F.3d 968 (9th Cir. 2015).............................................25, 46, 47

*Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*,
560 F. Supp. 3d 929 (D. Md. 2021)..................................................50

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
457 U.S. 853 (1982) (plurality opinion).........................................41

*Brown v. Bd. of Educ. of Topeka*,
347 U.S. 483 (1954)..............................................................53, 54

*Crookshanks ex rel. C.C. v. Elizabeth Sch. Dist.*,
No. 1:24-CV-03512-CNS-STV, 2025 WL 863544 (D. Colo. Mar.
19, 2025), *appeal docketed*, No. 25-1105 (10th Cir. Mar. 21, 2025)...............31

*California v. Texas*,
593 U.S. 659 (2021)....................................................................35

*Carcano v. Cooper*,
350 F. Supp. 3d 388 (M.D.N.C. 2018)...........................................49

*Carolina Youth Action Project v. Wilson*,
60 F.4th 770 (4th Cir. 2023)........................................................25

*Cooksey v. Futrell*,
721 F.3d 226 (4th Cir. 2013)........................................................25

*Davison v. Randall*,
   912 F.3d 666 (4th Cir. 2019), *as amended* (Jan. 9, 2019) ................................25

*Deal v. Mercer Cnty. Bd. of Educ.*,
   911 F.3d 183 (4th Cir. 2018) ...............................................................35, 40, 45

*Di Biase v. SPX Corp.*,
   872 F.3d 224 (4th Cir. 2017) ...........................................................................55

*Dixon v. Edwards*,
   290 F.3d 699 (4th Cir. 2002) ....................................................................35, 36

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*,
   665 F.3d 524 (3d Cir. 2011) .............................................................................52

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) .........................................................................................35

*Giovani Carandola, Ltd. v. Bason*,
   303 F.3d 507 (4th Cir. 2002) ...........................................................................57

*Gutierrez v. Saenz*,
   606 U.S. 305 (2025) ...................................................... 20, 35, 36, 38, 39

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*.,
   892 F.3d 613 (4th Cir. 2018) ...........................................................................35

*E.K. ex rel. Keeley v. Dep't of Def. Educ. Activity*,
   No. 1:25-CV-637, 2025 WL 2969560, slip op. (E.D. Va. Oct. 20,
   2025) ...........................................................................................26, 29, 46

*Kerns v. United States*,
   585 F.3d 187 (4th Cir. 2009) .....................................................................7, 24

*Larson v. Valente*,
   456 U.S. 228 .....................................................................................................36

*Laufer v. Naranda Hotels, LLC*,
   60 F.4th 156 (4th Cir. 2023) ....................................................................25, 38

*Lee v. Weisman*,
   505 U.S. 577 (1992) .................................................................................30, 31

*Legend Night Club v. Miller*,
  637 F.3d 291 (4th Cir. 2011)..............................................................56

*Long v. Bondi*,
  151 F.4th 503 (4th Cir. 2025)......................................................39, 40

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).............................................. 26, 32, 35, 36, 53

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable
  Operating Co.*,
  22 F.3d 546 (4th Cir. 1994), *abrogated on other grounds by Winter
  v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...........................56

*NAACP v. U.S. Dep't of Educ.*,
  2025 WL 1196212 (D.D.C. Apr. 24, 2025)......................................46

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of
  Jacksonville, Fla.*,
  508 U.S. 656 (1993).......................................................................50

*Neale v. Hogan*,
  No. 21-7287, 2022 WL 12325186 (4th Cir. Oct. 21, 2022) .............34

*Newsom v. Albemarle Cnty. Sch. Bd.*,
  354 F.3d 249 (4th Cir. 2003).........................................................57

*PEN American Center, Inc. v. Escambia County School Board*,
  711 F. Supp. 3d 1325 (N.D. Fla. 2024) ..............................29, 30, 32

*Penguin Random House LLC v. Gibson*,
  No. 6:24-CV-1573-CEM-RMN, 2025 WL 2408178 (M.D. Fla.
  Aug. 13, 2025), *appeal docketed*, No. 25-13181 (11th Cir. Nov. 12,
  2025) ............................................................................................29

*People for the Ethical Treatment of Animals, Inc. v. Stein*,
  737 F. App'x 122 (4th Cir. 2018)...................................................25

*Peterson v. Nat'l Telecomms. & Info. Admin.*,
  478 F.3d 626 (4th Cir. 2007)..........................................................24

*Planned Parenthood of S.C., Inc. v. Rose*,
  361 F.3d 786 (4th Cir. 2004)..........................................................42

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
   945 F.2d 765 (4th Cir. 1991) ............................................................34

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*,
   547 U.S. 47 (2006) ...............................................................25, 27

*Shoenthal v. Raoul*,
   150 F.4th 889 (7th Cir. 2025), *appeal docketed*, No. 25-541 (U.S.
   Nov. 4, 2025) ........................................................................40, 45

*Sierra Club v. U.S. Dep't of the Interior*,
   899 F.3d 260 (4th Cir. 2018) ............................. 37, 40, 43, 45

*Va. State Conf. NAACP v. Cnty. Sch. Bd. of Shenandoah Cnty.*,
   2025 WL 271705 (W.D. Va 2025) ...................................................53

*Walden v. Kosinski*,
   2025 WL 2413251 (2d Cir. May 2, 2025) .......................................45

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................47

*Wikimedia Found. v. Nat'l Sec. Agency*,
   857 F.3d 193 (4th Cir. 2017) .........................................................24

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ...........................................................................55

*Wright v. Cap. One Bank (USA)*,
   2024 WL 920057 (E.D. Va. Mar. 4, 2024) .....................................32

*Wright v. N.C.*,
   787 F.3d 256 (4th Cir. 2015) ...................................................43, 44

*WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*,
   553 F.3d 292 (4th Cir. 2009) .........................................................55

**Statutes**

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 1343 ...............................................................................1

42 U.S.C. § 1983..................................................................................................1

**Other Authorities**

Mem. from C. Matthew Ferguson, Deputy Superintendent and Chief
Acad. Officer, S.C. Dep't of Educ., to Dist. Superintendents and
Instructional Leaders (June 4, 2024),
https://www.ed.sc.gov/newsroom/school-district-memoranda-
archive/clarification-on-ap-course-offerings/clarification-on-ap-
course-offerings-memo/ ..................................................................................9

## JURISDICTIONAL STATEMENT

This appeal follows a final judgment of the district court (JA967-984) that granted Defendants' motions to dismiss (JA402-487, JA488-541) and denied Plaintiffs' motion for preliminary injunction (JA018-156) with respect to their First and Fourteenth Amendment claims challenging South Carolina's Budget Proviso 1.79. The district court had jurisdiction under 28 U.S.C. § 1331 because this action arose under the Constitution and laws of the United States. The district court also had original jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiffs filed this action under 42 U.S.C. § 1983. The district court ruled that it lacked subject matter jurisdiction based on its conclusion that Plaintiffs lacked Article III standing. For the reasons discussed below, the district court's ruling should be reversed.

Jurisdiction in this Court is proper under 28 U.S.C. § 1291 because the district court's judgment, issued on September 8, 2025, is a final judgment that disposed of Plaintiffs' claims. Student Plaintiff T.R., Student Plaintiff J.S., and South Carolina State Conference of the NAACP ("Student Plaintiffs") and Dr. Kendi (collectively, "Plaintiffs-Appellants" or "Plaintiffs") filed a timely notice of appeal on October 8, 2025 (JA986-987).

## STATEMENT OF ISSUES

The issues presented in this appeal are:

1. Whether the district court erred in dismissing Plaintiffs-Appellants' First Amendment claims to challenge South Carolina's Budget Proviso on standing grounds where:

    A. Student Plaintiffs alleged that the Proviso's prohibitions cause the censorship and chilling of instruction on certain disfavored topics about race and historical and present-day racism in public schools, including without limitation Advanced Placement African American Studies, for non-pedagogical reasons, and an injunction from the district court would remove the Proviso as a barrier to Student Plaintiffs' ability to access this information, and

    B. Dr. Kendi alleged that the Proviso's prohibitions caused the removal of his book, *Stamped: Racism, Antiracism, and You*, from public school libraries because the book's contents include disfavored viewpoints, and an injunction from the district court would remove the Proviso as an obstacle to District Three returning *Stamped* to circulation.

2. Whether the district court erred in dismissing Plaintiffs-Appellants' Fourteenth Amendment void-for-vagueness claims on standing grounds, where Plaintiffs-Appellants alleged that the Budget Proviso's undefined terms, including without limitation "inculcate" and "guilt or anguish," do not provide reasonable notice of what conduct is prohibited, and invite arbitrary

and discriminatory enforcement that chills speech and the receipt of information in public school classrooms.

3. Whether the district court erred in dismissing Plaintiffs-Appellants' Fourteenth Amendment Equal Protection claims on standing grounds where Plaintiffs-Appellants alleged that the Budget Proviso intentionally discriminates against Black people, including without limitation Plaintiffs-Appellants, because it was enacted, in part, on a discriminatory racial motive and/or because it is enforced in a manner that selectively harms and disadvantages Black people and does not similarly harm or disadvantage white people.

4. Whether the district court erred in denying preliminary injunctive relief by misapplying the Article III standing standard, where Plaintiffs-Appellants established sufficient evidence that they have a substantial likelihood of succeeding in their First Amendment and Fourteenth Amendment void-for-vagueness claims, are suffering from irreparable harm, and demonstrated that the balance of equities and public interest weigh in their favor.

## PERTINENT STATUTES

Pertinent statutes are reproduced in the addendum to this brief.

# **INTRODUCTION**

This case arises from South Carolina's use of its legislative budget process to suppress certain disfavored, race-related instruction and materials in K-12 public schools, denying students access to information, facts, and ideas essential to understanding their history and the role of race in South Carolina and American society. In 2021, South Carolina enacted its Budget Proviso, which included a statewide funding restriction that has been wielded to censor and eliminate—without any legitimate pedagogical reason—instruction, books, and coursework addressing certain disfavored aspects of race and racism in the State's public schools. The Budget Proviso limits instruction on systemic race and sex inequalities and related issues in South Carolina public K-12 classrooms, instead aligning instruction with viewpoints preferred by politicians in the South Carolina legislature, many of whom have no expertise in educational pedagogy. At the same time, it permits teachers to promote the opposite points of view that are favored by these same politicians. This is paradigmatic viewpoint discrimination, which is an impermissible reason to withhold information from public school students and remove books by certain authors.

Since its enactment, school districts have invoked the Budget Proviso to remove books by Black authors, based on the disfavored topics in the books rather than legitimate pedagogical concerns. In addition, the South Carolina Department of

Education stripped an Advanced Placement African American Studies course of its previously approved statewide course code to comply with the Budget Proviso and suppress viewpoints disfavored by State legislators. This action denied students the academic benefits and college-level coursework that would otherwise be available to them. These actions have chilled valuable academic instruction and deprived students of meaningful access to ideas central to understanding our nation's history and civic life. Absent judicial intervention, the potential scope of the Budget Proviso's censorship in South Carolina public schools is limitless, resulting in tangible constitutional harms to Black students and other Black individuals.

Plaintiffs-Appellants—Black high school students, a Black New York Times bestselling author and professor, and the South Carolina State Conference of the NAACP—allege violations of the First and Fourteenth Amendments.[1] They allege that the Budget Proviso restricts students' right to receive important information about the history of racism in America and its ongoing legacy; discriminates against authors whose work expresses disfavored viewpoints about systemic and structural racial inequalities; invites arbitrary and discriminatory enforcement through vague, undefined terms; and intentionally discriminates against Black people by

---

[1] Plaintiffs' Amended Complaint also included additional claims brought on behalf of educators who asserted Fourteenth Amendment claims. Those plaintiffs are not parties to this appeal and do not challenge the district court's dismissal of their claims.

specifically targeting instruction and materials concerning the history and experiences of Black people, as opposed to white people, for censorship and suppression. These are concrete and well-recognized constitutional injuries.

The district court dismissed all of Plaintiffs-Appellants' claims for lack of Article III standing and denied preliminary relief for the same reason. That ruling, however, cannot be reconciled with well-established pleading standards, constitutional jurisprudence, or the facts as alleged. Plaintiffs-Appellants plausibly alleged injuries—including the loss of an established Advanced Placement course and the removal of books from school libraries—traceable to Defendants' implementation of the Budget Proviso and redressable through injunctive relief. At this preliminary stage, Article III requires nothing more. Yet, the district court declined to accept Plaintiffs-Appellants' factual allegations as true, failed to draw reasonable inferences in their favor, misapplied the redressability doctrine, and completely ignored Plaintiffs-Appellants' vagueness and intentional discrimination claims in dismissing the entire case.

The Constitution precludes the State from conditioning educational opportunity on adherence to its preferred viewpoints. By censoring accurate and historically significant coursework and materials that discuss the connection between horrific acts of past racial discrimination and ongoing racial inequalities, the Budget Proviso deprives students, particularly Black students, of full educational

benefits and restricts access to information that prepares them to succeed in our increasingly diverse and complex country. Because Plaintiffs-Appellants adequately pleaded facts to establish Article III standing and the need for interim relief, this Court should reverse the dismissal under Rule 12(b)(1) and remand the denial of Plaintiffs-Appellants' request for preliminary injunctive relief for full consideration.

## STATEMENT OF CASE

### I.    Relevant Facts

### A.    Enactment of the Budget Proviso and its Racially Motivated Purpose

This case challenges South Carolina's Budget Proviso 1.79, a statewide funding restriction that censors certain race-related coursework and books in public schools in violation of core constitutional guarantees.[2] On January 27, 2025, Plaintiffs filed this action challenging the constitutionality of South Carolina budget proviso, labeled "SDE: Partisanship Curriculum," in section 1.79 of the 2024-2025 South Carolina Appropriations Bill, as well as identical versions of the proviso included in South Carolina budgets enacted in 2021, 2022, and 2023 (collectively, the "Budget Proviso" or "Proviso"). JA158, JA160-164, JA202-204. The Budget

---

[2] Unless otherwise noted, the facts described herein are from the well-pleaded allegations in the Amended Complaint, which are taken as true for purposes of this appeal, *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009), and from the supplemental evidentiary materials submitted at the preliminary-injunction stage.

Proviso prohibits public schools from using state funds to, among other things, "provide instruction in, to teach, instruct or train" school employees with respect to "standards, curricula, lesson plans, textbooks, instructional materials, or instructional practices that serve to inculcate" so-called "Discriminatory Concepts." JA160-164, JA193-195, JA202-204. The Budget Proviso provides, in relevant part:

> For the current fiscal year, of the funds allocated by the Department of Education to school districts, no monies shall be used by any school district or school to provide instruction in, to teach, instruct, or train any administrator, teacher, staff member, or employee to adopt or believe, or to approve for use, make use of, or carry out standards, curricula, lesson plans, textbooks, instructional materials, or instructional practices that serve to inculcate any of the following concepts:
>
> > (1) one race or sex is inherently superior to another race or sex;
> >
> > (2) an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;
> >
> > (3) an individual should be discriminated against or receive adverse treatment solely or partly because of his race or sex;
> >
> > (4) an individual's moral standing or worth is necessarily determined by his race or sex;
> >
> > (5) an individual, by virtue of his race or sex, bears responsibility for actions committed in the past by other members of the same race or sex;
> >
> > (6) an individual should feel discomfort, guilt, anguish, or any other form of psychological distress on account of his race or sex;
> >
> > (7) meritocracy or traits such as a hard work ethic are racist or sexist, or were created by members of a particular race to oppress members of another race; and

> (8) fault, blame, or bias should be assigned to a race or sex, or to members of a race or sex because of their race or sex.

JA183-184.

The "Discriminatory Concepts" prohibited by the Budget Proviso include matters of race and gender in curricula or materials that may make an individual "feel discomfort, guilt, [or] anguish," or that "fault, blame, or bias should be assigned to a race or sex." JA190. The Budget Proviso does not define several operative terms—including "inculcate," "Partisanship Curriculum," or standards to assess when materials cause "feel discomfort, guilt, [or] anguish," or "fault, blame, or bias." JA190-191, JA241.

### B. Removal of Advanced Placement African American Studies Pursuant to the Budget Proviso

Advanced Placement African American Studies ("AP AAS") is a nationally standardized course providing instruction on the history, culture, and impact of Black people in America and beyond. JA216. On June 4, 2024, the South Carolina Department of Education ("SCDE") issued a memorandum to superintendents and instructional leaders throughout the State notifying them of the removal of the statewide course code for AP AAS for the 2024–25 school year.[3] JA231-232.

---

[3] Mem. from C. Matthew Ferguson, Deputy Superintendent and Chief Acad. Officer, S.C. Dep't of Educ., to Dist. Superintendents and Instructional Leaders (June 4, 2024), https://www.ed.sc.gov/newsroom/school-district-memoranda-archive/clarification-on-ap-course-offerings/clarification-on-ap-course-offerings-memo/.

Defendant Weaver publicly proffered two justifications for cancelling AP AAS. First, SCDE announced that it was cancelling AP AAS because "there has been significant controversy surrounding the course concerning issues directly addressed by South Carolina's General Assembly in a budget proviso as well as in pending permanent legislation." JA231-232.

SCDE also cited the State's regularly scheduled review of statewide social studies standards as an alternative explanation for the removal of the AP AAS course code. JA232. However, SCDE does not typically remove statewide course codes in advance of such reviews. JA597. Nevertheless, SCDE removed the AP AAS course code approximately sixteen months before the scheduled review of the State's social-studies standards was set to begin. JA231-232, JA254. Even if that review were completed in 2025 or 2026, revised social studies standards would likely not be implemented until the 2026–2027 school year at the earliest. JA232, JA597. By contrast, SCDE removed the course code for AP Pre-Calculus only *after* statewide standards were approved. JA808.[4]

SCDE removed AP AAS without assessing the demand for the course. JA232. Prior to the enactment of the Budget Proviso, AP AAS had been successfully piloted

---

[4] Plaintiffs filed a request for the district court to take judicial notice of the April 14, 2025 Meeting Minutes of the South Carolina Education Oversight Committee (JA800-803) because these meeting minutes confirm the State Education Oversight Committee's understanding that the new social studies standards will not be implemented until 2027. JA801. The district court failed to rule on this motion.

in South Carolina for two years, garnering interest from hundreds of students across the State. JA163. Schools that had previously offered the course experienced strong student interest and high enrollment demand. JA228, JA235, JA089.

The removal of the AP AAS course code stripped the course of its full AP status and made students ineligible for multiple academic benefits related to the course. JA228, JA235, JA090-091. For example, AP AAS offered greater academic rigor and comprehensiveness than what a locally approved Honors version could offer. JA218-219. And because AP courses are also weighted more heavily in GPA calculations and may qualify students for college credit, AP AAS provides students with meaningful academic and financial benefits. JA219.

Plaintiffs T.R. and J.S. attend public high schools in Richland County School Districts 1 and 2, and each of their schools planned to offer AP AAS in the 2024-2025 school year. JA164-166. T.R., J.S., and other students—including South Carolina State Conference of the NAACP ("NAACP-South Carolina") student members A.G. and J.C.—had concrete plans to enroll in AP AAS. JA164-166, JA228, JA233-235. For example, J.S.'s mother had reached out to her guidance counselor about enrollment for the 2024–2025 school year, and A.G. was enrolled when the course was canceled. JA166, JA974.

South Carolina Superintendent of Education Ellen Weaver ("Defendant Weaver") is the executive of the SCDE and responsible for implementing state

education policy—including the Budget Proviso—and her removal of the AP AAS course code is the core action preventing students from accessing the course. JA163, JA167, JA216, JA219, JA237-238, JA239-240, JA241-242. SCDE's removal of the AP AAS course code pursuant to the Budget Proviso eliminated Student Plaintiffs' access to important information and ideas in the course's content about race and racism in the United States and made them ineligible for the academic benefits normally associated with Advanced Placement courses. JA216-220, JA228-236, JA237-238.

### C. Defendant School District Three's Removal of *Stamped* Pursuant to the Budget Proviso

Pursuant to the Budget Proviso, school districts across South Carolina have removed books by Black authors addressing systemic racism and the experiences of Black Americans, including *Between the World and Me* by Ta-Nehisi Coates and *Stamped: Racism, Antiracism, and You* ("*Stamped*"), co-authored by Plaintiff Dr. Ibram X. Kendi ("Dr. Kendi") and Jason Reynolds. JA210-216. *Stamped* is a #1 New York Times bestseller that deconstructs the history of racist thought in America for young adult readers. JA165. Dr. Kendi's works—including *Stamped*—have been lauded by critics, librarians, and educators and have been featured on several best-seller lists and best-of lists throughout his career. JA165, JA210-211.

Despite these myriad accolades, Lexington County School District Three ("Defendant School District Three" or "District Three") removed *Stamped* from

school libraries, classrooms, and media centers due to concerns that it violated the Budget Proviso. JA211-213. Although no formal complaints about the book's contents were ever lodged—as required under Defendant School District Three's own review procedure to initiate consideration of a book's removal—the school district removed *Stamped* from all its schools and libraries and subsequently convened a "review committee," which formally recommended removing the book to comply with the Budget Proviso. JA211-213. Notes from the review committee stated that the book "presents the analogy that being white equals racism" and deemed it "adverse to the state requirement" that educators may not teach an individual "is inherently racist"—language that mirrors the Budget Proviso's operative language. JA080, JA211, JA226-227.

### D.    Racial Motivation Behind Enactment of the Budget Proviso

South Carolina legislators were motivated, at least in part, by a desire to suppress expression and dissemination of facts, ideas, and opinions related to race and racism about Black people in conflict with the narrow political interests of the law's supporters. JA237-238. South Carolina has long suppressed full and accurate instruction about slavery, racism, sex-based discrimination, and Black-led movements for racial justice in South Carolina and the larger United States, leaving students without the information needed to understand past and present-day inequalities within their state and nation. JA168-173. However, educators in South

Carolina and nationwide began to scrutinize the inadequate academic instruction of this subject matter in the wake of recent incidents of racially-motivated violence in South Carolina, including the 2015 murder of nine Black parishioners at Mother Emanuel AME Church, and amid nationwide calls for racial justice in the summer of 2020 following the police killings of George Floyd and Breonna Taylor—the largest social justice demonstrations in American history. As a consequence, schools across the country, including in South Carolina, began efforts to update curricula to include important information and perspectives about race that had previously been omitted and to scrutinize the lack of diversity among educators that may result from systemic inequalities. JA168-173.

In response to the racial justice efforts made by educators and school administrators, some South Carolina public officials who opposed these advancements began publicly criticizing and denouncing concepts they associated with "critical race theory." JA177-186. After multiple failures to pass stand-alone bills restricting instruction on "critical race theory," South Carolina legislators inserted the same "Discriminatory Concepts" restrictions contained in those bills into the State budget through an accelerated process that bypassed the ordinary legislative framework for setting classroom standards, resulting in the currently challenged Budget Proviso. JA199-203.

Legislators took this unusual course of action despite extensive testimony from educators, parents, students, and community members opposing the bills—many of whom explained that the proposal would disproportionately harm Black South Carolinians. JA203-208. Importantly, State legislators pushed through the curricular restrictions via the Budget Proviso without identifying how those prohibitions would advance any legitimate educational purpose; instead, they were focused on suppressing ideas, information, and viewpoints about race and racism relating to Black people that the bills' supporters opposed. JA237-238.

In addition, State officials enforce the Budget Proviso in a manner that specifically and disproportionately harms Black people. Several State legislators made statements during the Budget Proviso's enactment indicating that its censorship was designed to benefit white people—not Black people. JA186. For example, State Representative Melissa Oremus, who is white, stated that censorship of certain concepts related to race and racism was necessary because critical race theory caused her "uncomfortable feelings" and she did not want students to be burdened in the classroom by the actions of their "terrible White grandfather." JA186. Following its enactment, enforcement of the Budget Proviso has centered on restricting content related to Black history and racial inequality, including the removal of books by Black authors addressing contemporary problems with racism; constraints on classroom instruction that incorporates Black experiences and

perspectives; and the cancellation of AP AAS. JA208-228. Enforcement of the Budget Proviso has not similarly affected white authors, instruction about the experiences and perspectives of white people, or courses centered on white identity, arts, and culture. Defendant Weaver has also directed schools to offer alternative materials[5] that inaccurately recount Black history. JA220-223. These actions fall disproportionately on Black people, including South Carolina's Black students and educators, who lose access to instruction about their own histories and experiences and suffer from the growing ignorance about Black history, culture, and the role of racism in American society. JA208-210, JA216.

The Budget Proviso also disproportionately harms Black students in advanced coursework, as they are significantly underrepresented in AP classes statewide, and AP AAS was designed to help close that gap by offering rigorous instruction centered on Black history and culture that would attract Black students. JA217. Student testimony reflected strong interest in the course and described its academic and personal value to Black students. JA217-218. While AP AAS was removed under the Budget Proviso, no comparable AP courses focused on any other racial or

---

[5] In September 2024, Defendant Weaver announced a partnership with Prager University Foundation ("PragerU")—widely regarded as a "propaganda factory" by several organizations, JA221-222—and included PragerU materials into the SCDE curriculum without consulting the State Board of Education or any period of public notice and comment. JA221-222.

cultural groups have been cancelled. JA220. As a result, the State's adoption and enforcement of the Budget Proviso has specifically and disproportionately harmed Black students and educators in South Carolina's public schools and contributed to the stigmatization of Black history and identity as "divisive." JA208-210, JA216-218, JA244, JA247. The Budget Proviso was specifically designed to cause this disproportionate harm, which was obvious and foreseeable.

## II.    Procedural History

Plaintiffs filed an Amended Complaint on March 25, 2025, alleging that the Budget Proviso violates the First and Fourteenth Amendments by chilling speech, restricting access to ideas and information, creating vague and discriminatory standards, and intentionally discriminating against Black South Carolinians. Count I asserted that the Proviso's restrictions on teaching certain concepts about race and racism deprive Student Plaintiffs of their First Amendment right to receive information and ideas. JA237-238. Count II alleged that Defendant School District Three's removal of *Stamped* constitutes viewpoint discrimination in violation of the First Amendment because it interferes with Dr. Kendi's ability to make his books available to readers based on his viewpoint. JA238-239. Count III alleged the Proviso is void for vagueness under the Fourteenth Amendment because it fails to provide fair notice of what is prohibited from public school classrooms and has led to over-enforcement of its provision, resulting in the removal of a book about racism

by Black authors and rendering students unable to access important educational information that would otherwise be taught to them in South Carolina public schools. JA239-243.

Plaintiffs further brought two Fourteenth Amendment Equal Protection claims. Count IV alleged that the Budget Proviso was enacted and enforced with a discriminatory purpose and disproportionately burdens Black students, educators, and authors by restricting certain instruction and materials concerning race and racism. JA243-248. Count V alleged selective enforcement because Defendants have disparately implemented and enforced the Budget Proviso to discourage educational engagement regarding topics about discrimination against Black people—such as slavery, lynchings, Jim Crow laws, white supremacy, unconscious bias, and systemic racism—that would benefit Black people by acknowledging and studying their past and ongoing struggles with racial inequality, while, at the same time, *not* discouraging such engagement about discrimination against white people but instead benefiting white people with their discriminatory viewpoint. JA248-249.

Plaintiffs also moved for a preliminary injunction on March 17, 2025, to enjoin Defendants, in part, from enforcing the "Partisanship Curriculum" requirements of the Budget Proviso; require Defendant Weaver to immediately reinstate the AP AAS course code for the 2025-26 school year; and require Defendant School District Three to return *Stamped* to circulation in all public school

facilities and locations where it was previously available, including classrooms, libraries, and media centers. *See* JA018-156. Defendant Weaver, Defendant School District Three, and School District Five of Lexington & Richland Counties subsequently filed motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs lacked standing and failed to state a claim upon which relief could be granted.[6]

Arguments on the parties' motions were heard on July 30, 2025.[7] The district court did not conduct an evidentiary hearing, either for Plaintiffs' preliminary injunction motion or on the question of standing. On September 8, 2025, the court issued an order denying Plaintiffs' motion for a preliminary injunction and granting Defendants' motions to dismiss on the basis that Plaintiffs lacked Article III standing and the court, therefore, lacked jurisdiction.[8]

---

[6] Only the portion of the district court's order dismissing the claims against Defendant Weaver and Defendant School District Three is before this Court; the ruling as to School District Five of Lexington & Richland Counties is not before this Court on appeal.

[7] The district court consolidated the hearing for Plaintiffs' motion for preliminary injunction and Defendants' motions to dismiss. JA825-826.

[8] Because the district court found that Plaintiffs lacked Article III standing, it did not reach Defendants' arguments under Rule 12(b)(6) that Plaintiffs failed to state a claim for relief. To the extent that this Court determines that the district court's dismissal was both under Rules 12(b)(1) and 12(b)(6), Plaintiffs request this Court to reverse the district court's 12(b)(6) dismissal based on its *de novo* review of the Amended Complaint.

When assessing jurisdictional issues related to standing, the district court did not assume the validity of Plaintiffs' legal claims when it dismissed Plaintiffs' Amended Complaint. The district court also did not conduct any analysis of Plaintiffs' Fourteenth Amendment Equal Protection and vagueness claims.[9] Finally, the court did not address the supplemental authority submitted by Plaintiffs on August 6, 2025, concerning the recent Supreme Court decision, *Gutierrez v. Saenz*, 606 U.S. 305 (2025), which reinforced well-established principles about redressability.

Plaintiffs timely appealed the district court's order on October 8, 2025.

## SUMMARY OF ARGUMENT

Plaintiffs have Article III standing to pursue their First and Fourteenth Amendment claims, and the district court erred in concluding otherwise. As to their First Amendment claim, Student Plaintiffs allege concrete educational harms flowing directly from Budget Proviso 1.79: Defendant Weaver removed the AP African American Studies course code to comply with the Budget Proviso, thereby restricting access to information they would have otherwise received, including

---

[9] The district court only addressed and dismissed the Fourteenth Amendment claims asserted by the educator plaintiffs named in the Amended Complaint. Those plaintiffs, however, do not appeal the dismissal of their claims and are not parties to this appeal. The district court omitted any analysis of the Fourteenth Amendment claims brought by those Plaintiffs who are parties to this appeal.

information related to African American history and culture. Those allegations satisfy the three elements of standing: a cognizable First Amendment right-to-receive-information injury; traceability to Defendant Weaver's implementation of and compliance with the Budget Proviso; and redressability through an order enjoining the Budget Proviso's implementation and enforcement. Dr. Kendi likewise alleges that his book was removed from school libraries because his viewpoint is disfavored under the Budget Proviso, which is sufficient to plead a First Amendment viewpoint-discrimination injury.

In addition, Plaintiffs plausibly allege that the Budget Proviso's vague terms and undefined scope have led to arbitrary and discriminatory overenforcement, resulting in the removal of a book about racism written by Black authors and the removal of the AP AAS course code, thus supporting their Fourteenth Amendment vagueness claim. Plaintiffs also adequately pleaded Equal Protection violations, as they allege that the Budget Proviso was enacted, at least in part, with improper racial motivations—namely, to suppress certain instruction and materials concerning past and ongoing discrimination against Black people but not past and ongoing discrimination against white people, to the detriment of Black people but not white people. Plaintiffs further properly pleaded Equal Protection violations based on Defendants' selective enforcement of the Budget Proviso to restrict information about the history and experiences of Black people—such as the AP AAS course and

books by Black authors about racism—but not similarly restricting information about the history and experiences of white people. In holding that Plaintiffs do not meet the requirements for constitutional redressability, the district court ignored recent binding Supreme Court precedent reaffirming an established principle: that redressability can be established by removing an unconstitutional barrier, even if it is not the only obstacle faced by a plaintiff.

Notwithstanding these well-pleaded allegations, the district court failed to comply with Federal Rule of Civil Procedure 12(b)(1) and dismissed Plaintiffs' claims based on its conclusion that Plaintiffs lacked Article III standing. Rather than crediting Plaintiffs' factual allegations, the court improperly resolved factual disputes against them without allowing Plaintiffs to develop their claims through discovery. For Student Plaintiffs, the district court ignored allegations that the Budget Proviso is the primary barrier preventing Student Plaintiffs from accessing AP AAS, and it dismissed as "future hopes" their concrete and individualized injuries tied to the course's cancellation. Regarding Dr. Kendi, the district court erred by disregarding allegations that District Three considered *Stamped* as adverse to the Budget Proviso when deciding to remove it. Instead, the district court improperly credited District Three's claim that the book's removal rested on independent and unchallenged grounds—a factual dispute that should not have been resolved against Plaintiffs at the pleading stage. The district court's order also failed

to conduct the required standing analysis prior to dismissing Plaintiffs' Equal Protection claims, disregarding allegations throughout the Amended Complaint that the Budget Proviso was enacted with discriminatory intent toward Black people and has been selectively enforced to disproportionately harm Black people. Collectively, these errors require reversal of the district court's dismissal judgment.

Plaintiffs likewise established that they have standing to move for a preliminary injunction. Plaintiffs demonstrated a likelihood of success on the merits; ongoing, irreparable harm caused by the elimination of educational resources and opportunities, restricted access to important information, and an inability to share constitutionally-protected viewpoints; and a balance of equities and public interest in their favor without the requested preliminary relief from the Budget Proviso's enforcement while this litigation proceeds. Accordingly, Plaintiffs' motion for a preliminary injunction should be remanded for full consideration because the district court's standing analysis rested on legal error.

## **ARGUMENT**

### I.    **Standard of Review**

This appeal arises from the district court's order dismissing all claims for lack of standing and denying preliminary injunctive relief on the same grounds. JA967-984. Both determinations present questions of law that this Court reviews *de novo*. Although a district court's decision to grant or deny a preliminary injunction

is "normally review[ed] for abuse of discretion, standing is a question of law that we review *de novo*." *Peterson v. Nat'l Telecomms. & Info. Admin.*, 478 F.3d 626, 631 n.2 (4th Cir. 2007) (emphasis added) (internal citations omitted). Under these settled standards, this Court should conduct an independent review of the district court's dismissal for lack of standing.

Defendants asserted a facial challenge to jurisdiction under Rule 12(b)(1). JA510-515, JA518-519. "In a facial challenge, the defendant contends that the complaint fails to allege facts upon which standing can be based, and the plaintiff is afforded the same procedural protection that exists on a motion to dismiss." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (cleaned up); *see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) ("If the defendant challenges the factual predicate of subject matter jurisdiction, a trial court may then go beyond the allegations of the complaint *and in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations." (cleaned up) (emphasis in original) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982))). Defendants' Rule 12(b)(1) standing challenge is facial, given that the district court did not conduct an evidentiary hearing to evaluate Plaintiffs' jurisdictional allegations. *Id.* Accordingly, this Court should take as true the facts alleged in the Amended Complaint when addressing facial challenges to jurisdiction under Rule 12(b)(1). *Id.*

## II. Plaintiffs Have Standing to Pursue Their First and Fourteenth Amendment Claims.

In assessing standing, this Court "accepts as valid the merits of the plaintiff's legal claims[,]" *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) (cleaned up), and "may not dismiss for lack of standing on the theory that the underlying interest is not legally protected," *Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013). Further, if at least one plaintiff has standing to bring a claim, this Court need not consider whether other plaintiffs have standing for the same claim. *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 778 (4th Cir. 2023).

In First Amendment cases, standing requirements are "somewhat relaxed . . ., particularly regarding the injury-in-fact requirement." *Davison v. Randall*, 912 F.3d 666, 678 (4th Cir. 2019) (cleaned up), *as amended* (Jan. 9, 2019). This Court, along with other U.S. Courts of Appeals and at least one federal district court within this Circuit, has applied the "relaxed" standing requirements to cases addressing the First Amendment right to receive information. *See, e.g.*, *People for the Ethical Treatment of Animals, Inc. v. Stein*, 737 F. App'x 122, 129 (4th Cir. 2018) (noting the "standing requirements are somewhat relaxed" in First Amendment cases when assessing a challenge involving plaintiff's right to receive information that would further their missions); *Arce v. Douglas*, 793 F.3d 968, 987 (9th Cir. 2015) (noting that standing requirements are "broader than they otherwise might be" where a plaintiff's First

Amendment right to receive is implicated.); *see also E.K. ex rel. Keeley v. Dep't of Def. Educ. Activity*, No. 1:25-CV-637 (PTG/IDD), 2025 WL 2969560, slip op. at *7 (E.D. Va. Oct. 20, 2025) (noting similarly in case enjoining restriction of curricular materials based on so-called "divisive concepts" nearly identical to enumerated "divisive concepts" included in Budget Proviso at five Department of Defense Education Activity K-12 schools).

## A. Student Plaintiffs Have Standing to Bring a Right to Receive Claim.

Student Plaintiffs have standing to pursue their claim that the Budget Proviso violates the First Amendment, both on its face and as applied to them. As recognized by the court below, at least one Student Plaintiff has more than sufficiently alleged a First Amendment interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Further, Student Plaintiffs adequately allege that Defendant Weaver caused their injury, and an injunction would redress that harm.

### 1. At Least One Student Plaintiff Sufficiently Alleged an Injury in Fact.

The district court properly found that NAACP-South Carolina, one of the Student Plaintiffs, sufficiently alleged injury in fact to challenge the Budget Proviso under the First Amendment because its student member, A.G., was already enrolled in the course and their "enrollment [in AP AAS] was seized and later denied due to

factors outside of A.G.'s control." JA974. Accordingly, Plaintiffs have alleged sufficient injury in fact to pursue Student Plaintiffs' First Amendment claims. *See Rumsfeld*, 547 U.S. at 52 n. 2 ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").

Contrary to the district court's conclusion, the other Student Plaintiffs—T.R. and J.S.—have also alleged sufficient injury in fact. *Contra* JA974. With respect to their *facial* challenge, Student Plaintiffs have alleged that their First Amendment right to receive speech is proscribed by the Budget Proviso, "because it prohibits educators from teaching specific concepts about race and racism in public schools . . . thereby depriving [them] of their First Amendment right to receive information and ideas that otherwise would be taught to them." JA238.

In addition to the cancellation of AP AAS throughout the State pursuant to the Budget Proviso, JA216-220, JA231-232, Student Plaintiffs allege throughout their Amended Complaint that the Budget Proviso caused the removal or restriction of books, materials, or course instruction that broadly censor certain concepts of race, racism, and the lived experiences of Black people in South Carolina. JA163, JA210-216. The Budget Proviso continues to prohibit educators from teaching, discussing, or providing materials on these concepts about race and racism to students in public schools throughout the State. *See, e.g.*, JA215, JA238. Thus, Student Plaintiffs have detailed numerous concrete "enforcement action[s] in the past" that adequately

demonstrate a credible threat of continued enforcement, which are sufficient injuries in fact for their facial challenge. *See Abbott v. Pastides*, 900 F.3d 160, 174 (4th Cir. 2018) (explaining that to establish the requisite ongoing injury to enjoin government policies under the First Amendment, plaintiffs may show they intend to engage in conduct proscribed by the policy they wish to challenge and that there is a "credible threat" the policy will be enforced against them when they do so.).

In terms of their *as-applied* challenge, the district court erred in failing to recognize a similarly concrete injury in fact for Student Plaintiffs, T.R. and J.S., who sufficiently allege facts to challenge the Budget Proviso's role in cancellation of the AP AAS course throughout the Amended Complaint. JA237-238, JA239-240, JA241-242. T.R. and J.S. both attend high schools that planned to offer AP AAS before they graduate. JA165-166, JA228, JA235. They each detail their personal, academic, and professional interest in enrolling in AP AAS. JA165-166, JA222, JA971-972. Before the State removed the AP AAS course code, J.S. took additional steps to enroll in AP AAS for the 2024–2025 school year when her mother emailed her guidance counselor to seek her enrollment in the AP AAS course for the 2024-2025 school year before the class was cancelled. JA165-166.

The district court erroneously dismissed Student Plaintiffs T.R. and J.S's injuries as speculative "future hopes" that are not sufficiently concrete to establish standing. JA974. A specific intention to access a particular course, curriculum,

material, or programming is sufficient injury in fact to challenge their removal on First Amendment grounds. For example, the Eleventh Circuit held that plaintiffs sufficiently alleged an injury in fact to challenge the removal of a particular book, *Vamos a Cuba*, which the school library offered and they intended to check out at the beginning of the next school year. *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1195 (11th Cir. 2009). Similarly, the District Court for the Eastern District of Virginia recently held that students demonstrated sufficient injury in fact when they alleged "the removal of immigration materials from their curricula, which will affect their fifth-grade curriculum in the coming school year." *E.K. ex rel. Keeley*, 2025 WL 2969560, at *7. Likewise, in *Acosta v. Huppenthal*, a student's intent to take Mexican American Studies ("MAS") courses in the upcoming year was a "concrete and non-speculative injury sufficient to establish standing" for her First Amendment right to receive challenge to the law that removed MAS courses. No. 10-CV-623-TUC, 2012 WL 12829991, at *6–7 (D. Ariz. Jan. 10, 2012). In *Penguin Random House LLC v. Gibson*, "identified removals of specific [school library] books that . . . [K-12] children sought to access" was also a sufficiently cognizable injury. No. 6:24-CV-1573-CEM-RMN, 2025 WL 2408178, at *4 (M.D. Fla. Aug. 13, 2025), *appeal docketed*, No. 25-13181 (11th Cir. Nov. 12, 2025). Finally, in *PEN American Center, Inc. v. Escambia County School Board*, plaintiffs had standing to challenge book removals from a K-12 school

library because they alleged they "intended to check out specific removed and restricted books during the upcoming (now, ongoing) school year, but they [were] unable to do so because of Defendant's removal/restriction decision." 711 F. Supp. 3d 1325, 1329 (N.D. Fla. 2024).

The simple fact, therefore, that T.R. and J.S. intended to take the AP AAS course, which their schools had planned to offer, is sufficient to satisfy Article III standing. As alleged in the Amended Complaint, T.R. and J.S.'s schools both offered AP AAS before it was removed pursuant to the Budget Proviso. JA165-166. J.S., a junior at the time the Amended Complaint was filed, "plan[ned] to take [AP AAS] if it is reinstated before she graduates" high school. JA165-166. Her mother emailed her guidance counselor to enroll J.S. in the course. JA165-166 Likewise, T.R., a sophomore at the time the Amended Complaint was filed, also intends "to take [AP AAS] if it is reinstated before he graduates." JA166. Thus, T.R. and J.S.'s specific intent to access the AP AAS course before they graduate and their inability to do so due to Defendant Weaver's cancellation of the course code is sufficient injury in fact to be able to challenge the course's removal. Indeed, with respect to J.S., her mother's email to her school's guidance counselor, which requested her enrollment in the AP course, provides even more support for her injury. JA165-166.

Moreover, T.R. and J.S. need not allege "certainty" of their expected injury to have standing. For example, in *Lee v. Weisman*, the United States Supreme Court

recognized the plaintiff's standing to bring a First Amendment challenge against her high school graduation ceremony *before* she started high school because the challenged invocations and benedictions "appear[ed] likely, if not certain" to occur at her graduation even if her attendance at the graduation ceremony was voluntary. 505 U.S. 577, 583-584 (1992). In its assessment of the plaintiff's standing, the Court relied on its "confidence" about the "customary features" of high school graduations supplemented by the record of similar ceremonies at the plaintiff's middle school graduation. *Id.* Similarly, here, the "customary features" of high school class curricula dictate that students who wish to take a specific course that their school offers will enroll in that course if it is available before they graduate. T.R. and J.S. both attend a high school that offered AP AAS and expressed interest in enrolling in AP AAS if they had the opportunity. JA164-166, JA228, JA235. The course was cancelled pursuant to the Budget Proviso. JA231-232. Had Defendant Weaver not canceled the course, T.R. and J.S. would have almost certainly enrolled in AP AAS as they allege in the Amended Complaint, which is sufficient injury in fact to convey standing. *See also Crookshanks ex rel. C.C. v. Elizabeth Sch. Dist.*, No. 1:24-CV-03512-CNS-STV, 2025 WL 863544, at *17 (D. Colo. Mar. 19, 2025), *appeal docketed*, No. 25-1105 (10th Cir. Mar. 21, 2025) (finding standing for K-12 students' challenge to removal of books from a school library based on students'

intent to attend the school in question without requiring an intent to read the removed book); *PEN Am. Ctr., Inc.*, 711 F. Supp. 3d at 1329-30.

T.R. and J.S.'s intent to take AP AAS within the four years "before graduating" is a specific time-bound desire that is imminent and immediate enough for injury in fact. JA165-166 (J.S.); *see also* JA166 (T.R. alleging that he "would like to take AP AAS before he graduates"). When the alleged injury will occur "within a fixed period of time in the future," it meets *Lujan*'s imminence and immediacy requirements. *See ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1194 (11th Cir. 2009) (holding "*Lujan* require[s] no more immediacy" than plaintiff's intention to check out a book after school resumed because plaintiffs "would be injured within a 'fixed period of time in the future'" (citation omitted)).

Because T.R. and J.S. have also alleged time-bound "concrete plans" to take AP AAS before they graduate—allegations that should have been credited by the district court—all Student Plaintiffs have pleaded allegations sufficient to establish an injury in fact for their First Amendment claims.

### 2. Student Plaintiffs Sufficiently Alleged That Their Injuries Are Traceable to the Budget Proviso.

The traceability prong of the standing inquiry "may be satisfied if Plaintiffs sufficiently allege that Defendants' conduct was a plausible source of the injury . . . .suffered." *Wright v. Cap. One Bank (USA)*, 2024 WL 920057, at *4 (E.D. Va. Mar.

4, 2024) (citing *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018)). Student Plaintiffs adequately allege that their injuries are traceable to the Budget Proviso because it explicitly prohibits the use of SCDE funds for "curricula, lesson plans, textbooks, instructional materials, or instructional practices" that address or incorporate discussion of certain concepts of race, racism, and the lived experiences of Black people. JA183-184, JA210-220. The Budget Proviso caused book removals, curricular restrictions, and course cancellations, which prevented students from receiving information about these censored topics that they would have otherwise received. JA183-184, JA210, JA213, JA216.

With respect to the AP AAS course, in particular, SCDE removed the course code due to "significant controversy surrounding the course concerning issues directly addressed by South Carolina's Legislature in a budget proviso as well as in pending permanent legislation." JA231-232. Although Defendant Weaver asserts that an upcoming review of social studies standards also explains the cancellation of the AP AAS course, JA231 (n. 197), Plaintiffs also alleged that Defendant Weaver's invocation of the social studies standards review as the rationale for cancellation of AP AAS is pretext for a discriminatory and pedagogically illegitimate reason, namely the Budget Proviso. *See, e.g.*, JA163, JA231-232. Defendant Weaver decided to remove the course code in June 2024, approximately sixteen months before the review was even scheduled to begin. JA254, JA163, JA231-232. Even if

the State was able to complete its review of the social studies standards in 2025 or early 2026, those revised standards likely would not be implemented until 2027. JA231-232, JA597. Moreover, Defendant Weaver's reference to the social studies standards review as justification for the cancellation of the AP AAS course code, is factually contradicted by the standards review related to AP Calculus, which was not canceled pending that review. JA597.

Accordingly, this dispute raises factual questions that should not be resolved at the motion to dismiss stage of these proceedings. The district court must, in the face of a factual conflict between the parties' allegations as to whether the social studies standards are a pretextual and pedagogically illegitimate reason to cancel AP AAS, "take[] the plaintiff's version of the facts as true." *Neale v. Hogan*, No. 21-7287, 2022 WL 12325186, at *2 (4th Cir. Oct. 21, 2022) (quoting *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) ("The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.").

Defendant Weaver conceded that she is "responsible for implementing state education laws and polices enacted by the legislature, including the Proviso." JA500. Plaintiffs allege, based on Defendant Weaver's own words, that Defendant Weaver implemented the curricular changes, including the removal of the AP AAS course

code from the State database, to comply with the Budget Proviso. JA163, JA167, JA216, JA231-232. These actions are a "plausible source" of Student Plaintiffs' injury. *See Hutton*, 892 F.3d at 623. Student Plaintiffs' injuries are thus traceable to "allegedly unlawful conduct" directly resulting from the Budget Proviso that is challenged in this action. *California v. Texas*, 593 U.S. 659, 669 (2021).

### 3. Student Plaintiffs' Injuries Are Redressable by Enjoining the Budget Proviso.

To satisfy the redressability prong of the standing inquiry, Student Plaintiffs must adequately allege that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000); *Dixon v. Edwards*, 290 F.3d 699, 711 (4th Cir. 2002). "The burden imposed by this requirement is not onerous. Plaintiffs 'need not show that a favorable decision will relieve [their] every injury.' Rather, plaintiffs 'need only show that they personally would benefit in a tangible way from the court's intervention.'" *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)). Plaintiffs do not have to guarantee that a favorable court decision will redress their injury, but only that it is likely to do so, which Plaintiffs did in the proceedings below. *See Lujan*, 504 U.S at 561; *Dixon*, 290 F.3d at 711. The Supreme Court's recent decision in *Gutierrez v. Saenz*, 606 U.S. 305 (2025), removes any doubt about this conclusion.

Even before *Gutierrez,* constitutional redressability jurisprudence did not require Plaintiffs to *guarantee* that a favorable judgment would ultimately and fully *eliminate* their injury in all respects—only that it would be *likely* to provide them some relief. *See Dixon*, 290 F.3d 699 at 711; *Lujan*, 504 U.S at 561, 572 n.7; *Larson v. Valente*, 456 U.S. 228, 243 n.15 (holding that the removal of a rule requiring the plaintiffs to register and report on their activities sufficed for redressability even when another rule could require the same). The Amended Complaint demonstrates that it is "likely" that Student Plaintiffs' "injuries will be redressed by a favorable decision." *Dixon*, 290 F.3d at 711. That relief takes the form of removing an unlawful barrier—namely, the Budget Proviso, which is a discriminatory and pedagogically illegitimate reason to cancel the AP AAS course code—upon which Defendant Weaver relied when she prevented Student Plaintiffs from receiving important information from that course. Redressability does not demand that a favorable judgment remedy Student Plaintiffs' "every injury." *Id.*

The district court also erroneously found that "the record" does not support Student Plaintiffs' assertion that "high student interest and enrollment numbers support the inference that the school would again offer AP AAS if the course code were reinstated." JA737, JA975. In misapplying the standard for a motion to dismiss, the court seemingly ignored Student Plaintiffs' allegations that the Budget Proviso is the main barrier preventing Student Plaintiffs from accessing AP AAS. *See* JA163,

JA231-232. As alleged by Student Plaintiffs, several of the schools attended by NAACP-South Carolina student members, including A.G. and J.C., previously offered AP AAS before Defendant Weaver cancelled the course, and this fact belies any premature assertion that the course would remain unavailable even if the Budget Proviso is enjoined. JA235. In fact, high student interest and enrollment numbers support the inference that schools would again offer AP AAS if the course code were reinstated. *See* JA228-229, JA089. Taken together, these allegations establish that Student Plaintiffs would "benefit in a tangible way" from a favorable court order enjoining the Budget Proviso. *Sierra Club*, 899 F.3d at 284.

Student Plaintiffs' redressability argument is further buttressed by their allegations—which must be taken as true at this stage—that Defendant Weaver's curriculum review justification is mere pretext, used to obfuscate improper, non-pedagogically valid reasons for the course cancellation. Student Plaintiffs sufficiently alleged, based on Defendant Weaver's own words, that SCDE removed AP AAS because of her concern that the course violated the Budget Proviso. JA163, JA167, JA216, JA231-232. Student Plaintiffs further alleged that Defendant Weaver's reference to an upcoming review of the social studies standards—as a secondary reason for the course cancellation—was not, in fact, accurate. *See, e.g.*, JA163, JA231-232. Defendant Weaver decided to remove the course code in June 2024, approximately sixteen months before the review was scheduled to *begin*.

JA254, JA163, JA231-232. *See supra* Section II(A)(2). It is not normal practice to pause the approval of statewide course codes pending the review of that subject's standards, as demonstrated by SCDE's treatment of the AP Calculus course. JA597. JA231-232. These conflicting explanations support Student Plaintiffs' allegations that Defendant Weaver canceled AP AAS for reasons other than legitimate pedagogical concerns—a merits consideration that this Court must "accept[ ] as valid" during its assessment of standing. *Laufer*, 60 F.4th at 161.

A recent decision by the Supreme Court further demonstrates the district court's error in its redressability analysis. In *Gutierrez*, the Supreme Court considered whether a death-sentenced plaintiff had standing to bring a due process challenge to Texas's post-conviction statute that prevented his access to DNA evidence in prosecutors' possession unless he first established his innocence of the underlying crime, even if the prosecutors gave reasons—independent of the state statute—in denying access to the DNA evidence. *See Gutierrez*, 606 U.S. at 317-20. Notably, even though the Court acknowledged that the "prosecutor might eventually find another reason, grounded in [the challenged statute] or elsewhere, to deny a prisoner's request for DNA testing," *id.* at 320, this alternative obstacle "d[id] not vitiate his standing." *Id.* The requested declaratory judgment would remove one legal impediment to his ultimate goal, the court explained, and that was sufficient redress to allow him to sue. *See id.* at 319.

38

Pursuant to the Supreme Court's ruling in *Gutierrez*, which confirms preexisting case law, Plaintiffs' standing to challenge the removal of the AP AAS course is not conditioned upon the absence of all alternative obstacles to taking that course. Like the prosecutors in *Gutierrez*, Defendants may have other lawful grounds to cancel the course. However, as in *Gutierrez*, a favorable court ruling would redress Plaintiffs' injury "by removing the allegedly unconstitutional barrier . . . erected between" Plaintiffs and the AP AAS course. *Id.* at 319. In this case, the unconstitutional barrier is the Budget Proviso. Indeed, SCDE expressly identified—as one of the reasons for cancelling AP AAS—the "significant controversy surrounding the course concerning issues directly addressed by South Carolina's Legislature in a budget proviso as well as in pending permanent legislation." *See* JA231-232. Thus, *Gutierrez* makes clear that "the redressability inquiry" is not "a guess as to whether a favorable court decision will in fact ultimately" grant Student Plaintiffs complete relief. 606 U.S. at 318. Rather, *Gutierrez* demands the district court to inquire whether the judgment that Student Plaintiffs seek will change their "legal status" so that full relief is more likely. *Id.* at 316.

In *Long v. Bondi*, 151 F.4th 503, 517 (4th Cir. 2025), this Court applied *Gutierrez* to hold that the plaintiff had standing to remove an unconstitutional barrier even if another policy could also contribute to the plaintiff's harm. Specifically, this Court held that the plaintiff in *Long* had standing to challenge his placement on a

terrorist watchlist, reasoning that an injunction requiring the defendant to remove his name from watchlist "would . . . redress his injury by removing the allegedly unconstitutional barrier" to receive approval of his worker credentials. *Long*, 151 F.4th at 516. The same principle governs here. The mere possibility that Defendant Weaver can point to a separate—and, importantly, disputed[10]—justification for removing the AP AAS course code does not deprive Student Plaintiffs of standing to challenge the Budget Proviso, which they allege is an unconstitutional barrier to accessing that course. Student Plaintiffs do not need to prove that the Budget Proviso was the only obstacle to taking the AP AAS course. *See Sierra Club*, 899 F.3d at 284 ("[T]he causation element of standing does not require the challenged action to be the sole or even immediate cause of the injury."). As this Court has held, "the removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability." *Deal*, 911 F.3d at 190 (citation omitted); *see also Shoenthal v. Raoul*, 150 F.4th 889 (7th Cir. 2025) (holding plaintiffs have standing to challenge public transit firearm restriction despite other potential restrictions on carrying firearms on transit, reasoning that removing a layer of liability constitutes redress sufficient to confer standing), *appeal docketed*, No. 25-541 (U.S. Nov. 4, 2025).

---

[10] The district court erred by describing Defendant Weaver's justifications as "non-challenged." JA976.

The First Amendment right to receive information does not entitle students to any course under any circumstances. But it does prohibit removing a course for illegitimate reasons, such as "narrowly partisan or political" interests, "racial animus," or a desire to "deny [students] access to ideas with which [the government actor] disagree[s]." *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 870-72 & n.22 (1982) (plurality opinion). If Student Plaintiffs prevail, Defendant Weaver may no longer invoke the Budget Proviso to justify cancelling the AP AAS course. Instead, Defendant Weaver must identify a legitimate pedagogical reason for the removal—a merits question, not a jurisdictional one. Moreover, as explained above, Plaintiffs allege that Defendant Weaver's justification for removing the AP course, based on purported changes in the social studies standards, is illogical and pretextual, and the district court improperly rejected this allegation in favor of Defendant Weaver's contrary factual assertion at this pleadings stage of the litigation. *See supra* Section II(A)(2). Thus, for all the reasons that Plaintiffs' injuries are traceable to the Budget Proviso, those injuries would be redressed by enjoining the Budget Proviso and declaring it unconstitutional. Article III requires no more.

**B.      Dr. Kendi Has Standing to Bring Vagueness and Viewpoint Discrimination Claims.**

Dr. Kendi has satisfied the injury-in-fact, traceability, and redressability requirements to challenge the removal of his book, *Stamped: Racism, Antiracism,*

*and You*, from public-school libraries, classrooms, and media centers pursuant to the Budget Proviso. JA223-227. The standing analysis for his viewpoint-discrimination claim is identical to the standing analysis for his vagueness claim. The district court erroneously concluded that Dr. Kendi lacked standing to challenge the removal of *Stamped*.[11]

Defendant School District Three removed Dr. Kendi's book because of the Budget Proviso's prohibition against certain viewpoints that District Three found to be in his book. In the Amended Complaint, Dr. Kendi alleges that District Three's review committee considered *Stamped* to be "adverse" to the Budget Proviso when deciding about its removal. JA211, JA080. This allegation must be accepted as true at the pleading stage. Thus, Dr. Kendi has sufficiently alleged a concrete injury stemming from the Budget Proviso's viewpoint discrimination, which caused his book's exclusion from South Carolina public school libraries. *See Planned Parenthood of S.C., Inc. v. Rose*, 361 F.3d 786, 790 (4th Cir. 2004) (viewpoint discrimination is "a harm that is sufficiently particular to qualify as an actual injury for standing purposes."). The suppression of *Stamped* directly burdens Dr. Kendi's

---

[11] The district court's standing analysis of Dr. Kendi's First Amendment claim focused exclusively on the redressability prong of Article III standing. JA977. The district court did not include a separate standing analysis for Kendi's Fourteenth Amendment claims. As explained in Section III, *infra*, Dr. Kendi—along with Student Plaintiffs—pled sufficient allegations to establish standing for those claims.

right to disseminate his ideas, free from viewpoint discrimination, as well as students' right to receive them. JA223-225.

Dr. Kendi has likewise sufficiently alleged traceability. The Amended Complaint supports his well-pleaded allegations that the Budget Proviso was a motivating factor in the committee's decision to remove *Stamped*. The contemporaneous notes from the review committee state that the book "presents the analogy that being white equals racism," which the reviewer deemed "adverse to the state requirement" that educators may not teach an individual "is inherently racist." JA080. These remarks mirror the Proviso's operative language. JA183-184.

Under settled precedent, Dr. Kendi need not prove that the Budget Proviso was the sole cause of the book removal *See Sierra Club*, 899 F.3d at 284 ("causation element of standing does not require the challenged action to be the sole or even immediate cause of the injury."). Dr. Kendi plausibly established a causal link between the challenged law and the alleged harm, satisfying the traceability requirement for standing under Article III. The district court erred in crediting District Three's explanation—that the removal was based on neutral "Materials Selection Criteria"—over Dr. Kendi's allegations when adjudicating District Three's motion to dismiss. As noted above, at this preliminary stage, all factual inferences must be drawn in Plaintiffs' favor. *Wright v. N.C.*, 787 F.3d 256, 263 (4th

Cir. 2015). Whether District Three's stated rationale was pretextual is a fact question unsuitable for dismissal prior to discovery. JA239, JA242-243, JA223.

Finally, Dr. Kendi has sufficiently alleged redressability. The district court held Dr. Kendi did not satisfy the redressability requirement because of District Three's purported reliance on its formal policy governing the selection of library materials ("Materials Selection Criteria"). But that conclusion again improperly relied on disputed facts. At the pleading stage, courts must credit plaintiffs' allegations and supporting materials. *Wright*, 787 F.3d at 263. Here, Dr. Kendi alleges—and documents confirm—that the Budget Proviso was District Three's basis for the removal. JA211. Enjoining the enforcement of the Proviso would remove a direct cause of Dr. Kendi's injury and therefore satisfies Article III's redressability requirement.

Leaving aside the district court's error in crediting District Three's factual assertions in its standing analysis, the district court further erred when it found no redressability because the Materials Selection Criteria provided an "independent, unchallenged ground for the removal." JA978-979.[12] According to the district court, "when two laws independently prohibit the same conduct, invalidating only one law

---

[12] The district court erred when it described District Three's justifications surrounding the Materials Selection Criteria as "unchallenged." JA 979.

does not establish standing because the injury persists under the other." JA978.[13]

That reasoning mistakes the redressability doctrine because the removal of one of multiple barriers can be sufficient to establish standing. *See Deal*, 911 F.3d at 190 ("The removal of even one obstacle to the exercise of one's rights . . . is sufficient to show redressability") (citation omitted). Courts routinely hold that a plaintiff can satisfy redressability despite the existence of intervening or alternative causes for the plaintiff's injury. *See Schoenthal*,150 F.4th at 927; *see also Walden v. Kosinski*, 2025 WL 2413251, at *6 (2d Cir. May 2, 2025) (finding standing even where State Board defendants argued that injunction would not bind the third party City Board, which could also cause injury).

Here, Dr. Kendi alleges that the Budget Proviso's vague and discriminatory prohibitions were an operative cause of his First Amendment injuries. JA212-213. District Three's factual assertions that other considerations informed the committee's decision are immaterial to resolving a motion to dismiss, where factual disputes should be resolved in Dr. Kendi's favor. Moreover, judicial relief enjoining

---

[13] The district court's citation to *Sierra Club* to support this proposition is inapt because it presumed the existence of a valid, independent rationale other than the Budget Proviso for Dr. Kendi's alleged injuries, which Dr. Kendi contests and has alleged facts that the alternative justifications are pretextual. *Sierra Club* establishes that Dr. Kendi need only put forth plausible allegations that he would "benefit in a tangible way" from a favorable court order enjoining the Budget Proviso. *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018).

the Budget Proviso would eliminate a significant source of Dr. Kendi's constitutional injury and therefore satisfies the redressability requirement under Article III.

### C. Student Plaintiffs Sufficiently Allege Standing to Bring a Void for Vagueness Claim.

Student Plaintiffs' vagueness claim is predicated on their First Amendment right to receive claim. "[W]here the effect of a vague statute would infringe upon a party's First Amendment rights, standing requirements to challenge the statute [for vagueness] are broader than they otherwise might be." *Arce*, 793 F.3d at 987 (recognizing K-12 student plaintiffs' injury in challenge to a vague statute alleged to "have a direct impact on plaintiffs' right to receive information"). Student Plaintiffs have a liberty interest grounded in their First Amendment right to receive information, free from improper discrimination. The vagueness of the Budget Proviso's operative terms deprives Student Plaintiffs of that liberty interest without due process. *Arce*, 793 F.3d at 987–88.

Student Plaintiffs' vagueness injury flows directly from the inability of schools and districts to discern what is and is not prohibited under the Budget Proviso, which, in turn, affects what courses and educational resources are offered to students. *See NAACP v. U.S. Dep't of Educ.*, 2025 WL 1196212, at *5 (D.D.C. Apr. 24, 2025) (holding that student plaintiffs had standing and were likely to succeed on vagueness challenge) (citing *Arce*, 793 F.3d at 988); *see also E.K. ex rel.*

*Keeley*, 2025 WL 2969560, at *7-9 (striking down federal "divisive concepts" Executive Order 14190, as void for vagueness, because its undefined and subjective terms—"discomfort," "inappropriate instruction," and "divisive"—provided "no ascertainable standards" and predictably led to "self-censorship and arbitrary enforcement"). Similar to Student Plaintiffs' First Amendment right-to-receive claim, the due process injury would be redressed by an injunction barring enforcement of the Budget Proviso, thereby satisfying the redressability requirement. *See Arce*, 793 F.3d at 988 ("[I]f the [challenged] statute is found to be vague on its face, or as applied to [the ethnic studies] program, it will have a direct impact on plaintiffs' right to receive information.").

## III. Plaintiffs Sufficiently Alleged Standing to Bring Equal Protection Claims.

The district court's opinion below ignores the Equal Protection claims raised by Dr. Kendi and Student Plaintiffs in the Amended Complaint. *See* JA980. As such, the district court's order granting Defendant's motion to dismiss Plaintiffs' Equal Protection claims did not undertake the necessary standing analysis for those claims, including the unique and distinct Equal Protection harms alleged, before dismissing the entire case for lack of standing. On that basis alone, the district court's grant of the Defendants' motion to dismiss Plaintiffs' Equal Protection claims was in error. *See Warth v. Seldin*, 422 U.S. 490, 500-01 (1975) (noting standing "often turns on the nature and the source of the claim asserted" and, "[f]or purposes of ruling on a

motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in the favor of the complaining party.").

Had the district court conducted a proper analysis of Plaintiffs' standing, it could not have dismissed the Equal Protection claims based on the allegations pleaded. JA164-166. Plaintiffs suffered a cognizable injury in fact through the censorship of certain race-related instruction, curricula, books and other materials pursuant to the Budget Proviso, including AP AAS.

Each of the Student Plaintiffs, as well as Dr. Kendi, were denied equal protection of the law because the Budget Proviso was enacted, in part, from an intent to discriminate against Black people and has been enforced in a manner that specifically and disproportionately harms Black people. JA208, JA244. Much like A.G.'s well-pled injury in fact to challenge the cancellation of the AP AAS course under the First Amendment, JA974, A.G. sufficiently alleged an injury in fact for their Fourteenth Amendment Equal Protection claim. Specifically, the discriminatory motive behind the Budget Proviso and the Proviso's selective enforcement target concepts, instruction or materials that are about and primarily benefit Black people. JA243-249. Thus, the injuries suffered from the removal of the AP AAS course code, as discussed above, are likewise injuries from Defendant Weaver's Equal Protection violations. JA233-235. With respect to Dr. Kendi,

District Three targeted his book for removal with discriminatory motives. JA212. Dr. Kendi alleges that *Stamped*, which concerns the history, experiences, and discriminatory harms of Black people, was singled out as part of a targeted effort to exclude speech that was expressed by Black authors and that discussed topics about race and racism against Black people—topics that are meant to benefit Black people by acknowledging and studying racial inequalities. JA212-213, JA247. Plaintiffs have thus demonstrated that they intend "to take a particular lawful action that 'has been thwarted by official action' that was discriminatory," which adequately demonstrates injury in fact. *Carcano v. Cooper*, 350 F. Supp. 3d 388, 410 (M.D.N.C. 2018) (citing *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977)).

Plaintiffs also allege that State legislative actions that precede passage of the Budget Proviso further demonstrate discriminatory intent that denied them equal treatment of the law. The South Carolina legislature authorized the Budget Proviso after multiple anti-critical race theory bills that censored "discriminatory concepts" of race and gender failed to pass the South Carolina legislature. JA182-185, JA245-246; *see also* Section I(D), *supra*. Legislators' statements in support of the Budget Proviso's censorship demonstrated that *white* people—not Black people—were the intended beneficiaries, as the Budget Proviso forbids causing individuals to "feel discomfort, guilt, or anguish" and not be assigned "fault, blame, or bias." JA186.

For example, State Representative Melissa Oremus, who is white, stated that censorship of certain concepts related to race and racism was necessary because critical race theory caused her "uncomfortable feelings" and she did not want students to be burdened in the classroom by the actions of their "terrible White grandfather." JA186; *see also supra* Section I(D). As a result, the Budget Proviso was enacted, at least in part, to achieve what the failed legislation could not: targeting Black individuals to be disadvantaged by censoring and chilling curricula, books, materials, and instruction that are aimed at enhancing the educational, social, and civic experiences of Black students and other Black individuals and educating all students about Black people's struggles with racial inequalities. These actions deny Plaintiffs equal protection of the law. Because the "denial of equal treatment resulting from the imposition of the barrier" is the injury in fact for an Equal Protection claim, Plaintiffs have adequately alleged injury in fact here. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 657 (1993) ("The 'injury in fact' element of **standing** in such an **equal protection** case is the denial of equal treatment resulting from the imposition of the barrier … not the ultimate inability to obtain the benefit.") (emphasis in original); *see also Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*, 560 F. Supp. 3d 929, 947–48 (D. Md. 2021) (noting that this standard

applies for policies that are "facially race-neutral but motivated by discriminatory intent").

Additionally, Plaintiffs have adequately pleaded that they are injured because the Budget Proviso has been selectively enforced to target Black students and Black individuals and restrict or censor the course content, instruction, and materials that especially benefit from. This selective enforcement also denies them equal protection of the law. Certain provisions of the Budget Proviso can be construed to censor discussions of affirmative action, educational equity, and other concepts meant to address and remedy racial discrimination, which disproportionately benefit Black people. *See* JA185. Other provisions permit censorship of topics related to systemic racism, implicit bias, white privilege, intersectionality, and similar concepts, regardless of how racial biases "perpetuate persistent harms, privileges, and disadvantages associated with systemic discrimination." JA185-186. Relying on the Budget Proviso, Defendant Weaver cancelled AP AAS—a course that provided information specific to the history, experiences, and ongoing inequalities of Black people, from which Black students especially benefit—but did not cancel course codes for AP classes associated with other ethnicities or cultures. JA220. SCDE has also deactivated other courses that focus on *Black* history and culture for the 2025–2026 school year, but not courses focused on the history or culture of other races or ethnicities. JA219. Further illustrating Defendant Weaver's selective enforcement of

the Proviso, Student Plaintiffs allege that Weaver partnered with PragerU to encourage South Carolina public schools to use its materials, which perpetuate falsehoods related to the historical oppression of Black people. JA221-222; *see also* Section I(D). Similarly, Dr. Kendi has adequately pleaded that *Stamped* was the only book that District Three targeted for removal, JA212, even though the central theme of *Stamped*—that people are *not* inherently racist or oppressive because of their race—aligns with the purported objectives of the Proviso. JA212-213. Thus, Plaintiffs have adequately alleged that Defendant Weaver and District Three used the Proviso selectively to target courses and books that address Black history and culture. Plaintiffs allege that these actions disparately harm Black students in ways that white students and white individuals do not experience. For example, the Budget Proviso's censorship of certain concepts related to race mean that Black students (and not white students) have their histories and lived experiences with racial inequality invalidated as "divisive" by the State. JA205. Thus, as alleged by Plaintiffs, the selective enforcement of the Budget Proviso denies them access to instruction, materials, and courses about the experiences and perspectives of Black people, causing them to suffer disparate harm and establishing a sufficient injury. *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 542–43 (3d Cir. 2011) (noting that people who are personally denied equal treatment by the challenged

discriminatory conduct have "an injury resulting from governmental racial discrimination that accords a basis for standing") (citation modified).

Moreover, Plaintiffs allege dignitary or stigmatic harm from the intentional discrimination, because "the book removals, curriculum restrictions, course cancellation, and any other related acts of censorship at issue are principally rooted in the fact that they discuss topics pertaining to systemic inequalities and . . . [stigmatize] Black people." JA247. This constitutes an independent injury sufficient for standing under well-established Equal Protection jurisprudence. *Va. State Conf. NAACP v. Cnty. Sch. Bd. of Shenandoah Cnty.*, 2025 WL 271705, at \*12 (W.D. Va 2025) (finding sufficient allegations of injury to establish standing based on Plaintiffs' feeling of racial inferiority that disproportionately harmed Black students' education and development); *see also Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483, 494–95 (1954) (concluding that "sense of inferiority" caused by segregation is a cognizable harm under the Equal Protection Clause).

These harms are traceable to the Budget Proviso because that law was passed, at least in part, with an improper racial motivation to unduly scrutinize, diminish, invalidate, and censor certain ideas and information about Black people's history and ongoing experiences with systemic and structural inequalities. *See Lujan*, 504 U.S. at 590; *see also* Section II(A)(2), II(B), II(C), *supra*. Moreover, Black people's history and experiences with systemic and structural inequalities, unlike those of

white people, are specifically targeted in the Budget Proviso's implementation and enforcement.

Furthermore, the redressability arguments made in Section II(A)(3), II(B), and II(C), *supra*, apply equally here. A judgment in Plaintiffs' favor would remedy their dignitary injury because it is "the sanction of law" validating the Budget Proviso that has the impact of "denoting the[ir] inferiority," depriving them of the benefits they would receive in a system that is not subject to racial discrimination. *See Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483, 494 (1954), *supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294 (1955). Enjoining the Budget Proviso would also eliminate the ongoing harm to Black students caused by State censorship that devalues discussion of Black histories, families, ancestors, and their struggle for equality.

## IV. Plaintiffs Are Entitled to a Preliminary Injunction.

For all the reasons Plaintiffs have sufficiently alleged standing to survive a motion to dismiss, they also have made a clear showing that they are likely to satisfy the standing requirements to secure a preliminary injunction to stop the ongoing, irreparable harm from the Budget Proviso's implementation and enforcement. In dismissing the action on standing grounds, the district court also erroneously denied Plaintiffs' Motion for a Preliminary Injunction on the basis of standing without reaching the merits of Plaintiffs' request for preliminary relief. Because Plaintiffs

have pled sufficient allegations to establish standing to bring all the claims in the Amended Complaint, this Court should reverse the district court's dismissal and remand the motion for preliminary injunction to the district court for full consideration.

Though the district court decided the preliminary injunction without providing an analysis of the merits, Plaintiffs met their burden and demonstrated their entitlement to a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Although a plaintiff must demonstrate a strong showing that they are likely to succeed on the merits of their underlying claims, a plaintiff "need not establish a certainty of success." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citation modified).

Plaintiffs' motion for preliminary injunction satisfied every prerequisite to receive relief. Plaintiffs are likely to succeed on their First Amendment and void-for-vagueness claims. This Court has repeatedly recognized that, when there is an alleged First Amendment violation, the "claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of [Plaintiffs'] First Amendment claim." *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d

292, 298 (4th Cir. 2009); *see also Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable."). Plaintiffs have demonstrated a substantial likelihood of prevailing on their facial challenge to the Budget Proviso, based on the law's deprivation of Plaintiffs' First Amendment rights and the inherent vagueness of the law's operative provisions.

The specific harms to Plaintiffs flowing from the cancellation of AP AAS and the removal of Dr. Kendi's book further buttress this substantial showing. Additionally, the removal of the AP AAS course has deprived Student Plaintiffs of access to core educational content and the academic benefits of AP coursework— irreparable harm that cannot be remedied by money damages. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) ("Generally, irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." (citation modified)), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

The balance of equities also weighs strongly in Plaintiffs' favor: they face ongoing constitutional harm that diminishes their educational and professional interests and stigmatizes information about Black people's histories and experiences with racism as unworthy of discussion or learning in public school classrooms because they are "divisive." Defendants suffer no injury from returning to the status

quo of constitutional compliance. *See Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[A] state is in no way harmed by the issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional.") (quotation marks omitted). Importantly, this Court has routinely held that "upholding constitutional rights serves the public interest." *Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). This Court should, therefore, vacate and remand the dismissal of Plaintiffs' motion for a preliminary injunction for full consideration.

## CONCLUSION

For the foregoing reasons, the Court should reverse the Rule 12(b)(1) dismissal and vacate and remand the dismissal of Plaintiffs' motion for preliminary injunction for full consideration.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request oral argument pursuant to Local Rule 34(a).

Dated: November 24, 2025

Respectfully submitted,

*/s/ Charles McLaurin*

CHARLES MCLAURIN
JIN HEE LEE
KACEY MORDECAI
JASON P. BAILEY
NAACP LEGAL DEFENSE &

EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
(202) 682-1300

KEVIN E. JASON
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

TYLER D. BAILEY
BAILEY LAW FIRM, LLC
1430 Richland St.
Columbia, SC 29201
(803) 667-9706

DEBO P. ADEGBILE
THAIS R. RIDGEWAY
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

MOLLY CALHOON SILVA
WILMER CUTLER PICKERING HALE
AND DORR LLP
350 S Grand Ave, Ste. 2400
Los Angeles, CA 90071
(213) 443-5300

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the applicable typeface and volume limitations of Federal Rules of Appellate Procedure 29(a)(5). This brief contains 12,965 words, exclusive of the components that are excluded from the word count limitation in Rule 32(f). This certificate was prepared in reliance upon the word-count function of the word processing system used to prepare this brief (Microsoft Word 365). This brief complies with the typeface and type style requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface using Times New Roman, font size 14.

Respectfully submitted,

*/s/ Charles McLaurin*
CHARLES MCLAURIN

## CERTIFICATE OF SERVICE

I, Charles McLaurin, counsel for Plaintiffs-Appellants and a member of the Bar of this Court, certify that, on November 24, 2025, a copy of the attached Brief was filed electronically through the CM/ECF system with the Clerk of this Court. The participants in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

November 24, 2025

Respectfully submitted,

*/s/ Charles McLaurin*
CHARLES MCLAURIN

# <u>ADDENDUM</u>

# ADDENDUM TABLE OF CONTENTS

2024-2025 Budget Proviso 1.79…………………………………………………... A-3

**2024-2025 Budget Proviso 1.79.** (SDE: Partisanship Curriculum)

For the current fiscal year, of the funds allocated by the Department of Education to school districts, no monies shall be used by any school district or school to provide instruction in, to teach, instruct, or train any administrator, teacher, staff member, or employee to adopt or believe, or to approve for use, make use of, or carry out standards, curricula, lesson plans, textbooks, instructional materials, or instructional practices that serve to inculcate any of the following concepts:

(1) one race or sex is inherently superior to another race or sex;

(2) an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

(3) an individual should be discriminated against or receive adverse treatment solely or partly because of his race or sex;

(4) an individuals moral standing or worth is necessarily determined by his race or sex;

(5) an individual, by virtue of his race or sex, bears responsibility for actions committed in the past by other members of the same race or sex;

(6) an individual should feel discomfort, guilt, anguish, or any other form of psychological distress on account of his race or sex;

(7) meritocracy or traits such as a hard work ethic are racist or sexist, or were created by members of a particular race to oppress members of another race; and

(8) fault, blame, or bias should be assigned to a race or sex, or to members of a race or sex because of their race or sex.

Nothing contained herein shall be construed as prohibiting any professional development training for teachers related to issues of addressing unconscious bias within the context of teaching certain literary or historical concepts or issues related to the impacts of historical or past discriminatory policies.