No. 25-2216

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SOUTH CAROLINA STATE CONFERENCE OF THE NAACP; IBRAM X. KENDI; T.R., a minor by and through their father and next friend, TODD RUTHERFORD; J.S., a minor by and through their mother and next friend, AMANDA BRADLEY,

*Plaintiffs-Appellants*,

v.

ELLEN WEAVER, in her official capacity as South Carolina Superintendent of Education; LEXINGTON COUNTY SCHOOL DISTRICT THREE,

*Defendants-Appellees*.

On Appeal from the United States District Court
for South Carolina, Case No. 3:25-cv-00487-SAL

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

JIN HEE LEE
CHARLES MCLAURIN
KACEY MORDECAI
JASON P. BAILEY
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
(202) 682-1300

KEVIN E. JASON
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

TYLER D. BAILEY
BAILEY LAW FIRM, LLC
1430 Richland St.
Columbia, SC 29201
(803) 667-9706

DEBO P. ADEGBILE
THAIS R. RIDGEWAY
SOPHIE N. VIGELAND
WILMER CUTLER PICKERING HALE AND
DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

*Counsel for Plaintiffs-Appellants*
(Additional counsel on next page)

MOLLY CALHOON SILVA
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 S Grand Ave, Ste. 2400
Los Angeles, CA 90071
(213) 443-5300

LAUREN N. MOORE
WILMER CUTLER PICKERING HALE AND
DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000

LYDIA M. BAILEY
WILMER CUTLER PICKERING HALE AND
DORR LLP
50 California Street, Ste. 3600
San Francisco, CA 94111
(628) 235-1000

*Counsel for Plaintiffs-Appellants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ v

INTRODUCTION ....................................................................... 1

ARGUMENT............................................................................ 2

    I.    The District Court Misapplied the Governing Standard to Adjudicate Defendants' Jurisdictional Challenge at the Pleadings Stage............. 2

    II.    Government Speech Is Irrelevant to Plaintiffs' Standing.................... 5

    III.    Student Plaintiffs Have Standing for Their First Amendment Claim.. 8

        A.    Student Plaintiffs have been sufficiently injured........................ 8

        B.    Student Plaintiffs' injuries are traceable and redressable. ..........11

    IV.    Dr. Kendi Has Standing for His First Amendment Viewpoint Discrimination Claim......................................................................18

        A.    Dr. Kendi has established an injury-in-fact...............................18

        B.    Dr. Kendi's injuries are traceable to Defendants' conduct and redressable..........................................................................20

    V.    Plaintiffs Have Standing for Their Void for Vagueness Claim..........22

    VI.    Plaintiffs Have Standing for Their Equal Protection Claims. ............24

        A.    Plaintiffs alleged concrete injuries for their Equal Protection claim. ..................................................................................24

        B.    Plaintiffs' Equal Protection injuries are traceable and redressable. ..................................................................................27

    VII.    Plaintiffs Seek Remand of Their Preliminary Injunction Motion.......29

CERTIFICATE OF COMPLIANCE ...................................................................31

CERTIFICATE OF SERVICE..........................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,
   557 F.3d 1177 (11th Cir. 2009)......................................................................9

*Aggarao v. MOL Ship Mgmt. Co.*,
   675 F.3d 355 (4th Cir. 2012)........................................................................29

*Arce v. Douglas*,
   793 F.3d 968 (9th Cir. 2015)..........................................................6, 22, 23

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*,
   397 U.S. 150 (1970)......................................................................................5

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
   457 U.S. 853 (1982) (plurality opinion) ......................................................6

*Bostic v. Schaefer*,
   760 F.3d 352 (4th Cir. 2014)......................................................................27

*Crookshanks ex rel. C.C. v. Elizabeth Sch. Dist.*,
   775 F. Supp. 3d 1160 (D. Colo. 2025) ........................................................7

*California v. Texas*,
   593 U.S. 659 (2021)....................................................................................12

*Chiras v. Miller*,
   432 F.3d 606 (5th Cir. 2005)........................................................................8

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*,
   68 F.4th 864 (4th Cir. 2023)........................................................................25

*Cooksey v. Futrell*,
   721 F.3d 226 (4th Cir. 2013)........................................................................8

*Dixon v. Edwards*,
   290 F.3d 699 (2002)....................................................................................14

*Falls v. Desantis*,
    No. 4:22CV166-MW/MJF (N.D. Fla. July 8, 2022)..........................................24

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009)...................................................................................4

*GLBT Youth in Iowa Sch. Task Force v. Reynolds*,
    114 F.4th 660 (8th Cir. 2024).................................................................................7

*Grimm v. Gloucester Cnty. Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020) ............................26

*Gutierrez v. Saenz*,
    606 U.S. 305 (2005)..................................................................................14, 16

*Hazelwood v. Kuhlmeier*,
    484 U.S. 260 (1988).................................................................................12

*Heckler v. Mathews*,
    465 U.S. 728 (1984).................................................................................27

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
    892 F.3d 613 (4th Cir. 2018).................................................................................12

*Hynes v. Mayor & Council of Borough of Oradell*,
    425 U.S. 610 (1976).................................................................................22

*Judson v. Bd. of Supervisors of Mathews Cnty., Va.*,
    436 F. Supp. 3d 852 (E.D. Va. 2020).................................................................18

*Kerns v. United States*,
    585 F.3d 187 (4th Cir. 2009).................................................................................4

*King v. Rubenstein*,
    825 F.3d 206 (4th Cir. 2016).................................................................................25

*Little v. Llano Cnty*,
    138 F.4th 834 (5th Cir. 2025), *cert. denied sub nom. Little v. Llano Cty., TX*, No. 25-284, 2025 WL 3507000 (S. Ct. Dec. 8, 2025)........................7

*Long v. Bondi*,
    151 F.4th 503 (4th Cir 2025).................................................................................16

vi

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)......................................................................9, 14

*Maddonna v. U.S. Dep't of Health and Human Servs.*,
  567 F. Supp. 3d 688 (4th Cir. 2020)..................................................27

*Martin v. Duffy*,
  858 F.3d 239 (4th Cir. 2017)..............................................................3

*Minarcini v. Strongsville City Sch. Dist.*,
  541 F.2d 577 (6th Cir. 1976)...............................................................7

*NAACP v. U.S. Dep't of Educ.*,
  779 F. Supp. 53 (D.D.C. 2025) ....................................................23, 24

*Opiotennione v. Bozzuto Mgmt. Co.*,
  130 F.4th 149 (4th Cir. 2025).............................................................19

*Parents, Families, & Friends of Lesbians & Gays, Inc. v. Camdenton
  R-III Sch. Dist.*,
  853 F. Supp. 2d 888 (W.D. Mo. 2012)..................................................8

*PEM Entities LLC v. Cnty. of Franklin*,
  57 F.4th 178 (4th Cir. 2023)................................................................5

*PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*,
  711 F. Supp. 3d 1325 (N.D. Fla. 2024) ...............................................7

*PETA v. Gittens*,
  414 F.3d 23 (D.C. Cir. 2005) ..............................................................8

*Planned Parenthood of S.C. v. Rose*,
  361 F.3d 786 (4th Cir. 2004)........................................................18, 19

*Plyler v. Doe*,
  457 U.S. 202 (1982).........................................................................26

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
  120 F.4th 390 (4th Cir. 2024).......................................................20, 22

*Richmond, Fredericksburg & Potomac RR. Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991)...............................................................4

*Rogers v. U.S. Dep't of Health and Hum. Servs.*,
466 F. Supp. 3d 625 (2020)..................................................................19

*Rossignol v. Voorhaar*,
316 F.3d 516 (4th Cir. 2003), *cert. denied*, 540 U.S. 833 (2003).......................6

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
547 U.S. 47 (2006)..........................................................................9

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
411 U.S. 1 (1973)..........................................................................26

*Satellite Broad. and Commc'ns Ass'n v. FCC*,
275 F.3d 337 (4th Cir. 2001) *cert. denied*, 536 U.S. 922 (2002)......................6

*Sierra Club v. U.S. Dep't of the Interior*,
899 F.3d 260 (4th Cir. 2018)................................................. 16, 21, 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).......................................................................19

*United States v. American Library Association, Inc.*,
539 U.S. 194 (2003).........................................................................8

*Virgil v. Sch. Bd. of Columbia Cnty., Fla.*,
862 F.2d 1517 (11th Cir. 1989)............................................................6

*U.S. ex rel. Vuyyuru v. Jadhav*,
555 F.3d 337 (4th Cir. 2009)..............................................................3

*Walls v. Sanders*,
144 F.4th 995 (8th Cir. 2025)............................................................7

*White Tail Park Inc. v. Stroube*,
413 F. 3d. 451 (4th Cir. 2005)........................................................3, 4

*Wikimedia Found. v. Nat'l Sec. Agency*,
857 F.3d 193 (4th Cir. 2017)............................................................2

*Wright v. Cap. One Bank (USA)*,
No. 1:21-cv-803, 2024 WL 920057 (E.D. Va. 2024)....................................12

viii

*Wright v. N.C.*,
    787 F.3d 256 (4th Cir. 2015)........................................................................16, 20

**Other Authorities**

2025–2026 Blythewood High School Course Catalog, Blythewood
    High School (Oct. 24, 2024),
    https://docs.google.com/document/d/1zSEnmIui62QT0CEl1gUO0
    NPGY4L_w10YzTz-8zQeFrI/edit?tab=t.0.......................................................11

Federal Rule of Civil Procedure 12(b)(1).......................................................1, 2, 4

## **INTRODUCTION**

This appeal turns on a narrow question: whether Plaintiffs plausibly alleged facts sufficient to find standing at the pleading stage. Under Rule 12(b)(1), the answer is yes. The Amended Complaint alleges concrete, redressable constitutional injuries arising from the Budget Proviso's prohibition of "divisive concepts" in school curricula and library materials concerning certain concepts of race, racism, and the lived experiences of Black people in South Carolina for illegitimate reasons. These prohibitions caused the removal of the book *Stamped* and the statewide cancellation of Advanced Placement African American Studies (AP-AAS), among the suppression of other curricula and materials. Plaintiffs allege that enjoining the Budget Proviso would redress their injuries by removing a substantial barrier to Plaintiffs' enjoyment of their constitutional rights and prevent future enforcement of the Proviso.

Defendants' arguments rest on disputing these well-pleaded factual allegations, improperly invoking material outside the Amended Complaint, and erroneously labeling alternative justifications for the censorship as "unchallenged" and "independent." At this stage, this Court's task is confined to assessing whether the Amended Complaint plausibly alleges standing—not weighing evidence, resolving factual disputes, or adjudicating the merits of Plaintiffs' claims.

1

Defendants also mischaracterize Plaintiffs' request for injunctive relief, which seeks only vacatur and remand for consideration under the correct standard.

## ARGUMENT

**I.    The District Court Misapplied the Governing Standard to Adjudicate Defendants' Jurisdictional Challenge at the Pleadings Stage.**

In this matter, the relevant inquiry for standing was, and is limited to, the Plaintiffs' allegations. A challenge to standing is facial when "the defendant contends that the complaint fails to allege facts upon which standing can be based." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citation modified). In this scenario, "the plaintiff is afforded the same procedural protection that exists on a motion to dismiss." *Id.* Courts may look beyond the pleadings to adjudicate a Rule 12(b)(1) motion under limited circumstances—i.e., when a defendant contends that the complaint's "jurisdictional allegations" are not true. But, as noted in Plaintiffs' opening brief, Defendants asserted a facial challenge to jurisdiction under Rule 12(b)(1), J.A.510-515, 518-519, and the district court committed reversible error when it credited the Defendants' arguments after looking outside the pleadings for information regarding the Defendants' *motive*, J.A.971, 975, 978. Defendants' motive is not merely a "jurisdictional allegation"—rather, it is a highly disputed

2

question at the center of the case and, specifically, the district court's redressability analysis.[1] *See infra* Sections III(A) and IV(B).

Rather than address Plaintiffs' contentions that the district court looked outside the pleadings to resolve factual disputes against Plaintiffs in a facial challenge, Defendants invite this Court to commit the same error. In this appeal regarding standing, Defendants argue, for example, that *Stamped* is not academically rigorous and rely on evidence outside of the pleadings, including facts proffered by Defendants in opposition to Plaintiffs' requested injunction, Appellants' Resp. 6 n.1, ECF No. 20 [hereinafter Resp.], declarations from *another* case, Resp. 13 n.6, and various news publications, *id.* However, this Court should limit its review to the allegations contained within the Amended Complaint and must accept Plaintiffs' well-pleaded allegations as true and draw "all reasonable factual inferences from those facts in the plaintiffs' favor." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (citation omitted).

In introducing extraneous materials, Defendants' reliance on *White Tail Park Inc. v. Stroube,* 413 F. 3d. 451, 459 (4th Cir. 2005) is misplaced. Resp. 1. Though *Stroube* recognized that, under certain circumstances, a district court may examine

---

[1] Since Defendants' standing challenge is intertwined with the merits of Plaintiffs' claims, it was improper for the district court to resolve disputed facts or legal questions by considering evidence outside the pleadings. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 358 (4th Cir. 2009).

evidence outside the pleadings in a Rule 12(b)(1) context, critically, it cautioned against the exact sort of analysis the district court conducted here. *See Stroube* 413 F. 3d at 460 (admonishing lower court for "effectively making a merits determination" when it examined the "extent to which [the challenged statute] impaired" plaintiffs). In any case, Fourth Circuit authority is clear that a district court may only look outside the pleadings when there is a factual challenge regarding jurisdiction. In that instance, it may only grant the Rule 12(b)(1) motion if "the material jurisdictional facts are not in dispute," *Richmond, Fredericksburg & Potomac RR. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991), or if the court conducts an evidentiary hearing. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Defendants cite no authority to support their approach or to justify the district court's consideration of extrinsic facts to decide material disputes on the merits.[2]

Thus, this Court must accept Plaintiffs' allegations as true without looking beyond them, as the district court should have done below. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

---

[2] In fact, the reliance on material outside of Plaintiffs' pleadings by both the Defendants and the district court reinforce the factual disputes between the parties and the need for discovery and further proceedings.

## II.    Government Speech Is Irrelevant to Plaintiffs' Standing.[3]

In raising the government speech doctrine, Defendants conveniently ignore that the district court dismissed Plaintiffs' First Amendment claims on standing grounds alone, specifically redressability. J.A.973-976, 979. In fact, the district court expressly "presume[d] the validity" of Student Plaintiffs' claims, J.A.970 (citing *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022)), and expressly declined to "address the scope or continuing viability" of their right to receive claim, J.A.973 n.6. Nevertheless, Defendants improperly conflate Plaintiffs' *standing* to bring a right to receive claim and viewpoint discrimination claim with the *legal cognizability* of these claims, which is an argument on the merits that is not before this Court. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970) (stating "[t]he 'legal interest' test goes to the merits. The question of standing is different"); *PEM Entities LLC v. Cnty. of Franklin*, 57 F.4th 178, 182 (4th Cir. 2023) ("Nor does the ultimate validity of [plaintiff's] constitutional claims bear on [their] ability to bring them."). Accordingly, Defendants' arguments regarding government speech are wholly irrelevant to the standing inquiry before this Court.

In particular, Defendant Weaver's invocation of the government speech doctrine to undermine the legal cognizability of a First Amendment right to receive

---

[3] These arguments are also raised by Amici Curiae, ECF No. 21, and should similarly be rejected.

claim—which, again, is irrelevant to the standing issues before this Court—ignores precedent from the Supreme Court, the Fourth Circuit, and other federal appeals courts that recognize the viability of that claim. *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 870-71 (1982) (plurality opinion) (holding school officials may not remove books from school library when motivated by partisan reasons, racial animus, or "dislike" for the ideas the books contained); *Rossignol v. Voorhaar*, 316 F.3d 516, 522 (4th Cir. 2003), *cert. denied*, 540 U.S. 833 (2003) (the First Amendment "protects *both* a speaker's right to communicate information and ideas to a broad audience *and* the intended recipients' right to receive that information and those ideas."); *Satellite Broad. and Commc'ns Ass'n v. FCC*, 275 F.3d 337, 353 (4th Cir. 2001) *cert. denied*, 536 U.S. 922 (2002) (acknowledging right to receive information for cable television viewers and listeners); *Arce v. Douglas*, 793 F.3d 968, 983 (9th Cir. 2015) (rejecting government speech defense to students' right to receive claim related to the termination of a Mexican American Studies program in public high schools); *Virgil v. Sch. Bd. of Columbia Cnty., Fla.*, 862 F.2d 1517, 1520-21 (11th Cir. 1989) (holding that school officials had to comply with the First Amendment when "restrict[ing] access to curricular materials").

Defendant's reliance on non-binding, out-of-circuit case law is unavailing. For example, only seven of the seventeen Fifth Circuit judges in *Little v. Llano County*

6

joined the portion of the decision embracing the government speech defense. 138 F.4th 834, 835 (5th Cir. 2025), *cert. denied sub nom. Little v. Llano Cty., TX*, No. 25-284, 2025 WL 3507000 (S. Ct. Dec. 8, 2025). In *Walls v. Sanders*, plaintiffs *conceded* that "the classroom materials and instruction they seek to receive constitute government speech," which the Eighth Circuit panel deemed "fatal" to their right to receive claim. 144 F.4th 995, 1000 (8th Cir. 2025).

Likewise, District Three's extraordinary position that the management of school libraries constitutes "government speech" and, thus, is subject to *no constitutional constraints* is also irrelevant to the analysis of Dr. Kendi's standing for his viewpoint discrimination claim, in addition to being contrary to every court decision considering the issue. *See, e.g.*, *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 114 F.4th 660, 667-68 (8th Cir. 2024) ("[T]he Supreme Court has not extended the government speech doctrine to the placement and removal of books in public school libraries."); *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 582 (6th Cir. 1976) (barring school boards from removing books based "solely [on] the social or political tastes of school board members"); *Crookshanks ex rel. C.C. v. Elizabeth Sch. Dist.*, 775 F. Supp. 3d 1160, 1175 (D. Colo. 2025) ("Courts generally hold that the placement and removal of books in public school libraries is not government speech."); *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F. Supp. 3d 1325, 1331 (N.D. Fla. 2024) (rejecting argument that "decisions regarding the

content of school libraries is [sic] 'government speech'"); *Parents, Families, & Friends of Lesbians & Gays, Inc. v. Camdenton R-III Sch. Dist.*, 853 F. Supp. 2d 888, 899 (W.D. Mo. 2012) (holding the First Amendment bars viewpoint discrimination in selecting materials accessible in school libraries).

The cases District Three cited to support its extreme government speech theory do not diminish the overwhelming caselaw that refutes ot. For example, District Three cites to dicta in *PETA v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005), which concerns selection of art entries for a government sponsored outdoor art exhibit, not management of school libraries. *See* Resp. 41. *Chiras v. Miller*, which District Three also cited, actually supports the proposition that public officials cannot rely on "narrowly partisan or political consideration" to justify rejecting a textbook from a public high school. 432 F.3d 606, 619-20 (5th Cir. 2005). And *United States v. American Library Association, Inc.*, 539 U.S. 194 (2003) ("*ALA*"), involved public libraries filtering webpages to prevent children's access to pornography. This *viewpoint-neutral* curation decision by a public library has no bearing on a First Amendment *viewpoint discrimination* claim, as Dr. Kendi alleged.

## III. Student Plaintiffs Have Standing for Their First Amendment Claim.

### A. Student Plaintiffs have been sufficiently injured.

Student Plaintiffs have adequately alleged an injury-in-fact based on the chilling of their First Amendment rights. *See Cooksey v. Futrell*, 721 F.3d 226, 235-

36 (4th Cir. 2013) (holding that chilled First Amendment activities satisfy the injury-in-fact requirement). The district court correctly recognized that NAACP-South Carolina was injured because one of its members, A.G., was enrolled in AP-AAS before it was cancelled. *See* J.A.233, 974. That alone satisfies Article III. *See Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006).

The remaining Student Plaintiffs have also alleged concrete injuries. Characterizing T.R.'s allegations as an "inchoate desire" to enroll, Resp. 34. misstates the pleadings and the governing standard, which only requires time-bound, concrete plans to enroll. *See ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1194 (11th Cir. 2009) (noting that "*Lujan* require[s] no more immediacy" than plaintiff's intention to check out a book after school resumed because plaintiffs "would be injured within a 'fixed period of time in the future'" (citation omitted)). T.R. alleged multiple facts demonstrating the concreteness of his injury, including: his high school previously offered AP-AAS and planned to offer it during the 2024–2025 school year; the only reason he did not enroll in AP-AAS, as planned, was the statewide cancellation; and he intends to take the course if it is reinstated before he graduates. J.A.166. The Amended Complaint also includes allegations that J.S. and J.C. both plan to take the AP- AAS course if offered before their graduation. J.A.165-166, 233-234.

9

Even if Student Plaintiffs could take an honors course (which is not conceded), Defendant Weaver's removal of the AP-AAS course code harmed and continues to harm them because an honors course is not academically or financially equivalent to an advanced placement course. JA218-219. Defendants' assertion that the "AP designation" is the only difference between AP-AAS and an honors course is a disputed fact. Resp. 35. Educators describe AP-AAS as "more comprehensive and interdisciplinary in structure" than honors courses, J.A.230, and Student Plaintiffs allege that honors courses often lack GPA weighing and may not offer college credits. J.A.218-219. A state-approved AP-AAS course provides state-funded teacher certification, training, textbooks, and AP exam costs. J.A.218, 234-235. These expenses must be borne by school districts themselves if they offer an honors course instead—costs that are infeasible for many districts. J.A.234-235. Thus, the cancellation of AP-AAS deprived Student Plaintiffs of significant academic and financial benefits and underscores the concreteness of Student Plaintiffs' injuries.

Defendant Weaver improperly looks beyond the pleadings to posit that J.S. and A.G. lack standing because their high schools offer the local honors course. Resp. 34-35. J.S. attends Spring Valley High School, and A.G. attends Blythewood High School. J.A.233. In doing so, they raise a disputed fact outside of the relevant pleadings. For this reason alone, this Court should reject this argument. *See supra*

10

Section I. In any case, although both schools are within Richland Two school district, neither Spring Valley High School nor Blythewood High School offers the local honors course.[4]

Moreover, Student Plaintiffs alleged harms from the Budget Proviso that are not limited to the decertification of AP-AAS. Throughout the Amended Complaint, Student Plaintiffs allege that the Proviso caused the removal or restriction of books, instructional materials, and course instruction that broadly censor certain concepts of race and racism purported to fall within the category of "divisive concepts"— censorship that they allege has no pedagogical value. J.A.163, 210-216, 237-238. Taken together, these allegations describe concrete and ongoing harms that establish sufficient injury-in-fact for both Student Plaintiffs' as-applied challenge to the cancellation of AP-AAS and their facial challenge to the Budget Proviso.

### B.    Student Plaintiffs' injuries are traceable and redressable.

Student Plaintiffs sufficiently alleged that their injuries are traceable to the Proviso because Defendant Weaver's removal of the course code "was a plausible

---

[4] J.S. and A.G. submitted copies of their schools' course catalogs to the lower court, demonstrating the unavailability of the honors course in both schools. *See* J.A.674-715; 2025–2026 Blythewood High School Course Catalog, Blythewood High School (Oct. 24, 2024), https://docs.google.com/document/d/1zSEnmIui62QT0CEl1gUO0NPGY4L_w10YzTz-8zQeFrI/edit?tab=t.0. As noted, these disputed facts about a comparable course are irrelevant for this appeal.

11

source of the injury . . . suffered." *Wright v. Cap. One Bank (USA)*, No. 1:21-cv-803, 2024 WL 920057, at *4 (E.D. Va. 2024) (citing *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018)). Defendant Weaver concedes that she is "responsible for implementing state education laws and polices enacted by the legislature, including the Proviso." J.A.500. Moreover, Student Plaintiffs allege that Weaver removed the AP-AAS course code from the State database to comply with the Budget Proviso. J.A.163, 167, 216, 231-232. Defendant Weaver's actions, therefore, are a "plausible source" of Student Plaintiffs' injury, *see Hutton*, 892 F. 3d at 623, and are traceable to "allegedly unlawful conduct"—namely, enforcement of the Budget Proviso—that Plaintiffs challenged as unconstitutional. *California v. Texas*, 593 U.S. 659, 669 (2021).

Defendant Weaver's argument that it is "speculative to assume" that enjoining the Budget Proviso would secure Student Plaintiffs' spot in a future AP- AAS class, Resp. 36-37, misunderstands the nature of the alleged injury and the relief sought. Student Plaintiffs' First Amendment injury does not rest solely on losing access to AP-AAS and other information barred by the Budget Proviso but rather losing access to them due to improper motives that are irrelevant to legitimate pedagogical concerns (i.e., the Budget Proviso), as required for a right to receive claim. *See Hazelwood v. Kuhlmeier*, 484 U.S. 260, 273 (1988). To redress their injury, Student Plaintiffs seek an injunction prohibiting enforcement of the Budget Proviso and

12

reinstating the AP-AAS course code so that the alleged impermissible barrier—i.e., removal of curricular information for unconstitutional reasons—does not prevent them from accessing the academic and financial benefits of that course.

Contrary to Defendant Weaver's assertion, Resp. 36, the fact that school districts retain discretion over course offerings does not negate the redressability of Student Plaintiffs' requested relief. Defendant Weaver's enforcement of the Budget Proviso, which caused the decertification of AP-AAS, is the primary barrier to Student Plaintiffs' access to the course because Weaver has determined that the course violates the Proviso. Her purported concerns about compliance with state social studies standards are suspect and require interrogation through discovery, given Student Plaintiffs' allegations that those standards will not be implemented until the 2026-2027 school year at the earliest.[5] Notably, the standards review is still pending, and Defendant Weaver is assuming the outcome of the process. Thus, enjoining the Budget Proviso and reinstating the AP-AAS course code would substantially increase their likelihood of accessing the course, irrespective of what school officials might hypothetically do in the future with their discretionary authority.

---

[5] Student Plaintiffs alleged that the social studies standards will be implemented more than a full school year *after* Defendant Weaver removed AP-AAS. J.A.231-232.

The district court erred, and Defendant Weaver adopted this error in her arguments, by suggesting that Student Plaintiffs must virtually *guarantee* that a favorable court decision would redress their injury. However, Student Plaintiffs need only show that a favorable ruling would *likely* redress their injury to establish standing. *See Dixon v. Edwards*, 290 F.3d 699, 711 (2002); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The possibility that "[i]nvalidating the Budget Proviso would not automatically reinstate the AP-AAS code," Resp. 39, therefore, does not undermine redressability. Notably, unlike a situation where a third party has ultimate control over a plaintiff's requested remedy, Defendant Weaver is the source of any "independent" justification that prevents reinstatement of the code. Whether any of the "independent" justifications proffered by Defendant reflect a legitimate pedagogical reason, or serve as a proxy for the same illegitimate grounds alleged to have motivated the Budget Proviso (e.g., racial bias or political goals), would be a factual dispute to be resolved after discovery.

Even if Defendant Weaver has pedagogically legitimate reasons to remove the course code, which is disputed at this juncture, *Gutierrez* and a long line of precedent make clear that a favorable court ruling nevertheless may redress Student Plaintiffs' injury "by removing the allegedly unconstitutional barrier . . . erected between" Student Plaintiffs and AP-AAS. *Gutierrez v. Saenz*, 606 U.S. 305, 319 (2005). Defendant Weaver did not (and cannot) cite authority for her position that *Gutierrez*

14

and precedent are inapplicable simply because she proffers multiple, simultaneous justifications for the AP-AAS course code's cancellation. Accepting Defendant's position would turn the redressability doctrine on its head, allowing defendants to avoid constitutional liability by simply proffering baseless and pretextual "simultaneous justifications" that are untested by discovery.

Importantly, the district court was factually incorrect and mischaracterized the alternative reason proffered by Defendant Weaver as "non-challenged" when it found no redressability, J.A.976—an error that Defendant repeats by arguing that an "independent, unchallenged" justification for removing the AP-AAS course code defeats redressability. Resp. 38. Far from being "independent" or "unchallenged," Student Plaintiffs have alleged consistently that Defendant's justification for canceling the course code, based on purported concerns about social studies standards, is pretextual and infused with the same improper motives behind the Budget Proviso itself. For example, Student Plaintiffs alleged that a school board member described the course code removal as "political," calling the review of the social studies standards a "purported basis for [SCDE's] decision to cancel the [course code]," J.A.232-233—which had been the ultimate goal all along, rather than actual concerns about state social studies standards. Student Plaintiffs further alleged that pausing approval of a statewide course code pending the review of that subject's standards is not normal practice, as demonstrated by Defendant's treatment of the

15

AP Pre-Calculus course, which—unlike AP-AAS—continued to be offered to students pending standards review. J.A.597; Opening Br. 10 n.4 Of course, at the pleading stage, no court can determine the true motive behind Defendant's cancellation of the AP-AAS course code amidst the parties' conflicting factual assertions, which is why the district court was obligated to assume facts in Students Plaintiffs' favor and allow the case to proceed to discovery. *See Wright v. N.C.*, 787 F.3d 256, 263 (4th Cir. 2015).

Defendant Weaver's attempt to distinguish *Long v. Bondi*, 151 F.4th 503 (4th Cir 2025), also fails. Resp. 38. The defendants in *Long*, like Defendant Weaver, pointed to a separate justification and explanation for the plaintiff's alleged harm. Applying *Gutierrez*, this Court held that the plaintiff in *Long* had standing to remove an unconstitutional barrier even if another action could also contribute to the alleged injury. *Id*. Here, an injunction would remove the Budget Proviso as a substantial barrier to Student Plaintiffs' access to AP-AAS, making it more likely that Defendant will reinstate the course code and that Student Plaintiffs can take the course—a "tangible benefit" sufficient to confer standing. *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018).

Finally, the district court's redressability analysis, like Defendant Weaver's, ignores the First Amendment facial challenge brought by Student Plaintiffs—in addition to the as-applied challenge that focuses on the cancellation of AP-AAS,

16

which was featured in the preliminary injunction motion. J.A.216-220, 231-232. Student Plaintiffs allege throughout their Amended Complaint that the Budget Proviso caused the removal or restriction of books, materials, or course instruction that broadly censor certain concepts about race and racism that could be considered "divisive concepts," pursuant to the improper motives behind the Budget Proviso that have no pedagogical value. J.A.187-190, 210-220. The Budget Proviso continues to deprive students of this type of information in public schools throughout the State, which Student Plaintiffs allege to deter—rather than advance— legitimate pedagogy. *See, e.g.*, J.A.187-190, 215-238. Thus, the scope of Student Plaintiffs' facial challenge to the Budget Proviso is much broader than the inability to access AP-AAS, and the appropriate remedy for this facial challenge would be enjoining enforcement of the Budget Proviso—not merely making AP-AAS available to students. Enjoining the Budget Proviso would redress Student Plaintiffs' facial claims by preventing any further enforcement of the Proviso's prohibitions against so-called "divisive concepts" that may cause suppression or censorship of otherwise available information—beyond the AP-AAS course—in violation of Student Plaintiffs' First Amendment rights, irrespective of the results of the state social studies standards review.

17

**IV.    Dr. Kendi Has Standing for His First Amendment Viewpoint Discrimination Claim.**

  **A.    Dr. Kendi has established an injury-in-fact.**

"Viewpoint discrimination is defined as 'discrimination in which the government targets *not subject matter*, but particular views taken by speakers on a subject.'" *Judson v. Bd. of Supervisors of Mathews Cnty., Va.*, 436 F. Supp. 3d 852, 865 (E.D. Va. 2020) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)) (emphasis added). A plaintiff who "challenge[s] a law on the ground that it promotes an opposing political viewpoint above their own" suffers an injury-in-fact from the government's "discriminatory treatment," sufficient to establish injury. *See Planned Parenthood of S.C. v. Rose*, 361 F.3d 786, 790-91 (4th Cir. 2004).

Dr. Kendi has adequately alleged an injury-in-fact because Defendant School District Three removed his book, *Stamped*, from school libraries after determining that the viewpoints it expressed were "adverse" to the Budget Proviso. J.A.211, 80. The fact that two of Dr. Kendi's books remain in the library does not negate the harm from the viewpoint discrimination that led to the removal of his book *Stamped*. Indeed, District Three cites no authority for the extraordinary proposition that a plaintiff has no First Amendment injury unless the government suppresses *all* of their speech. Books by the same author are obviously capable of providing different viewpoints. In any event, whether the viewpoints expressed in

18

*Stamped* are the same as those expressed in Dr. Kendi's other books is a question of fact that is inappropriate to resolve at the pleading stage.

As an additional and independent injury, Dr. Kendi alleges District Three's statements about *Stamped* harm his reputation as an author, academic scholar, and historian. J.A. 165. District Three's mischaracterization of Dr. Kendi's allegations of "personal and professional harm" as "general," speculative, and lacking in concreteness or particularity, Resp. 44, disregards settled precedent that, in the First Amendment context, "[d]iscriminatory treatment is a harm that is sufficiently particular to qualify as an actual injury for standing purposes." *Planned Parenthood*, 361 F.3d at 790. Reputational injury is also sufficient to support Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). Moreover, Dr. Kendi has alleged a stigmatic injury with both personal and professional harm, which is more than abstract disagreement or generalized offense and is "a direct result" of the Proviso's alleged "deni[al] of equal treatment" of his expressed viewpoints in *Stamped*. *Opiotennione v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 156 (4th Cir. 2025) (citation modified). Courts have long recognized that such stigmatic injury "accords a basis for standing to those persons who are personally denied equal treatment by the challenged discriminatory conduct." *Rogers v. U.S. Dep't of Health and Hum. Servs.*, 466 F. Supp. 3d 625, 641 (2020) (alterations adopted) (citations modified).

19

### B.     Dr. Kendi's injuries are traceable to Defendants' conduct and redressable.

Dr. Kendi alleges that the Budget Proviso caused the removal of his book, *Stamped*, from school library shelves, based on contemporaneous notes from the review committee that invoke the Proviso's language and reference the "state requirement" as a basis for the decision to remove *Stamped*. J.A.80. Those allegations are sufficient, at the pleading stage, to establish traceability.

District Three's remaining arguments regarding traceability ask this Court to resolve disputed factual issues and to draw inferences in District Three's favor— steps that are improper on this appeal of the district court's dismissal of Dr. Kendi's claims. *See Wright*, 787 F.3d at 263. For example, District Three contends that because "the notes reference the Proviso once," the Committee could not have "discriminated against Kendi based on his viewpoint." Resp. 45-46. But whether and to what extent the Proviso motivated the Committee's decision is a factual question that cannot be resolved on a motion to dismiss. The same is true of District Three's assertions that the notes reflect "what one reviewer thought" rather than the Committee's reasoning as a whole. *Id.* at 46. Dr. Kendi alleges that the Proviso operated as a barrier to the circulation of *Stamped* in public-school libraries, classrooms, and media centers. [J.A.242.] Because enjoining the Proviso would remove this unconstitutional barrier to Dr. Kendi's ability to disseminate his speech, his injury is redressable. *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120

20

F.4th 390, 397 (4th Cir. 2024) ("The removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability.") (citation omitted); *Sierra Club*, 899 F.3d at 285 (same).

The district court and District Three's references to an "independent, unchallenged basis" for the removal of *Stamped* rest on a factual premise that is both disputed and improperly resolved against Dr. Kendi at this pleadings stage. The review committee's contemporaneous notes expressly cite the Budget Proviso for the book removal, J.A.80, and Dr. Kendi consistently has alleged that any alternative justifications for the removal proffered by Defendant are pretext for both viewpoint and racial discrimination. *See* J.A.211 (alleging that School District Three removed *Stamped* "without anyone lodging a formal complaint against [its] contents"), J.A.212 (alleging that *Stamped* was the only book reviewed and removed by the district between August 2022 and November 2023), J.A.915:21-916:07 (discussing pretextual justifications during oral argument on Defendants' motion to dismiss), J.A.210-11 (alleging the purported factual inaccuracies are belied by the countless awards and acclaim *Stamped* has garnered). Thus, District Three's repeated assertions that Dr. Kendi has not challenged alternative reasons for the removal of *Stamped*, or that his allegations about pretextual justifications are "late-breaking," *see* Resp. 54, are erroneous and do not undermine the sufficiency of his redressability pleadings.

21

The mere possibility that "[i]nvalidating the Budget Proviso would not return *Stamped* to circulation," Resp. 47, does not foreclose standing. Article III does not require a plaintiff to demonstrate that the requested relief will *guarantee* full or immediate restoration of the status quo. *See supra* Section III(B). As this Court has repeatedly recognized, redressability does not turn on whether a favorable decision would eliminate every conceivable obstacle to relief. *See Republican Nat'l Comm.*, 120 F.4th at 397; *Sierra Club*, 899 F.3d at 285. Further, invalidating the Budget Proviso would redress Dr. Kendi's reputational harm by repudiating District Three's assertion that *Stamped* contains factual inaccuracies.

Dr. Kendi does not contend that a school library is compelled to stock *Stamped* under all circumstances. Indeed, many lawful considerations—such as budgetary limitations or space constraints—may dictate whether a library ultimately carries a particular book. Rather, he challenges the removal of his book to comply with the Budget Proviso's viewpoint discrimination. Enjoining the Proviso's enforcement, therefore, will redress his viewpoint discrimination claim.

## V.    Plaintiffs Have Standing for Their Void for Vagueness Claim.

The Budget Proviso's vague, operative terms deprive Plaintiffs of their liberty interest "grounded in their First Amendment" rights," *Arce*, 793 F.3d at 988, thus requiring a relaxed standing analysis, *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 620 (1976) ("The general test of vagueness applies with

22

particular force in review of laws dealing with speech."). Plaintiffs' injuries are directly caused by the inability of South Carolina's teachers, schools, and districts to discern what speech is or is not prohibited under the Budget Proviso—which, in turn, affects what courses, books, and educational resources are provided to students. *See NAACP v. U.S. Dep't of Educ.*, 779 F. Supp. 53, 65 (D.D.C. 2025) (citing *Arce*, 793 F.3d at 988). This includes the availability of *Stamped* in South Carolina public schools. Accordingly, an injunction preventing the enforcement of the Budget Proviso would redress Plaintiffs' due process injuries by removing the significant risk of school educators and administrators violating Plaintiffs' First Amendment rights while trying to comply with the Proviso's vague terms. *See Arce*, 793 F.3d at 988 ("[I]f the [challenged] statute is found to be vague on its face, or as applied to [the ethnic studies] program, it will have a direct impact on plaintiffs' right to receive information.").

Defendants argue that because the Proviso "does not regulate" Plaintiffs, they "cannot plausibly claim uncertainty about how to comply with it or how to avoid violating it." Resp. 48. But Plaintiffs have standing to challenge a vague law that infringes upon their First Amendment rights even if they are not directly regulated by that law. *Arce*, 793 F.3d at 987-88 (finding high school plaintiffs to have standing to bring vagueness challenge to law that eliminated a Mexican American Studies program because it infringed on their First Amendment rights, even though the

23

challenged law did not regulate them); *see also* Order Granting in Part and Denying in Part Mot. to Dismiss at 18, *Falls v. Desantis*, No. 4:22CV166-MW/MJF (N.D. Fla. July 8, 2022) (finding kindergarten student "had standing to raise a vagueness claim to a statute that did not apply to them but inhibited their right to receive information" "when those who would furnish them that information are discouraged from doing so by a vague law"); *NAACP*, 779 F. Supp. at 65 (holding that student had standing and were likely to succeed on vagueness challenge even though the challenged law did not impose obligations on them).

None of the cases cited by Defendants involve cases where the court found that plaintiffs were at risk of harm to constitutionally protected rights. *See* Resp. 48. Here, the Budget Proviso is so vague that, in an effort to comply, schools and teachers remove or restrict courses and teaching topics that may touch on vague and undefined terms and subjects in the Proviso, such as "discomfort," "inappropriate instruction," and "divisive," including AP-AAS and *Stamped.* This directly impacts Plaintiffs' First Amendment rights to receive information and to distribute ideas free from viewpoint discrimination.

## VI.    Plaintiffs Have Standing for Their Equal Protection Claims.

### A. Plaintiffs alleged concrete injuries for their Equal Protection claim.

Student Plaintiffs' injury from the cancellation of the AP-AAS course and Dr. Kendi's injury from the removal of *Stamped* apply equally to Plaintiffs' Equal

Protection claims because Plaintiffs allege that Defendants' acts of censorship were the result of intentional discrimination based on race and were aimed at suppressing topics "pertaining to systemic inequalities and the need to dismantle those inequalities for the benefit of Black people and other people of color." J.A.247. As discussed in Section I, these allegations must be accepted as true at this stage in the litigation. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Defendants' contentions that the Budget Proviso contains no governmental classification or action subject to the Equal Protection Clause, Resp. 57, fail to recognize that a facially race-neutral law may still be unconstitutional when, although "impartial in appearance," it is applied unevenly based on race, or where such a policy is motivated by discriminatory intent and disproportionately harms Black people. *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 879 (4th Cir. 2023) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886) and citing *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)). Plaintiffs have pleaded both. J.A.174-186, 208-228, 243-249. Moreover, whether the Budget Proviso applies equally to all students as Defendants contend, Resp. 58—or whether the Proviso disproportionately harms Black students, either by design or by implementation, as Plaintiffs allege J.A.243-249—is a factual issue that is improper to address at this pleadings stage.

25

Defendants' argument that the Proviso "regulates only how school districts spend state-allocated funds," and is therefore immune from constitutional scrutiny, is meritless. Resp. 57. Such assertions ignore the Equal Protection violations stemming from a "system of financing public education [that] operates to the disadvantage of some suspect class," including race, as Plaintiffs allege. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973); *see also Plyler v. Doe*, 457 U.S. 202 (1982). And, as discussed above, Plaintiffs are directly harmed by the Proviso even if they are not named by the Proviso. *See supra* Section V.

Further, Defendants' mischaracterizations of discriminatory harms, as "general[ized] grievances," theoretical, or speculative, Resp. 57-59 (citation omitted), are incompatible with this Circuit's precedent. Equal Protection injuries may be "practical" harms and inconveniences, *see Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 617 (4th Cir. 2020), *as amended* (Aug. 28, 2020), such as denying access to resources like books or curricular materials, including AP-AAS and *Stamped*, or excluding those resources from schools for discriminatory reasons. For example, Plaintiffs allege that Black-centered courses—such as AP-AAS, Dual Enrollment Black Atlantic and African Diaspora, Studies in Black Feminism, and Black Women Writers—have been targeted for suppression, unlike courses focused on other races, ethnicities, or cultures not associated with Black people. J.A.219-220.

In addition to "practical" harms, "[s]tigmatic injury stemming from discriminatory treatment" also "satisf[ies] standing's injury requirement." *Bostic v. Schaefer*, 760 F.3d 352, 372 (4th Cir. 2014); *see also Heckler v. Mathews*, 465 U.S. 728, 739-740 (1984) (noting that "stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy . . . can cause serious non-economic injuries"). Regarding "stigmatic injury," Plaintiffs allege that the targeted removals of concepts, books and materials—because they are focused on Black people, Black history, and Black culture—"invalidates" the experiences of Black people, like themselves, and "stigmatize[s] Black history and Black identity as 'divisive.'" J.A.205, 247. Dr. Kendi specifically alleges stigmatic harms from *Stamped*'s removal pursuant to the Budget Proviso because he is Black and because his book's discussion about race is disfavored by Defendants. J.A.165, 247.

**B.    Plaintiffs' Equal Protection injuries are traceable and redressable.**

Plaintiffs' Equal Protection injuries directly flow from the Budget Proviso. Whether the Proviso regulates the victims of its discrimination is inapposite. Resp. 57. Equal Protection claims center on whether the aggrieved plaintiff suffers harm because of a "personal[] deni[al] [of] equal treatment [caused] by the challenged discriminatory conduct." *Maddonna v. U.S. Dep't of Health and Human Servs.*, 567 F. Supp. 3d 688, 707 (4th Cir. 2020) (citation modified). Plaintiffs alleged that the Proviso's discriminatory purpose and enforcement caused their injuries, including

27

the removal of the AP-AAS certification code and *Stamped* from South Carolina public schools. J.A.211, 244, 247. Thus, Plaintiffs have satisfied traceability.

Neither the district court's opinion nor Defendants' opposition brief addresses Plaintiffs' stigmatic injuries resulting from the removal of *Stamped* and AP-AAS for improper racial motives, which are unique to their Equal Protection claims. Resp. 56 n.20. Thus, contrary to Defendants' contention, the district court's redressability analysis about Plaintiffs' First Amendment claims does not automatically apply to their Equal Protection claims and does not support dismissal of those claims. Resp. 56 n.20. A proper redressability analysis by the district court would have determined that enjoining the Budget Proviso would redress Plaintiffs' Equal Protection injuries by removing the source of the racial discrimination causing their practical and stigmatic harms. For example, Plaintiffs alleged that enjoining the Proviso would increase the likelihood that materials previously censored for their focus on racism and Black people would be available in public schools and reduce the stigma surrounding the unfounded allegations that *Stamped*, AP-AAS, and other information about Black people and their experiences are "divisive" and inappropriate in public schools. J.A.247. *See also supra* Section III(B) (discussing redressability of First Amendment violations by enjoining Budget Proviso because the unconstitutional cause of the AP-AAS decertification would be removed). The district court's failure to acknowledge or examine the unique harms from intentional

28

race discrimination, especially the stigmatic harms, is fatal to its decision to dismiss Plaintiffs' Equal Protection claims, thus demanding vacatur of the district court's order and remand of those claims.

## VII.    Plaintiffs Seek Remand of Their Preliminary Injunction Motion.

Plaintiffs do not seek injunctive relief "in the first instance" on appeal nor ask this Court to bypass the district court's role in adjudicating preliminary injunctive relief, as Defendants suggest. *Contra* Resp. 60-61. Rather, Plaintiffs seek vacatur of the dismissal of their preliminary injunction motion and remand so the district court can apply the *Winter* framework. Plaintiffs' request accords with this Court's practice of vacating and remanding preliminary relief requests when the initial denial rested on an erroneous threshold ruling. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378-379 (4th Cir. 2012).

Dated: February 2, 2026

Respectfully submitted,

*/s/ Charles McLaurin*

TYLER D. BAILEY
BAILEY LAW FIRM, LLC
1430 Richland St.
Columbia, SC 29201
(803) 667-9706

DEBO P. ADEGBILE
THAIS R. RIDGEWAY
SOPHIE N. VIGELAND
WILMER CUTLER PICKERING HALE AND
DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

LYDIA M. BAILEY
WILMER CUTLER PICKERING HALE AND
DORR LLP
50 California Street, Ste. 3600
San Francisco, CA 94111
(628) 235-1000

JIN HEE LEE
CHARLES MCLAURIN
KACEY MORDECAI
JASON P. BAILEY
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
(202) 682-1300

KEVIN E. JASON
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

MOLLY CALHOON SILVA
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 S Grand Ave, Ste. 2400
Los Angeles, CA 90071
(213) 443-5300

LAUREN N. MOORE
WILMER CUTLER PICKERING HALE AND
DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000

*Counsel for Plaintiffs-Appellants*

30

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the applicable typeface and volume limitations of Federal Rules of Appellate Procedure 32(a)(7)(B)(ii). This brief contains 6,491 words, exclusive of the components that are excluded from the word count limitation in Rule 32(f). This certificate was prepared in reliance upon the word-count function of the word processing system used to prepare this brief (Microsoft Word 365). This brief complies with the typeface and type style requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface using Times New Roman, font size 14.

Respectfully submitted,

*/s/ Charles McLaurin*
CHARLES MCLAURIN

**CERTIFICATE OF SERVICE**

I, Charles McLaurin, counsel for Plaintiffs-Appellants and a member of the Bar of this Court, certify that, on February 2, 2026, a copy of the attached Brief was filed electronically through the CM/ECF system with the Clerk of this Court. The participants in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

February 2, 2026

Respectfully submitted,

*/s/ Charles McLaurin*
CHARLES MCLAURIN

32